IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE,

        Plaintiff,                        CIV. NO. S-10-1207 GEB GGH

   vs.

CHICO SCRAP METAL, INC., et al.,

        Defendants.                    ORDER

_____/

        Previously pending on this court's law and motion calendar for December 16, 2010, was plaintiff's motion to compel inspections of land and property filed November 11, 2010, and defendants', Chico Scrap Metal Inc.'s [1] motion for protective order filed November 22, 2010, to forego such discovery as well as to stay responses to certain paper discovery. The motion for protective order was, in essence, a one-sided request to stay CSPA's discovery. Defendants Andrew Packard appeared on behalf of plaintiff. Therese Cannata and Juna Kim represented defendants.

        On January 7, 2011, defendants filed a request for a "temporary stay" of discovery pending ruling on defendants' motion to dismiss currently scheduled before the Honorable Garland E. Burrell Jr. The combined effect of defendants' discovery motions is to request a

---

[1] Defendants George Scott, Sr. and George Scott, Jr. are the owners of Chico Scrap Metal.

*mutually* applicable, temporary stay of discovery.

After hearing oral argument and having reviewed the parties' papers, including further submittals, the court now issues the following order.

BACKGROUND

*Background to These Motions*

This case is proceeding on the second amended complaint, filed December 10, 2010. California Sportfishing Protection Alliance ("CSPA") is proceeding as a "citizen enforcer," under the Clean Water Act, 33 U.S.C. § 1365, alleging that Chico Scrap Metal ("CSM" or defendants) is continuing to violate the terms of the National Pollutant Discharge Elimination System (NPDES) Permit based on storm water discharged from defendants' facilities in Chico (CSM-20th St.), Durham (CSM-Durham) and Oroville (CSM-NorCal). In addition to these alleged violations, plaintiff further alleges that defendants failed to implement the required Best Available Technology Economically Achievable ("BAT") for conventional pollutants, and that they failed to develop and implement an adequate Storm Water Pollution Prevention Plan and adequate Monitoring and Reporting Program. Plaintiff seeks civil penalties, injunctive relief and costs.

Plaintiff seeks to compel inspection of defendants' three facilities pursuant to CSPA's formal notices of inspection issued October 1, 2010. There are two requests for inspection noticed, one for three "wet" inspections, on three days where rain is forecast, during the wet season, November 5, 2010 through May 31, 2010, and one dry inspection initially noticed for November 5, 2010.

Absent consideration of the below described state enforcement action as duplicative and CSPA's standing, defendants do not seriously dispute CSPA's right to conduct discovery per se in a CWA action, i.e., whether CSPA, in this action, can inspect defendants' property to determine whether defendants are properly managing storm water discharges. Rather, defendants decry the duplicative nature of this federal action with one commenced in

state court by state officials (described below).  Defendants seek to stay discovery until jurisdiction/statutory preclusion is resolved in or about March 2011, when their motion to dismiss will be heard and resolved, arguing that the requested discovery is premature and overbroad.  They request an order either forbidding the discovery, specifying the terms of discovery, or limiting the scope of discovery.  As noted above, defendants later requested a omnibus stay of discovery.  Three grounds for issuance of a stay as argued by defendants in the protective order motion were: (1) the State agency oversight precludes this Clean Water Act (CWA) action; (2) CSPA has initiated this action only to remedy past actions; (3) CSPA has not shown that "navigable" waters of the United States are involved such that a Clean Water Act litigation is proper.

On January 11, 2011, defendants filed the promised motion to dismiss, but on grounds only somewhat similar to the grounds set forth in the motion for protective order.  Defendants claimed therein that: (1) CSPA lacked standing on account of no concrete injury;  (2) mootness; and (3) the other action preclusion section of the CWA (comparable state law) barred a civil penalty action in this court.[2]  In determining whether to stay discovery pending adjudication of the motion, the undersigned will focus on the recently filed motion to dismiss, but with recognition of the fact that CSPA has only had an opportunity to respond to such arguments as they may have been contained in the protective order motion.

*State Enforcement Activites*

Defendants were previously the subject of civil and criminal court actions and regulatory enforcement proceedings in Butte County Superior Court and through the Department of Toxic Substances Control ("DTSC").  These cases resulted in a plea agreement and probation order, applicable to each of defendants' facilities, which incorporates three DTSC orders, termed

---

[2] In the alternative, defendants requested in the motion to dismiss to limit discovery to jurisdictional matters, apparently desiring an evidentiary hearing on that subject somewhat later this year.  This alternative request is not before the undersigned in the pending discovery/stay motions, and will not be acted upon here.

