IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>CHICO SCRAP METAL, INC., a California corporation; GEORGE W. SCOTT, SR. REVOCABLE INTER VIVOS TRUST; GEORGE SCOTT, SR., an individual; and GEORGE SCOTT, JR., an individual,<br><br>　　　　　Defendants. | 2:10-cv-01207-GEB-GGH<br><br>ORDER DISMISSING ACTION FOR LACK OF JURISDICTION |

　　　　Defendants move for an order dismissing this citizen water pollution enforcement action. Plaintiff alleges in this action twelve claims under the Federal Water Pollution Control Act ("Clean Water Act" or "CWA"), and three claims under California Health & Safety Code section 25249.5 et seq. Plaintiff alleges in its CWA claims that Defendants' discharges of pollutants from scrap metal facilities they operate violates Defendants' permits issued under the National Pollutant Discharge Elimination System ("NPDES"). Defendants argue in their dismissal motion: 1) Plaintiff lacks standing to bring its claims; 2) Plaintiff's claims are moot; and 3) the CWA "civil penalty" bar in 33 U.S.C. 1319(g)(6)(a)(ii) deprives this Court of jurisdiction over Plaintiffs' claims.

　　　　Defendants' dismissal motion includes a request that judicial notice be taken of the following documents which are part of California state court criminal cases involving three of the named Defendants in

1

the instant federal lawsuit: 1) "Imminent and Substantial Endangerment Determination and Remedial Action Consent Order[s]" dated October 1, 2008; 2) a "Terms of Plea" filed in Butte County Superior Court in California on October 17, 2008; and 3) a "Conditions of Probation/Conditional & Revocable Release" dated October 20, 2008. Further, following oral argument on the dismissal motion, Defendants requested that judicial notice be taken of the following document which is part of the same state court criminal cases: "Petition for Violation of Probation" dated June 6, 2011. These judicial notice requests are granted since referenced documents "have a direct relation to matters at issue" in this federal court action. U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992).

Defendants' dismissal motion was heard on February 7, 2011. Following oral argument on the motion, the Court realized the parties did not brief whether 33 U.S.C. § 1365(b)(1)(B) has a bearing on the Court's jurisdiction over this federal lawsuit, and therefore ordered briefing on this issue. § 1365(b)(1)(B) deprives a court of jurisdiction over a CWA citizen enforcement action "if the . . . State has commenced and is diligently prosecuting a civil or criminal action in a court of . . . a State to require compliance with [an effluent] standard [or] limitation[.]" 33 U.S.C. § 1365(b)(1)(B).

Defendants operate scrap metal facilities in Butte County, California ("scrap metal facilities"), under NPDES permits issued by the state of California. (Decl. of Kim Scott in Supp. of Defs.' Mot to Dismiss ("Scott Decl.") ¶¶ 1, 5.) NPDES permits "make the generally applicable effluent limitations and other water quality standards [promulgated under the CWA] the individual obligation of the discharger." Sierra Club v. Chevron, 834 F.2d 1517, 1519 (9th Cir.

1987). "[C]ertain states are authorized to issue NPDES permits to discharging entities within the state." Id. (citing 33 U.S.C. §§ 1251(b), 1342(b)). "California maintains an NPDES permit program that has been approved by the EPA Administrator." Id. (citing CAL. WATER CODE § 13370 et seq.).

In 2007, the state of California commenced individual criminal actions against three of the named Defendants in this federal court lawsuit ("criminal Defendants"). (Defs.' Req. for Judicial Notice ("Defs.' RJN") Ex. B, at 1:17-24.) The state of California alleged these criminal Defendants were responsible for violating various state environmental laws when operating the scrap metal facilities. Id.

