UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>CHICO SCRAP METAL, INC., ET AL.,<br><br>Defendants. | No. 2:10-cv-1207 GEB AC<br><br><br>ORDER |

On January 22, 2014, the court held a hearing on plaintiff California Sportfishing Protection Alliance's ("CSPA") motion to quash or modify subpoenas. Andrew Packard appeared for plaintiff. Therese Cannata appeared for defendants. On review of the Joint Statement re Discovery Disagreement, upon review of the documents submitted for in camera review, upon hearing the arguments of counsel, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[1]

Defendants own and operate three scrap metal recycling facilities in Butte County, California. The facilities receive scrap metal, salvage vehicles, and process other waste for

---

[1] Many of the facts are taken from the Ninth Circuit opinion issued on appeal in this case in California Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc. et al., 728 F.3d 868, 871 (9th Cir. 2013).

1

recycling and disposal.

Defendants' facilities are subject to the requirements and conditions contained in California's Industrial Activities Storm Water General Permit ("the Permit"), a National Pollutant Discharge Elimination System ("NPDES") general permit issued by the California State Water Resources Control Board ("the Board") pursuant to its authority under the Porter–Cologne Water Quality Control Act, Cal. Water Code §§ 13370–13389.[2]  A violation of the Permit is a violation of the Clean Water Act, 33 U.S.C. § 1365(a)(1), because the Act prohibits the discharge of any pollutant into the waters of the United States, except in compliance with an applicable NPDES permit. 33 U.S.C. §§ 1311(a), 1342(a)(1), (b) & (p).

In 2007, the California Department of Toxic Substances Control ("CDTSC") initiated an investigation of defendants' facilities after discovering that concrete and construction debris had been dumped in wetlands on some of defendants' land.  The CDTSC extended the investigation to defendants' three recycling facilities and found high levels of hazardous contamination.  The CDTSC ordered defendants to "characterize" the extent of contamination, but defendants did not comply.

In 2007 and 2008, the Butte County district attorney filed civil and criminal actions against defendants, alleging numerous violations of state environmental and occupational safety laws.  The civil complaint alleged that defendants were liable under various state laws for "unlawfully stor[ing], transport[ing,] and dispos[ing] of hazardous waste."  Specifically, the State asserted claims under California's Health and Safety Code, sections 25189.5 and 25189.6 (improper handling and disposal of hazardous waste); Business and Professions Code, sections 17203, 17204, 17206(b) (engaging in unfair business practices); and Fish and Game Code, section 5650(f) (depositing substances that are deleterious to fish, plant, or bird life into state waters).  In two criminal actions, the State charged defendants with violations of the Health and

---

[2] The Board has authority to issue NPDES permits under the Porter–Cologne Act because the Clean Water Act allows states, after obtaining federal approval, to implement NPDES through state law and administrative actions. 33 U.S.C. § 1342(b); see also Cal. Water Code § 13370(c) (providing that the state act "authorize[s] the state to implement the provisions of [the federal Act]"); 40 C.F.R. § 122.28(a) (authorizing the use of general permits in lieu of individualized NPDES permits).

Safety Code, 25189.5(a) (disposing of hazardous waste without a permit), 25189.6(a) (reckless handling of hazardous waste), 25503.5(a) (failing to submit a hazardous material release response plan after notice), 25507 (failing to report immediately a release of hazardous substances), 25509(a) (failing to inventory hazardous substances), sections 42400(a) (violating air quality rules), 42400.1(a) (negligently emitting air contaminants), 42400.2(a) (knowingly emitting air contaminants); Vehicle Code, section 11500 (acting as an automobile dismantler without a license or in violation of site requirements); Labor Code, section 6423 (violating hazardous substances removal protective standards in a workplace); Penal Code, sections 166 (criminal contempt), 373a (failing to abate a nuisance after notice), and 374.8 (depositing hazardous substances onto a road, street, highway, or into waters of the state); and Code of Regulations, title 22, section 66262.34(f) (failing to label hazardous waste containers).

