UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>         Plaintiff,<br><br>    v.<br><br>CHICO SCRAP METAL, INC., ET AL.,<br><br>         Defendants. | No.  2:10-cv-1207 GEB AC<br><br><br>ORDER |

On April 23, 2014, the court held a hearing on plaintiff California Sportfishing Protection Alliance's ("CSPA") motion to compel.  Andrew Packard appeared for plaintiff.  Therese Cannata and Kimberly Almazan appeared for defendants.  On review of the Joint Statement re Discovery Disagreement, upon hearing the arguments of counsel, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

Though the parties identify numerous issues in dispute in the fourth Joint Statement re Discovery Disagreement filed with the court,[1] see Cannata April 17, 2014 Decl., Ex. A, the undersigned will focus only on the issues whether plaintiff may test media other than storm water

---

[1] This Joint Statement re Discovery Disagreement is the fourth and last joint statement filed with the court concerning the instant discovery dispute.  Since it sets forth the parties' respective arguments in full and is signed by both parties, it is the only joint statement considered by the court.  The previous joint statements will be stricken from the record and plaintiff's April 17, 2014 request to strike will be denied as moot.

1

from the defendants' scrap metal facility ("the Facility") and whether plaintiff may conduct additional Dry and Wet Inspections beyond those anticipated in the Wet and Dry Inspection Stipulation entered into by the parties. As to the remaining disputes, the court finds no evidence of bad faith on the part of defendants. The court further finds that the disputes concerning the production of documents and an updated privilege log are unripe for adjudication as it is evident that the parties are continuing to meet and confer, and an amicable resolution appears imminent.

A.     <u>Testing of Media Other than Storm Water</u>

The first issue before the court is whether plaintiff may test media other than storm water discharging from the Facility. Plaintiff contends that it has been limited to testing only storm water discharging from the Facility and then only on Wet Inspection days. Defendants counter that testing of media other than storm water discharge is unnecessary to the prosecution of this action.

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The court must limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii). The court may also limit the extent of discovery to protect a party or person from annoyance, embarrassment, oppression, undue burden or other improper purposes. Fed. R. Civ. P. 26(c)(1), 26(g)(1)(B)(ii).

Federal Rule of Civil Procedure 34(a)(2) provides that a party may serve a request "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2).

Plaintiff argues that Rule 34(a)(2) is broadly written and that it is difficult to see how soil at the Facility is neither property nor a designated object on the property within the meaning of

1   Rule 34.  Plaintiff argues that testing of additional media is appropriate because any materials that
2   come into contact with rain falling on the Facility, and that have the potential to be enter storm
3   water discharged from the Facility, are relevant to the legal issues concerning the sufficiency of
4   storm water management practices, such as housekeeping and spill response, and to Storm Water
5   Pollution Prevention Plan compliance in general.
6       Plaintiff also contends that it needs to determine what other parameters defendants should
7   test for when taking storm water discharge samples, even though defendants assert that they
8   routinely tests for the full spectrum of metals commonly found in California soils and storm
9   water.  Defendants' essential argument regarding surface toxins is that "if it does not go up, down
10  or out," they are complying with the law in containing metals.  Plaintiff counters that defendants
11  are not testing for everything, including PCBs, and that the presence of certain metals on, for
12  example, the concrete at the Facility would evidence that defendants are not in fact complying
13  with Best Management Practices ("BMPs").
14      In opposition, defendants argue that the testing of any media beyond storm water is
15  irrelevant to the prosecution of this action.  They assert, first, that plaintiff is attempting to create
16  a false inference that the measurement of metals, at some defined levels in the water, is a
17  violation of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, even though, per defendants, both
18  the CWA and California agencies enforcing the CWA have refrained from setting numeric
19  effluent limitations under the General Permit.  See Joint Statement at 11-13.  Moreover,
20  defendants argue that the proper inquiry under the General Permit is whether defendants have, in
21  good faith and with positive effects, engaged in the iterative process, such that over each storm
22  season, the site's storm water management has improved in response to the outcome of the
23  preceding year's storm water test results.  In this regard, they argue that there is sufficient
24  evidence already from 2011 through mid-2013, as well as three site visits in 2014.  Defendants
25  also assert that storm water that discharges from the Facility site proceeds along ditches and
26  filters through natural vegetation before reaching a settling pond located near a downstream site.
27  Once there, depending on the storm event and in case of an overflow, it travels again through
28  approximately many miles of vegetation before reaching the Feather River.  Because testing

conducted by the Central Valley Regional Water Quality Control Board and plaintiff's own expert reveals no impairment for metals in this area, defendants argue that testing soil or any other media at the Facility is unnecessary.  Lastly, defendants argue that there are elevated levels of metals in background soils in and around the site due to volcanic rock formations common to the area, affecting the detection of metals on the site itself.

After hearing the arguments of counsel and weighing their respective positions, the court concludes that the broad scope of discovery entitles plaintiff to test media other than storm water discharge.

B.     Additional Dry and Wet Inspections

Also at issue is whether plaintiff is entitled to additional Dry and Wet Inspections. Previously, the parties entered into stipulations for Dry and Wet Inspection.  Per the Stipulations, plaintiff conducted one Dry Site Inspection (January 30, 2014, lasting two hours) and two Wet Site Inspections (February 27, lasting two hours, and March 31, 2014, lasting approximately 30 minutes).  The Wet Stipulation provided to the court notes that "[n]othing in this Stipulation shall constitute a waiver by any party of further discovery rights, including the right to demand further inspections. . . ."  See Pl.'s Exs., Ex. S ¶ 4 (ECF No. 138 at 77).

Plaintiff now seeks an additional Dry Inspection and two additional Wet Inspections. Plaintiff argues that the additional Dry Inspection is needed to document changing circumstances at the Facility, such as defendants' new BMP.  It states that it is willing to defer this inspection to September 2014 and to conduct it on a weekend to accommodate defendants' concerns about Facility closures.  As to the request for an additional Wet Inspection, plaintiff asks that the previous Wet Inspections not be counted against it because it was unable to test storm water discharge.

Defendants object to additional inspections as disruptive to its operations.  Because its operations include the use of large-scale and heavy machinery, which would be dangerous to those who do not know how to properly operate it, defendants close down their Facility to ensure the safety of all participating in the inspections.  This results in a loss of income for it and a loss of work and wages for its employees.  They also argue that it is burdensome and stressful to

4

1  management to have a hostile and opposing party present at the site.  Defendants have proposed
2  to conduct additional testing on its own and provide the information to plaintiff, a proposal that
3  plaintiff opposes.

4      While the court is sympathetic to defendants' concerns regarding the intrusiveness of the
5  inspections at the Facility, there is no dispute that defendants are consistently modifying their
6  BMPs and that plaintiffs have not yet been able to test storm water discharge during Wet
7  Inspections.  The court thus again finds that plaintiff's motion should be granted in light of the
8  broad scope of discovery and plaintiff's right to conduct tests without relying on those conducted
9  by defendants.

10      Accordingly, IT IS HEREBY ORDERED that:

11  1. Plaintiff's April 2, 2014 motion to compel (ECF No. 130) is granted in part.  Plaintiff
12  may test media other than storm water during one additional Dry Inspection day and
13  two additional Wet Inspection days.  Plaintiff's motion is denied as to the other issues
14  raised.  The parties shall bear their own costs.

15  2. Plaintiff's April 17, 2014 request to strike (ECF No. 140) is denied as moot.

16  DATED: April 25, 2014

17  _____
    ALLISON CLAIRE
18  UNITED STATES MAGISTRATE JUDGE