1   the "Consent Orders," effective October 16, 2008, and lasts for a five year probationary period,
2   supervised by Butte County Superior Court.  In addition to these orders, the California Valley
3   Regional Water Quality Control Board ("CVRWQCB") and the EPA, through its contractor,
4   have monitored defendants and found violations on January 11 and 13, 2010.  The CVRWQCB
5   formally adopted many of the EPA's observations and issued a violation notice in June 2010.
6   Apparently, these violations have been addressed.

7        At the hearing on the parties' motions, defendants were directed to file a copy of
8   the criminal complaint in the underlying action.  Defendants complied on December 20, 2010;
9   however, plaintiff filed on that date an unsolicited declaration of Leona Winner, project manager
10  of the CSM sites for the California Environmental Protection Agency, DTSC.  (Dkt. #33.)
11  Defendants then requested and received permission to file their own declarations; however, they
12  filed a statement on January 7, 2011, indicating that they could not submit declarations because
13  the DTSC would not permit their employees to provide declarations.  (Dkt. #38.)

14       The criminal complaints filed against defendants in state court contain little
15  reference to violations involving storm water discharge.  The misdemeanor complaint contains
16  26 counts, but only one refers to depositing hazardous materials into "waters of the state" as well
17  as onto roads.  CSM is accused of violating Penal Code § 374.8 by discharging waste into the
18  storm sewers of Chico.  (Dkt. #34, Ex. C, Count 26.)  The felony complaint is limited to counts
19  alleging violations of Cal. Health and Safety Code section 25189.5(a), for disposing of hazardous
20  waste at an unauthorized facility.  (Dkt. #34, Ex. B.)  There is no allegation concerning discharge
21  of hazardous materials into waters of the United States; however, it stands to reason that the
22  rather comprehensive nature of the DTSC oversight, even combined with informal EPA
23  inspections, would encompass such discharges prohibited by the CWA.[3]

---

25  [3] In addition to the charging documents, defendants have pointed to briefing by County Counsel and the District Attorney in support of their application for a temporary restraining order, in which they argue for compliance with the laws before the wet season starts so that
26  "hazardous waste is not further discharged off-site into the public rights-of-way, storm drains and

Defendants also inform that "penalties" have been previously assessed by the court as part of the resolution in the state actions in the amount of $381,580.00

The Consent Orders in this case reference storm water discharges. They first provide that any response action must be consistent with all state and federal statutes. (Joint Exs. A-1, A-2, A-3, ¶ 5.1.) In addition to hazardous waste, remedial objectives include maintaining drainage control and protecting groundwater. These paragraphs of the Consent Orders provide:

> 5.2.1.3 <u>Maintain Drainage Control</u>.  The Respondents agree to maintain drainage control that meets, at a minimum, [] the Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities as adopted by the California State Water Quality Control Board.
> ...
> 5.2.3 <u>Protection of Groundwater.</u>  Existing and potential beneficial uses of groundwater shall be protected.  The Regional Water Quality Control Board Basin Plan identifies public water supply as a beneficial use of this aquifer.  Therefore, drinking water standards or more conservative values determined by a site-specific risk assessment shall be remedial action objectives for this Site.

(<u>Id.</u>)

The Consent Orders also state that the objectives of the Remedial Investigation/Feasibility Study are, *inter alia*, to identify and evaluate the hazardous substance contamination of surface water. (<u>Id.</u> at ¶¶ 5.3.1.1, 5.3.4.3.)  All actions taken pursuant to the Consent Orders are required to be approved by the DTSC. (<u>Id.</u> at ¶ 6.7.)  The orders specifically state that defendants are not relieved from their duty to comply with all laws including applicable "Waste Discharge Requirements issued by the State Water Resources Control Board or a California Regional Water Quality Control Board." (<u>Id.</u> at ¶ 6.8.)  The Probation Order requires compliance with the three Consent Orders and imposes restitution and fines. (<u>Id.</u>, Ex. C.)

---

groundwater." (Dkt. #34, Ex. D at 18.)  The declaration supporting this application reiterates that "removal of contaminated soil must be completed prior to beginning of the wet season to prevent further dispersal and off-site migration of contaminates," as "these contaminates can be tracked off of the site by vehicle traffic or washed from surfaces by winter rains and run-off or percolate into the soil and contaminate subsurface soils and/or groundwater." (Dkt. #34, Ex. E, ¶¶ 12, 11.)