In October of 2008, these state criminal Defendants entered into a "global" plea agreement that resolved each state criminal case. Id. Ex. B, at 2:1, 13:20-21. Part of this plea agreement "placed [each Defendant] on five years informal court probation" commencing in October of 2008. Id. Ex. B, at 4:2, 15:8. These criminal Defendants also entered into consent orders with the California Department of Toxic Substances Control ("DTSC") concerning each scrap metal facility. Id. Ex. A, at 194, 359, 542. Terms in the criminal Defendants criminal probation obligated each criminal Defendant to comply with the referenced DTSC consent orders. Id. Ex C, at 1-2. Each consent order contains the following provision: "Maintain Drainage Control: [Defendants] agree to maintain drainage control that meets, at a minimum, . . . the Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities as adopted by the California State Water Quality Control Board." Id. Ex. A, at 202, 368, 550. Further, pursuant to the plea agreement, the state of California imposed a fine of $700,000 on the criminal Defendants, $500,000 of which "is suspended pending

1  satisfactory completion of the terms of probation including the
2  certification by the [DTSC] that [the criminal Defendants have]
3  successfully complied with the requirements of the [consent orders]."
4  Id. Ex. B, at 2:22, 2:25-3:2, 13:27-28, 14:3-7.

5      In December of 2009, the California Regional Water Quality
6  Control Board, Central Valley Region ("CWQCB") sent letters to Defendant
7  Chico Scrap Metals, Inc., a named defendant in this federal lawsuit, in
8  which it states: storm water runoff from the scrap metal facilities
9  exceed the Environmental Protection Agency ("EPA") benchmarks. (Scott
10 Decl. ¶ 8; Ex. A.) Each letter also states: "failure to respond to the
11 exceedances . . . is a violation of the [NPDES] Permit[s]." Id. Ex. A.

12     On March 17, 2010, Plaintiff provided notices to the
13 Defendants in this federal civil water pollution action which informs
14 them of CWA violations occurring at the scrap metal facilities. (Id. ¶
15 11; Second Am. Compl. ("SAC") ¶ 2.) Plaintiff filed its initial
16 Complaint in this federal lawsuit on May 17, 2010. In June of 2010, the
17 CWQCB "issued a Notice of Violation [of Defendants' NPDES permits] for
18 . . . the [scrap metal] facilities." (Scott Decl. ¶ 9.)  On June 6,
19 2011, the state of California filed a "Petition for Violation of
20 Probation" in each above referenced state court criminal case, in which
21 it alleges that the criminal Defendants violated probation by, inter
22 alia, violating the NPDES permits at the scrap metal facilities. (Defs.'
23 Supplemental Request for Judicial Notice, Addendum A, ¶¶ 8, 14, 15, 24,
24 June 29, 2011.)

25     "Congress enacted the CWA 'to restore and maintain the
26 chemical, physical, and biological integrity of the Nation's waters.'"
27 The Piney Run Pres. Ass'n v. The Cnty. Comm'rs of Carroll Cnty., MD, 523
28 F.3d 453, 455 (4th Cir. 2008) (quoting 33 U.S.C. § 1251).

> To serve those ends, the Act prohibits the discharge of any pollutant by any person unless done in compliance with some provision of the Act. One such provision, codified at 33 U.S.C. § 1342, established a National Pollution Discharge Elimination System that is designed to prevent harmful discharges into the Nation's waters. Generally speaking, the NPDES requires dischargers to obtain permits that place limits on the type and quantity of pollutants that can be released into the Nation's waters. An NPDES permit defines, and facilitates compliance with, and enforcement of, a preponderance of a discharger's obligations under the Act. The [EPA} initially administers the NPDES permitting system for each State, but a State may apply for a transfer of permitting authority to state officials. If authority is transferred, then state officials have the primary responsibility for reviewing and approving NPDES discharge permits, albeit with continuing EPA oversight. . . .
>
> Although the primary responsibility for enforcement rests with the state and federal governments, private citizens provide a second level of enforcement and can serve as a check to ensure the state and federal governments are diligent in prosecuting Clean Water Act violations. Specifically, § 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes citizens to bring suit against any NPDES permit holder who has allegedly violated its permit. We have recognized that this citizen suit provision is critical to the enforcement of the CWA, as it allows citizens to abate pollution when the government cannot or will not command compliance. However, citizen suits are meant to supplement rather than to supplant governmental action, and the CWA - specifically § 1365(b)(1)(B)- bars a citizen from suing if the EPA or the State has already commenced, and is 'diligently prosecuting,' an enforcement action. This statutory bar is an exception to the jurisdiction granted in subsection (a) of § 1365, and jurisdiction is normally determined as of the time of the filing of a complaint.