In October 2008, defendants entered into a plea agreement that resolved both the civil and the criminal proceedings. The agreement provided that defendants would pay fines and serve a term of probation.[3] Among other things, the agreement required defendants to abide by three remedial action consent orders that the CDTSC had issued during the previous month. Among other requirements, the consent orders required defendants to clean up hazardous substances detected at the three facilities and to reduce potential human exposure to those substances. The plea agreement allowed defendant Chico Scrap Metal to continue operating the facilities during the probation term so as to generate revenue to pay for the cleanups.

In January 2010, the Federal Environmental Protection Agency ("EPA") inspected defendants' three facilities and found that the sites' storm water management systems failed to comply with the Permit. In March, plaintiff sent defendants, as well as state and federal agencies, notice of its intent to sue defendants under the Act for violations of the Permit. The notices alleged ongoing violations of the storm water permit at defendants' three facilities. Neither state nor federal officials commenced any enforcement proceedings under the Act after receiving the notices.

---

[3] Defendants assert that this term of probation is now concluded. See Cannata Decl., Ex. 2 (Nov. 27, 1993 Order of State Court).

In May 2010, plaintiff filed this action. The complaint alleges violations of provisions of the Permit that (1) prohibit discharges of polluted storm water, (2) require preparation of a "Storm Water Pollution Prevention Plan," (3) require the use of certain pollution control technologies for storm water discharges, and (4) require implementation of a storm water monitoring and reporting program.

In June 2010, the California Water Quality Control Board issued notices to defendants that they were in violation of the Permit, citing the January 2010 inspections. The notices requested that defendants submit a report describing how the violations were being addressed.

Defendants then moved to dismiss this federal action, arguing that plaintiff's claims were barred by one of the Act's "diligent prosecution" bars, 33 U.S.C. § 1319(g)(6)(A)(ii). The district court ordered supplemental briefing on whether a different "diligent prosecution" bar, § 1365(b)(1)(B), also applied. The court ultimately ruled that § 1365(b)(1)(B) barred plaintiff's citizen suit without reaching the potential application of § 1319(g)(6)(A)(ii), and accordingly dismissed the action.

Plaintiff timely appealed. Harold M. Thomas, Special Deputy District Attorney, Office of Butte County District Attorney ("Deputy DA Thomas"), filed an Amicus Curiae brief arguing against preclusion of plaintiff's claims and stating that the State's most recent efforts to revoke defendants' probation terms were intended to obtain remedies under the State's hazardous waste laws and not under the Act and that the State's prosecution and resulting probation terms (1) were never intended to address compliance with the California Storm Water Permit; (2) did not identify any violations of the Storm Water Permit; and (3) did not specify any Storm Water Permit compliance measures. Pl.-Appellant's Reply Br. at 10 (citing State Amicus Br. at 8, 10, 14).

Plaintiff also argued on appeal that the nature of the instant suit differed markedly from the State Action. Pl.-Appellant's Brief, Cannata Decl., Ex. Q at 23, ECF No. 106-5 at 56. Per plaintiff, in the State Action defendants faced six felonies involving the illegal disposal and storage of hazardous waste under the California law and 26 misdemeanors involving various hazardous material, waste, and air quality violations. In this action, defendants are sued for alleged violations of federal law, the CWA. See id. 23-29.

The Ninth Circuit ultimately held that (1) suit was not barred by CWA provision barring citizen suit when a state has diligently prosecuted action to require compliance with the standard, limitation, or order, and (2) suit was not barred by CWA provision barring citizen suit when a state has diligently prosecuted action under a comparable state law. The decision of the district judge was therefore reversed and this action remanded for further proceedings.

Following remand, plaintiff filed the operative third amended complaint pursuant to the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387, and California Health & Safety Code § 25249.5 et seq. Plaintiff is now moving solely against one of defendants' three facilities, Chico Scrap Metal's Oroville location ("CSM-NorCal"). Plaintiff seeks declaratory and injunctive relief.