Finally, the Consent Orders contain the following language:

> 6.8 Compliance with Applicable Laws. Nothing in this Order shall relieve Respondents from complying with all other applicable laws and regulations, including but not limited to compliance with all applicable Waste Discharge Requirements issued by the State Water Resources Control Board or a California Regional Water Quality Control Board. Respondents shall conduct all actions required by this Order in conformance with applicable federal, state and local laws and regulations.

(Joint Exs. A-1, A-2, A-3.)

CSPA argues that these orders do not address discharge of pollutants into waters of the United States, but only hazardous substances releases and their cleanup. In support, the declaration of Ms. Winner states that the "DTSC did not issue the Consent Orders under the authority of the Clean Water Act or the General Industrial Storm Water Permit," but rather under Health and Safety Code § 25300 et seq.[4] which grants authority to the DTSC for hazardous substance release cleanup. (Winner Decl., ¶ 4.) Winner also states that any water quality issues found at these sites would come under the State and Regional Water Quality Control Boards which regulate pursuant to the Clean Water Act, and if such water issues are found at a DTSC-lead remediation, DTSC would consult with the Regional Water Quality Control Board. (Id. at ¶ 5.) This project manager states that "prior to receiving the Second Amended Complaint, DTSC had not received or examined water quality data regarding any discharge to surface waters for these sites. DTSC's existing characterization records from Defendants for these sites also do not address surface water quality." (Id. at ¶ 7.)

DISCUSSION

*Standards For Granting A Stay Of Discovery*

This court has great discretion to issue protective orders denying discovery.

---

[4] Section 25301(a) establishes a program addressing "releases of hazardous substances, including spills and hazardous waste disposal sites that pose a threat to the public health or the environment."

B.R.S. Land Investors v. United States, 596 F.2d 353, 356 (9th Cir. 1979). Nonetheless, the Federal Rules provide that good cause is required in order for a party to obtain a protective order. Fed. R. Civ. P. 26(c); Kiblen v. Retail Credit Co., 76 F.R.D. 402, 404 (E.D. Wash. 1977). To prevail on a motion for a protective order, the party seeking the protection has the burden to demonstrate "particular and specific demonstration[s] of fact, as distinguished from conclusory statements . . . ." Id.; Twin City Fire Ins. Co. v. Employers Ins. of Wausau, 124 F.R.D. 652, 653 (D.Nev. 1989); Kamp Implement Co. v. J.I. Case Co., 630 F.Supp. 218, 219 (D.Mont. 1986).

This court generally applies a two pronged analysis in deciding whether to grant a protective order staying discovery before other pending motions can be heard. First, a pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed. Panola Land Buyer's Ass'n v. Shuman, 762 F.2d 1550, 1560 (11th Cir. 1985). The court may, for example, stay discovery when it is convinced that plaintiff will be unable to state a claim for relief or if the action is moot. B.R.S. Land Investors, 596 F.2d at 356; Wood v. McEwen, 644 F.2d 797, 801 (9th Cir. 1981).

It must be emphasized that in assessing the merits of a potential motion for a stay of discovery, the undersigned does not sit as the adjudicator on the merits of defendants' (CSM) dispositive motion. No pronouncement of this court concerning the merits of any dispositive motion binds the district judge in any way. However, the undersigned must take a "peek" at the merits in order to assess the validity of the stay of discovery motion. Moreover, merely a colorable defense usually will not qualify to stay discovery. Generally, there must be *no question* in the undersigned's mind that the dispositive motion will prevail, and that therefore, discovery is a waste of effort. Absent extraordinary circumstances, and this case may possess these circumstances, progress in a litigation should not be delayed simply because a non-frivolous motion has been filed.

Second, the court must determine whether the pending dispositive motion can be decided absent additional discovery. See, e.g., Church of Scientology of San Francisco v.

1  Internal Revenue Service, 991 F.2d 560, 563 (9th Cir. 1993), vacated in part on other grounds, 30
2  F.3d 101 (9th Cir. 1994).  If the court answers these two questions in the affirmative, a protective
3  order may issue.  However, if either prong of this test is negative, discovery proceeds.  Denying a
4  protective order is particularly appropriate if a stay of discovery could preclude either party from
5  fully preparing for the pending dispositive motion.  Id.  Because defendants' motion to dismiss
6  can be decided without further discovery, or further discovery on jurisdictional issues must await
7  a ruling by Judge Burrell to bifurcate jurisdictional issues from case resolution issues, this second
8  factor is deemed to exist.