<u>Id.</u> at 455-456 (internal quotation marks and citations omitted).

Here, the existence of jurisdiction is decided by determining whether 33 U.S.C. § 1365(b)(1)(B) bars Plaintiff's federal CWA citizen enforcement action based on the commencement of criminal state prosecutions against the criminal Defendants in California state court,

1  and the prosecution of those cases. § 1365(b)(1)(B) prescribes a federal
2  court is without jurisdiction over a CWA citizen enforcement action if
3  the "State has commenced and is diligently prosecuting a . . . criminal
4  action in [state court] to require compliance with [an effluent]
5  standard [or] limitation[.]" 33 U.S.C. § 1365(b)(1)(B). "An effluent
6  standard or limitation includes a 'permit or condition thereof.'" Sierra
7  Club v. City and Cnty. of Honolulu, No. 04-00463 DAE-BMK, 2008 WL
8  1968317, at *4 (D. Hawaii May 7, 2008) (quoting 33 U.S.C. § 1365(f)).
9  Plaintiff "bears the burden of proving that [the state of California]
10 has not diligently prosecuted [its state criminal cases against the
11 criminal Defendants based their violations of their NPDES permits]."
12 Piney Run, 523 F.3d at 459. "A CWA enforcement prosecution will
13 ordinarily be considered 'diligent' if the judicial action 'is capable
14 of requiring compliance with the [CWA] and is in good faith calculated
15 to do so[.] . . . [D]iligence is presumed." Id. (quoting Friends of
16 Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist., 382 F.3d 743, 760
17 (7th Cir. 2004)).

18         The October 2008 probation order, which governs the criminal
19 Defendants' probation and incorporates by reference the three consent
20 orders, constitutes a "commenced . . . action in a court of . . . a
21 State" under § 1365(b)(1)(B). See Friends of Milwaukee's Rivers, 382
22 F.3d at 753 (stating that stipulations and consent orders filed during
23 pending lawsuits constitute "commenced judicial enforcement action[s]");
24 cf. Sierra Club, 2008 WL 1968317, at * 5 (analyzing consent decrees
25 filed as part of EPA judicial enforcement action when determining
26 whether a subsequently filed citizen suit was barred under §
27 1365(b)(1)(B)). The state court criminal probation orders also require
28 each criminal Defendant to comply with the effluent standards and

limitations in their NPDES permits. Further, the Petition for Violation of Probation filed in the state court criminal cases evinces that California is diligently prosecuting the criminal Defendants. Therefore, the § 1365(b)(1)(B) bar prevents the federal court from having jurisdiction in this federal lawsuit, even though some of the defendants in this federal lawsuit were not on state probation in the state criminal cases.

> Section 1365(b)(1)(B) does not speak of diligently prosecuting particular defendants but of "diligently prosecuting a civil or criminal action . . . to require compliance." Even a diligent prosecutor may decide that the strategically appropriate course of action is to [pursue an action] against a particular set of parties rather than to pursue further action against all parties alleged to have violated provisions of the CWA.

Karr v. Hefner, 475 F.3d 1192, 1199-1200 (10th Cir. 2007) (affirming dismissal of nine Defendants under § 1365(b)(1)(B) even though a prior EPA action "resulted in a consent decree against only two of [those] Defendants").

Therefore, Plaintiff's CWA claims are barred by 33 U.S.C. § 1365(b)(1)(B) and are dismissed for lack of jurisdiction. Because of this ruling, the Court lacks supplemental jurisdiction over Plaintiff's state claims, and those claims are dismissed.

This action shall be closed.

Dated: July 15, 2011

_____
GARLAND E. BURRELL, JR.
United States District Judge