## DISCOVERY DISPUTE

A.  General Background

On October 23, 2013, defendants issued subpoenas to the Custodian of Records for the Butte County Office of the District Attorney ("the DA's Office") and to Deputy DA Thomas pursuant to Federal Rule of Civil Procedure 45 for the production of certain documents and communications. The subpoena to the DA's Office included eighteen requests for production and the subpoena to Deputy DA Thomas included twenty requests. Id.

On November 6, 2013, plaintiff moved to quash or modify ten requests addressed to the DA's Office and ten requests addressed to Deputy DA Thomas. On November 20, 2013, defendant filed an opposition. Because they failed to file a joint discovery statement and because there was no evidence that the parties met and conferred, the hearing on this dispute was continued to January 29, 2014. The parties have now filed a joint discovery statement.

B.  The Parties' Positions

    1.  Plaintiff

Per plaintiff, the documents responsive to the challenged requests consist of various communications with plaintiff's counsel concerning defendants and related to (1) this litigation, including drafting of Deputy District Attorney's *amicus curiae* brief; (2) various enforcement actions filed by the Butte County District Attorney's Office against defendants; and (3) actions

filed by defendants in both state and federal court against the Butte County District Attorney's Office and their individual employees and DTSC.

Plaintiff argues that requests Nos. 1-4 and Nos. 9-12 seek documents that are protected as attorney work product under Federal Rule of Civil Procedure 45(c)(3)(A)(iii); and that requests Nos. 5-8 seek documents protected as unretained expert's opinion under the Federal Rule of Civil Procedure 45(c)(3)(B)(ii).

2.  Defendants

Defendants oppose the motion to quash on the grounds that (1) plaintiff has no standing to quash the subpoenas insofar as they seek documents prepared by John Lane and/or Chico Environmental (Mr. Lane's consulting firm); (2) Rule 45's protection for non-retained individuals is inapplicable because Mr. Lane is a consultant retained by plaintiff and not, as plaintiff now claims, a non-retained expert; (3) plaintiff waived the work-product protection by disclosing information to third parties; and (4) plaintiff is judicially estopped from arguing that it has a common interest with Deputy DA Thomas and/or the DA's Office.

LEGAL STANDARDS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The court must limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii). The court may also limit the extent of discovery to protect a party or person from annoyance, embarrassment, oppression, undue burden or other improper purposes. Fed. R. Civ. P. 26(c)(1), 26(g)(1)(B)(ii).

A nonparty may be compelled to produce documents and tangible things via a Rule 45 subpoena. Fed. R. Civ. P. 34(c). Rule 45 permits a party to issue a "subpoena commanding the person to whom it is directed to attend and give testimony or to produce and permit inspection of

designated records or things." Fed. R. Civ. P. 45(a)(1)(C). The recipient may object to a subpoena, or move to quash or modify it. Fed. R. Civ. P. 45(c)(2), 45(c)(3). "The district court has wide discretion in controlling discovery" and "will not be overturned unless there is a clear abuse of discretion." Little v. City of Seattle, 863 F.2d 681, 685 (9th Cir. 1988).

"[T]he court that issued the subpoena . . . can entertain a motion to quash or modify a subpoena." S.E.C. v. CMKM Diamonds, Inc., 656 F.3d 829, 832 (9th Cir. 2011). The issuing court *must* quash or modify a subpoena that:

> (i) fails to allow a reasonable time to comply;
>
> (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person-except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(c)(3)(A).

Additionally, the issuing court *may* quash or modify a subpoena if it requires:

> (i) disclosing a trade secret or other confidential research, development, or commercial information;
>
> (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
>
> (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

Fed. R. Civ. P. 45(c)(3)(B).

DISCUSSION

A.   Standing to Quash Subpoenas Directed to Third Parties

The preliminary issue before the court is whether plaintiff has standing to move to quash subpoenas directed to third parties. The Ninth Circuit has yet to address the question of whether a party has standing to bring a motion to quash since usually only the subpoenaed non-party may move to quash. The general rule, however, is that a party has no standing to quash a subpoena

served upon a third party, except as to claims of privilege relating to the documents being sought. Windsor v. Martindale, 175 F.R.D. 665, 668 (D. Colo. 1997).