   *Whether There Is "No Question" But That the Action Will Be Dismissed and If Not,*
   *Whether Extraordinary Circumstance Exist*

   The undersigned is not persuaded that there is "no question" that CSPA lacks standing, or that the case is Article III moot.  With respect to standing, and the concrete injury analysis within standing, the court has focused in on paragraph 15, 17, and especially 18 of the Second Amended Complaint, and does not find that the allegations are patently insufficient.  The undersigned quotes the pertinent parts:

> With every rainfall event, hundreds of thousands of gallons of polluted storm water originating from industrial facilities discharge to Butte Creek, Comanche Creek, North Fork Honcut Creek, the Feather River, the Sacramento River, and the Sacramento-San Joaquin Delta.
> ***
> Plaintiff [CSPA]...has approximately 2,000 members who live, recreate and work in and around waters of the State of California, including [the aforementioned creeks and rivers]. CSPA is dedicated to the preservation, protection and defense of environment, and the wildlife and the natural resources of all waters of California....
> .....Members of CSPA use and enjoy the [aforementioned creeks and rivers], into which Defendants have caused, are causing, and will continue to cause, pollutants to be discharged.  Members of CSPA use these areas to fish, sail, boat, kayak, swim, birdwatch, view wildlife and engage in scientific study.... Defendants' discharges of pollutants threaten to impair each of those uses or contribute to such threats and impairments.  Thus, the interests of CSPA's members have been, are being, and will continue to be adversely affected by Defendants' ongoing failure to comply with the Clean Water Act.

   CSPA appears to allege standing on behalf of itself and that of its members.  First

1. CSPA directly alleges that its interests are injured as an association:

> "'There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy.'")

American Civil Liberties Union, Nev. v. Heller, 378 F.3d 979, 984-85 (9th Cir. 2004) quoting Warth v. Seldin, 422 U.S. 490, 511, 95 S.Ct. 2197 (1975).

And, at the pleading stage, general allegations of harm suffice: "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" National Wildlife Federation, supra, 497 U.S., at 889, 110 S.Ct., at 3189 Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 2137 (1992).

With respect to associational standing:

> An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 181, 120 S.Ct. 693, (2000).

> "It is common ground that ... [an] organization[ ] can assert the standing of its members." Summers, 129 S.Ct. at 1149. But the organization asserting standing must provide "specific allegations establishing that at least one identified member [has] suffered or would suffer harm," id. at 1151, and "generalized harm ... will not alone support standing," id. at 1149.

Western Watershed Project v. Kraayenbrick, 620 F.3d 1187, 1197 (9th Cir. 2010)

While defendants bring a colorable motion on standing, the issue of standing in this case is far from a "no question" matter. It would appear from general pleading that the CSPA may have alleged sufficient injury to its own interests, at least at this stage of the case, although this is by no means a foregone conclusion.[5] While associational standing is presently a

---

[5] Further, the undersigned does not understand standing, as defendants appear to urge, to require a specific "body count" of dead creatures before a suit under the Clean Water Act may

9

more difficult issue for CSPA in that no individual member has been identified, even if this is a problem, it is easily subject to amendment.

Finally, while defendants profess to have many factual disputes with the allegations set forth above, the undersigned could not find these disputes in defendants' favor without further factual development. Ultimately, in this case, that is not the job of the undersigned, but of the district judge. The undersigned would not stop discovery simply because defendants alleged factual disputes; indeed, it might be perverse to do so.

Thus, looking to the question of standing in a vacuum, the court would not grant the protective order staying discovery.

Article III mootness is a different issue, but the undersigned does not discuss the merits of this further because he believes that the statutory bar to proceeding in certain CWA cases mirrors the better arguments which encompass many of the argued mootness aspects. In this respect, the undersigned views defendants' argument as going from colorable to strong.

The Clean Water Act contains a bar to a private citizen suit in federal court.