With respect to plaintiff's motion to quash based on the assertion of the work-product doctrine, the court finds that plaintiff has standing. However, the court also finds that plaintiff lacks standing to challenge the subpoenas to the extent they seek communications involving John Lane and/or Chico Environmental. As plaintiff concedes, it is not asserting a specific privilege as to documents and communications between the DA and Mr. Lane and/or Chico Environmental, but is instead asserting protection from disclosure to the extent that these communications include documents or communications prepared for plaintiff or by plaintiff's counsel.

Generally, Rule 26(b)(3) "limits . . . protection to one who is a party (or a party's representative) to the litigation in which discovery is sought." In re California Public Utilities Comm'n, 892 F.2d 778, 781 (9th Cir. 1989); see also Loustalet v. Refco, 154 F.R.D 243, 247 (C.D. Cal. 1993) (finding the work-product doctrine does not protect from discovery documents prepared for one who is not a party to the present suit, even if the person may be a party closely related to the lawsuit in which he will be disadvantaged if he must disclose in present suit); IP Co., LLC v. Cellnet Tech., Inc., 2008 WL 3876481 (N.D. Cal. Aug. 18, 2008).

Here, plaintiff has made no showing that any responsive documents prepared by Mr. Lane and/or Chico Environmental include documents prepared for plaintiff or by plaintiff's counsel. Having failed to make this necessary showing, the court finds that plaintiff lacks standing to move to quash the subpoenas to the extent the motion is directed to request Nos. 5 through 8.

B.   Work-Product Doctrine

  1.   The Requests at Issue

Plaintiff moves to quash or modify the subpoena requests No. 1 through No. 4 and No. 9 through No. 12[4] as protected by the attorney work-product doctrine. These requests are directed to communications between, on the one hand, the DA's Office and/or Deputy DA Thomas, and on the other hand, plaintiff and/or its counsel concerning defendants generally or CSM-Norcal

---

[4] Requests No. 9 and No. 10 served on DA's Office are identical to requests No. 11 and No. 12 served on Deputy DA Thomas.

8

specifically.

 2. <u>Analysis</u>

Notwithstanding the fact that plaintiff communicated and shared documents with third parties, it argues that the information defendants seek is subject to the attorney work-product doctrine and that disclosure did not waive the protection because the common-interest exception applies.

 a. <u>Are the Documents Protected by Work-Product Doctrine?</u>

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." <u>Id.</u> However, the broad scope of permissible discovery is limited by, among other things, the attorney work product doctrine. <u>See</u> Fed. R. Civ. P. 26(b) (3).

"The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." <u>In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management)</u>, 357 F.3d 900, 906 (9th Cir. 2004). Such documents may only be ordered produced upon an adverse party's demonstration of "substantial need [for] the materials" and "undue hardship [in obtaining] the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). In order to come within the work-product protection created by Rule 26(b)(3), the material must be (1) "documents and tangible things" (2) "prepared in anticipation of litigation or for trial" (3) "by or for another party or by or for that other party's representative."

The work product doctrine affords a qualified protection from discovery for all trial preparation materials prepared "in anticipation of litigation." <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947); Fed. R. Civ. P. 26(b)(3). "[B]ecause the work product doctrine is intended only to guard against the divulging of attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within the work product." <u>Garcia v. City of El Centro</u>, 214 F.R.D. 587, 591 (S.D. Cal. 2003) (citations omitted). "Only when a party

9

1  seeking discovery attempts to ascertain facts, 'which inherently reveal the attorney's mental
2  impression,' does the work product protection extend to the underlying facts." Id.

3  When a party withholds information otherwise discoverable by claiming that the
4  information is protected by the work product doctrine, the party must "(i) expressly make the
5  claim; and (ii) describe the nature of the documents, communications, or tangible things not
6  produced or disclosed – and do so in a manner that, without revealing information itself
7  privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).
8  "An existing privilege exemption from discovery must be raised in a proper fashion to be
9  effective in justifying a refusal to provide discovery. Failure to assert the privilege objection
10 correctly can mean that the privilege is waived." 8 Fed. Prac. & Proc. Civ. § 2016.1 (3d ed.).