> (A) Limitation on actions under other sections
> Action taken by the Administrator or the Secretary, as the case may be, under this subsection shall not affect or limit the Administrator's or Secretary's authority to enforce any provision of this chapter; except that any violation--
> (i) with respect to which the Administrator or the Secretary has commenced and is diligently prosecuting an action under this subsection,
> (ii) with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection, or
> (iii) for which the Administrator, the Secretary, or the State has issued a final order not subject to further judicial review and the violator has paid a penalty assessed under this subsection, or such comparable State law, as the case may be,
> shall not be the subject of a civil penalty action under subsection (d) of this section or section 1321(b) of this title or section 1365 of this title.

33 U.S.C. § 1319(g)(6)

---

progress.

At first glance, subsections (ii) and (iii) appear to be applicable. Either the Butte County actions are ongoing, or are final but subject to ongoing monitoring and inspections as a result of the Consent Orders. If defendants are to be believed, they paid a rather large "penalty" to resolve the actions. The facts appear to mirror the statutory preclusion of a private CWA action, although again, the undersigned recognizes that CSPA has not had much of an opportunity to respond to the specific arguments in the motion to dismiss.

Defendants cite Citizens for a Better Environment v. Union Oil Co., 83 F3d 1111 (9th Cir. 1996), in order to contrast their situation from that of Union Oil. The Ninth Circuit held that the payment made by Union Oil, in the nature of a settlement to ward off an enforcement action, was not a penalty *per se*, and hence not a bar to a CWA action as the payment provision was not made under a state law "comparable" to the CWA penalty provision. In this case, defendants assert that an actual penalty was paid in the state criminal action, or both state actions, pursuant to Cal. Health and Safety Code § 25189(b). The argument is a strong one. The undersigned hesitates to use the "no question" standard in that CSPA has not responded to the motion.[6] But, it is close to qualifying.

However, even if the undersigned has misjudged the strength of defendants' argument, there exist extraordinary circumstances which weigh in favor of a stay. Judge Burrell can make one of three determinations on defendants' motion. First, he may grant the motion which, of course, obviates the need for any discovery.

Judge Burrell could also determine that the jurisdictional issues are in further need of development. If he did so, there would be no need for discovery on all aspects of the case; at most discovery would initially be directed towards the standing issues. It would make sense in this circumstance to await such a determination before allowing discovery to proceed full speed.

---

[6] An issue also exists, one which splits the circuits, concerning whether the equitable relief portions of the complaint would survive a "civil penalty" bar. See Paper, Allied-Industrial etc. v. Continental Carbon Co., 428 F.3d 1285, 1298-1299 (10th Cir. 2005) and cases discussed therein. Apparently the Ninth Circuit has not ruled on the issue.

1         Third, the motion may be denied in its entirety. Nevertheless, there still does exist
2 a parallel state action(s) in which a good deal, if not most, discovery would be duplicative.
3 Indeed, it has been shown that the EPA has informally been assisting state authorities in the state
4 actions regarding storm water issues. Prior to engaging in full discovery in a vacuum in this
5 federal case, the undersigned would require the parties to meet and confer and arrive at a plan
6 which would reduce as much as possible duplication in the areas of document production and
7 inspections. Given the possibility for rulings in the first and second situations above, it makes
8 sense to presently stay discovery, and the meet and confers, until Judge Burrell actually issues his
9 ruling.

*Conclusion*

11         In light of all the considerations above, discovery is stayed in this case until Judge
12 Burrell issues his ruling on defendants' motion to dismiss. If the motion is denied in whole or in
13 part, or otherwise continued for evidentiary hearing, the parties shall at that time forthwith
14 contact the courtroom clerk of the undersigned to set a discovery conference schedule.

15         Therefore, IT IS HEREBY ORDERED that

16         1. Defendants' motion for protective order filed November 22, 2010, (dkt. #23),is
17 granted, and defendants' request for a temporary stay, filed January 7, 2011, (dkt. #38), is
18 granted. All discovery in this federal action is stayed. Discovery may not be undertaken by *any*
19 party until further order of the court. Nothing in this order precludes CSPA from requesting to
20 informally join/assist with state authorities to conduct inspections pertinent to the state actions
21 referenced in this order, as such inspections in the pending/resolved state actions may be
22 scheduled.

23 \\\\\
24 \\\\\
25 \\\\\
26 \\\\\

2. Plaintiff's motion to compel inspections of land and property, filed November 11, 2010, (dkt. #18), is denied without prejudice.

DATED: January 14, 2011

/s/ Gregory G. Hollows

U. S. MAGISTRATE JUDGE

GGH:076/CSPA1207.mtns.wpd