11 Plaintiff has the burden of proving application of work product protection. Coastal States
12 Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). In camera inspection of
13 documents by this court "'is not a substitute for the [plaintiff's] burden of proof.'" Maricopa
14 Audubon Society v. U.S. Forest Service, 108 F.3d 1089, 1093 n.2 (9th Cir. 1997) (quoting
15 Church of Scientology of Cal. v. U.S. Dep't of the Army, 611 F.2d 738, 743 (9th Cir. 1979)).

16 On February 5, 2014, plaintiff delivered a revised privilege log and a CD to chambers for
17 in camera inspection of 58 documents for which it was asserting work-product protection. The
18 court has now reviewed these documents and finds only the following to be subject to protection:
19 CSPA001, CSPA003, CSPA007, CSPA015, CSPA017, CSPA025, CSPA027, CSPA033,
20 CSPA038, CSPA040, CSPA066, CSPA074, CSPA080-90, CSPA110, CSPA115, CSPA117,
21 CSPA120, and CSPA123.

22 The following documents are only partially subject to protection because they contain
23 clearly unprotected facts and/or documents and/or include communications with third parties for
24 whom plaintiff is not asserting the common interest exception. The producing party, though, may
25 redact those portions reflecting plaintiff's counsel's strategies or legal impressions: CSPA028[5],
26 CSPA047, CSPA062, CSPA064, CSPA091, CSPA097, and CSPA103.

---

[5] With respect to CSPA028 and CSPA062, each of which includes an attachment of plaintiff's
current case list, plaintiff is directed to redact only those cases that are not public.

10

The remaining documents are either clearly unprotected by the work-product doctrine as they do not reveal the attorney's strategies or legal impressions or, to the extent some documents could potentially have been demonstrated to constitute work product, the undersigned finds that plaintiff failed to meet its burden to establish the application of the doctrine.[6] Accordingly, other than those documents identified here, the remainder are subject to production.

          b.      <u>Waiver and the Common Interest Exception</u>

Having found that plaintiff met its burden of establishing the application of the work product doctrine as to those documents identified in the previous section, the court turns next to a determination whether plaintiff waived that protection by disclosing information to the DA's Office and/or Deputy DA Thomas.

Unlike attorney-client privilege, attorney work-product protection is not automatically waived upon disclosure to third parties. This is so because "the purpose of the work–product rule is not to protect the evidence from disclosure to the outside world but rather to protect it only from the knowledge of opposing counsel and his client, thereby preventing its use against the lawyer gathering the materials." Wright, Miller, Kane & Marcus, 8 Fed. Prac. & Proc. Civ. § 2024 (3d ed.). Accordingly, such disclosure generally "does not waive the work product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information." <u>Id.</u> "Disclosure to person with interest common to that of attorney or client is not inconsistent with intent to invoke work product doctrine's protection and would not amount to waiver." <u>In re Doe</u>, 662 F.2d 1073, 1081 (4th Cir. 1981).

If a document otherwise protected by work-product immunity is disclosed to others with an actual intention, or reasonable probability, that an opposing party may see the document, the party who made the disclosure cannot subsequently claim work-product immunity. <u>In re Imperial Corp. of Am.</u>, 167 F.R.D. 447, 456 (S.D.Cal.1995) aff'd, 92 F.3d 1503 (9th Cir.1996).

Plaintiff argues that it needed only a "reasonable basis" to believe that information shared

---

[6] Regarding CSP136, plaintiff produced this email thread for in camera inspection with redactions, making it impossible for the undersigned to determine whether the work-product doctrine is applicable. Because plaintiff failed to meet its burden as to this document, it must be produced without redactions.

11

with the DA's Office would not substantially increase the opportunity for defendants to obtain the information. Defendants, on the other hand, argue that the test is an objective standard – that is, whether a reasonable person would believe that information shared with a third party would increase the opportunity for defendants to obtain the information. For the reasons set forth below, the court finds that waiver did not occur, even under an objective standard as defendants propose, because the common interest exception is applicable here.

The common interest doctrine is not a privilege in and of itself; rather, it constitutes an exception to the rule on waiver where communications are disclosed to third parties. See United States v. Bergonzi, 216 F.R.D. 487, 495-96 (N.D. Cal. 2003) (discussing "the common interest exception to waiver of the attorney-client/work product privilege"). It is a narrow exception to the rule of waiver that provides that disclosure to a third party does not waive work product protection where the third party shares a common interest with the disclosing party that is adverse to that of the party seeking the discovery. See id. at 495.

The common interest exception is construed more narrowly in the context of attorney-client privilege than it is in the context of the attorney work product doctrine. United States v. Am. Tel. and Tel. Co., 642 F.2d 1285, 1298-99 (D.C. Cir. 1980); see McMorgan & Co. v. First California Mortg. Co., 931 F. Supp. 703, 709 (N.D. Cal. 1996) ("The standard for waiver of work product protection is more lenient than the standard for waiver of attorney-client privilege because the two privileges serve different purposes." (internal citations omitted)). In the work product context, common interests are not construed so narrowly as to limit the exception only to co-parties. Am. Tel. and Tel. Co., 642 F.2d at 1299. The shared interest may be only financial or commercial in nature. Pecover v. Elec. Arts Inc., 2011 WL 6020412, at *2 (N.D. Cal. Dec. 2, 2011). Essentially, a court must determine if disclosure is consistent with the work product doctrine's purpose of preserving the adversary system. See Am. Tel. and Tel. Co., 642 F.2d at 1299; see also United States v. Deloitte LLP, 610 F.3d 129, 141 (D.C. Cir. 2010) (finding no waiver where the disclosing party had "a reasonable basis for believing that the recipient would keep the disclosed material confidential").

The great weight of authority holds that disclosure of work product to individuals who

share a common interest with the disclosing party does not constitute waiver. For example, in Stix Products, Inc. v. United Merchants & Mfrs., Inc., the district court held that disclosure to counsel for a party with interests adverse to that of the party seeking discovery does not constitute a waiver of work product immunity. 47 F.R.D. 334, 338 (S.D.N.Y.1969). In United States v. Deloitte LLP, the D.C. Circuit held that a corporation did not waive work-product protection by disclosing documents to its independent auditor because the auditor was not an adversary of the corporation. 610 F.3d 129, 139-40 (D.C. Cir. 2010). In Castle v. Sangamo Weston, Inc., the Eleventh Circuit held that transfer of work-product materials between private plaintiffs' attorneys and Equal Employment Opportunity Commission did not constitute waiver of work-product privilege, where private plaintiffs' attorneys and counsel for Commission were engaged in the preparation of a joint-trial at time transfer was made. 744 F.2d 1464, 1466-67 (11th Cir. 1984). In Goff v. Harrah's Operating Co., Inc., the court held that work-product immunity is not based on the confidentiality of the attorney-client relationship, and it does not disappear when the wall of confidentiality is breached, unless the breach has substantially increased the opportunities for potential adversaries to obtain the information. 240 F.R.D. 659, 661-62 (D. Nev. 2007). Finally, in Ceco Steel Products Corp. v. H.K. Porter Co., the district court held that even where a disclosure to a third person was sufficient to create waiver of the attorney-client privilege, there still was not sufficient waiver of the work-product immunity. 31 F.R.D. 142, 143 (N.D. Ill. 1962).

Here, plaintiff proposes three reasons for a finding of commonality. First, both CSPA and the DA have a common interest in actively protecting water quality and public health. The DA is charged with, inter alia, protecting the citizens of Butte County from public nuisances, preventing exposure to hazardous waste, and protecting water quality, threatened and endangered species, and aquatic habitat for the enjoyment of the public. Similarly, plaintiff's *raison d'etre* is to protect water quality for the use and enjoyment of the public. Second, both plaintiff and the DA's Office have a shared interest in avoiding any statutory or common law bars to enforcement that might arise out of any duplication of effort. Plaintiff claims this strategy coordination to avoid duplication succeeded in overcoming defendants' motion to dismiss on appeal. Lastly, plaintiff

1   asserts that it and the DA have a shared interest in allocating their scarce resources towards the
2   highest and best uses.

3   While defendants are correct that a general interest in pursuing litigation in furtherance of
4   environmental causes and that a shared desire to make the best use of scarce resources are
5   insufficient to create a common interest, see, e.g., Verigy US, Inc. v. Mayder, 2008 WL 5063873,
6   at *4 (N.D. Cal. 2008), the facts of the present case lead the court to find a common interest
7   between plaintiff and the DA's Office. See, e.g., U.S. v. American Tel. and Tel. Co., 642 F.2d
8   1285, 1299-1300 (D.C. Cir. 1980) ("'[C]ommon interests' should not be construed as narrowly
9   limited to co-parties.  So long as the transferor and transferee anticipate litigation against a
10  common adversary on the same issue or issues, they have strong common interests in sharing the
11  fruit of trial preparation efforts.  Moreover, with common interests on a particular issue against a
12  common adversary, the transferee is not at all likely to disclose the work product material to the
13  adversary.")  First, both the DA's Office and plaintiff are pursuing environmental-impact
14  litigation based on a closely related set of facts.  Second, they are bringing their respective suits
15  against a common adversary. Loustalet v. Refco, Inc., 154 F.R.D. 243, 248 (C.D. Cal. 1993).
16  And lastly, the actions concern the same property(ies).

17  Defendants counter that plaintiff is barred from arguing the common interest doctrine
18  here in light of statements made by it and the Deputy DA Thomas before the Ninth Circuit that
19  their interests are in fact distinct from each other.  But as already noted, plaintiff and the DA did
20  not need to assert the same legal theories for the common interest doctrine to apply. See Pecover,
21  2011 WL 6020412, at *2 (shared interests could be financial or commercial in nature).  The court
22  agrees with plaintiff that it never contended that it has no common interest with the DA, but
23  rather that its claims are brought under different laws than the DA's claims.

24  Defendant also relies on two cases, Lord Abbett Mun. Inc. Fund, Inc. v. Asami, 2013 WL
25  5609333 (N.D. Cal. 2013), and In re Pac. Pictures Corp., 679 F.3d 1121 (9th Cir. 2012), to argue
26  that the common interest doctrine is narrowly tailored.  Both of these cases, however, involve the
27  assertion of the common interest doctrine in the context of the attorney-client privilege, not the
28  work-product doctrine.  Accordingly, neither case is on point. See McMorgan, 931 F. Supp. at

709 ("The standard for waiver of work product protection is more lenient than the standard for waiver of attorney-client privilege because the two privileges serve different purposes." (internal citations omitted)).

The court therefore concludes that the plaintiff's disclosure to the DA's Office and/or Deputy DA Thomas is consistent with the work product doctrine's purpose of preserving the adversary system, and therefore the common interest doctrine applies to the facts of this case.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to quash (ECF No. 102) is granted in part;
2. Plaintiff's motion is denied as to Request Nos. 5-8;
3. Plaintiff's motion is granted as to Request Nos. 1-4 and 9-12 as follows:
    a. The following documents are protected from disclosure entirely: CSPA001, CSPA003, CSPA007, CSPA015, CSPA017, CSPA025, CSPA027, CSPA033, CSPA038, CSPA040, CSPA066, CSPA074, CSPA080-90, CSPA110, CSPA115, CSPA117, CSPA120, and CSPA123;
    b. The following documents are partially protected and the subpoenaed party shall produce the documents with redactions consistent with this order: CSPA028, CSPA047, CSPA062, CSPA064, CSPA091, CSPA097, and CSPA103; and
    c. Those documents that were submitted to the court for in camera inspection but are not identified above are not subject to the work product privilege as asserted by plaintiff; the motion to quash is denied as to those documents.

DATED: February 14, 2014

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE