ANDREW L. PACKARD (State Bar No. 168690)
MEGAN E. TRUXILLO (State Bar No. 275746)
JOHN J. PRAGER (State Bar No. 289610)
Law Offices of Andrew L. Packard
100 Petaluma Blvd. N., Suite 301
Petaluma, CA 94952
Tel: (707) 763-7227
Fax: (707) 763-9227
E-mail: Andrew@packardlawoffices.com

ROBERT J. TUERCK (State Bar No. 255741)
Jackson & Tuerck
P.O. Box 148
429 W. Main Street, Suite C
Quincy, California 95971
Tel: (530) 283-0406
E-mail: bob@jacksontuerck.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>CHICO SCRAP METAL, INC. a California corporation, GEORGE SCOTT, SR., an individual, GEORGE SCOTT, SR. REVOCABLE INTER VIVOS TRUST, and GEORGE SCOTT, JR., an individual,<br><br>        Defendants. | Case No. 2:10-CV-01207-GEB-AC<br><br>**JOINT STATEMENT RE DISCOVERY DISAGREEMENT (L.R. 251(b), (c))**<br><br>Hearing Date:  October 8, 2014<br>Time: 10:00 am<br>Courtroom:  26 |

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

1

## I.   INTRODUCTION

As required by Local Rule 251, the parties hereinafter briefly set forth their jointly held view on discovery issues raised by Plaintiff, unless otherwise specifically noted as being a view held separately by one or more of the respective parties.

### A.  Plaintiff's Statement

This case is a Federal Water Pollution Control Act ("Clean Water Act") citizen suit enforcement action filed by CSPA under section 505 of the Clean Water Act, 33 U.S.C. § 1365.  The Complaint alleges that Defendants have violated and continue to violate the terms of the National Pollutant Discharge Elimination System ("NPDES") Permit[1] addressing storm water pollution discharged from Defendants' scrap metal recycling facility[2] ("the Facility") in Oroville, California.  Defendants Chico Scrap Metal, Inc., the George Scott, Sr. Inter Vivos Trust and George Scott, Sr. own and/or operate the Facility.

Pertinent to this motion, CSPA seeks declaratory and injunctive relief, civil penalties, and costs (including reasonable attorney, witness, and consultant fees) as authorized by the Clean Water Act, 33 U.S.C. § 1365(d).   The Clean Water Act dictates that in assessing civil penalties against a violator, the court *shall* consider the economic benefits gained by non-compliance with the Act and the economic impact of penalties on the violator.  See 33 U.S.C. § 1319(d).   Accordingly, Plaintiff has sought disclosure of Defendants' financial wherewithal, through written requests for production of documents, as well as deposition testimony.  Defendant has refused to produce the information requested.

As required under Rule 251 (b), the parties met and conferred on this issue numerous times over the course of this litigation by letter, by phone and in person.  Unfortunately, the

---

[1]   The NPDES Permit that CSPA alleges Defendant is violating is entitled "State Water Resources Control Board Water Quality Order No. 97-03-DWQ, National Pollutant Discharge Elimination System General Permit No. CAS000001, Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities Excluding Construction Activities."

[2]   Plaintiff's original complaint addressed violations occurring at three separate facilities; Plaintiff's third amended complaint narrowed the issues to the facility in Oroville.

JOINT STATEMENT RE DISCOVERY DISAGREEMENT
2

parties were unable to reach a resolution.  Documentation of the written meet and confer effort is attached hereto, as Plaintiff's Exhibit A.  As part of the meet and confer effort, Plaintiff provided Defense counsel, at their request for authority, with a copy of a decision in the U.S. District Court of California, Central District, ruling on this exact issue.  In that case, the court ordered the defendant to produce discovery and testify regarding the defendant's finances.  Plaintiff asks the court to take judicial notice of this ruling, *See* Request for Judicial Notice in Support of Plaintiff's Motion to Compel ("RJN"), Exhibit A.

In addition to conferring informally, Defendants moved to bifurcate the liability and penalty phases of the litigation for the purpose of preventing disclosure of financial information; on June 4, 2014, Judge Burrell denied the motion, stating "Defendants have not sufficiently explained the separability of the liability and remedy issues in this water pollution case."  Judge Burrell's June 4, 2014 Order on Defendant's Motion to Bifurcate, Plaintiff's Exhibit B.

Despite denial of the motion to bifurcate, Defendants continue to refuse to produce any documents responsive to the discovery requests or to allow any testimony relating to Defendants' finances.  Accordingly, Plaintiff seeks an order from this Court directing Defendants to produce documents responsive to the discovery requests and to produce the person most knowledgeable to testify on behalf of Defendant Chico Scrap Metal, Inc. regarding the financial wherewithal of the company, as well as Defendant George Scott, Sr. to testify individually.

**B. Defendant's Statement**

Defendant Chico Scrap Metal, Inc. ("CSM") owns and operates a scrap metal recycling facility located at 1855 Kusel Road ("CSM-NorCal").  George Scott is the founder and president of CSM as well as the trustee of the George Scott, Sr. Inter Vivos Trust, George Scott, Sr. ("the Trust").  He is semi-retired and other family members (children and grandchildren) have assumed responsibility for most day to day operations of the company. The family Trust owns the real property on which CSM-NorCal operates.  CSPA

1   commenced the instant lawsuit on May 17, 2010 against three of CSM's facilities.  In 2011,

2   defendants successfully moved to dismiss the Second Amended Complaint.  Plaintiff

3   appealed the order of dismissal, and on July 22, 2013, the Ninth Circuit Court of Appeal

4   reversed and remanded the matter to the District Court for further proceedings.

5       Plaintiff filed its Third Amended Complaint ("TAC") on October 23, 2013 (Docket

6   No. 97) reducing the scope of the suit.  In the TAC, plaintiff alleges that defendants (1)

7   discharge storm water containing pollutants into waters of the United States, (2) have not

8   developed or implemented an adequate Storm Water Pollution Prevention Plan, (3) have

9   failed to implement BAT and BCT, (4) have failed to develop and implement an adequate

10  monitoring and reporting program, (5) have failed to report noncompliance with the General

11  Permit, and (6) discharge lead into drinking water.  Defendants deny all of these allegations,

12  and addresses specific issues below.

13      At this time, this Court has not made any findings pertaining to defendants' liability

14  under the Clean Water Act.  Despite this, plaintiff demands the right to make a massive

15  invasion into defendants' privacy rights, seeking nine (9) years worth of defendants'

16  financial records.  Defendants have, reasonably and in good faith, objected to these requests

17  because there is, as yet, no judicial determination that defendants have violated the Clean

18  Water Act, and therefore the production of financial records for a penalty trial that is not yet

19  necessary serves no legitimate discovery purpose.

20      There is no published or unpublished decision, in a Clean Water Act case, whereby a

21  court has ordered discovery of financial information *prior to* a finding of liability.  In other

22  words, in each and every instance in which a plaintiff has obtained financial records or the

23  court has considered the financial condition of a defendant, the state of the case is that the

24  defendant has been found to be in violation of the Clean Water Act.  That means,

25  necessarily, that the doorway to a determination of penalties is open.  Prior to that moment,

26  financial records are wholly irrelevant.  Here, plaintiff has presented conclusory allegations

27  in its complaint and presented no further particulars after literally years of discovery.  The

28

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

4

doorway to penalties is not open, and may well never be opened.  At the same time, plaintiff seeks to discovery every possible aspect of defendants' financial condition for close to a decade and point to nothing that would explain why this pertains to its claim that defendants violated the Clean Water Act.  For the foregoing reasons, defendants request that this Court deny plaintiff's request for such information, without prejudice for renewal of said request after a finding, should that ever happen, that defendants have violated the Clean Water Act.

## II. Discovery at Issue

### A. Plaintiff's Statement

On October 11, 2010, Plaintiff issued its First Set of Requests for Production of Documents.  On November 15, 2010, Defendants responded.  The discovery requests at issue sought information from all named Defendants in the litigation, including Defendant Chico Scrap Metal, Inc., Defendant George Scott, Sr., individually, Defendant George Scott, Sr. Inter Vivos Trust and Defendant George Scott, Jr., individually.  Defendant George Scott, Jr. is deceased and was dismissed from this lawsuit.  Accordingly, Plaintiff is no longer seeking financial information from former Defendant George Scott, Jr.  The following discovery is at issue:

**Plaintiff's Request for Production No. 31:**

Any and all DOCUMENTS setting forth YOUR assets, liabilities and net worth at all times since March 17, 2005.

**Defendants' Response to Request No. 31:**

Defendants incorporate by reference in to this specific response, each of the general objections listed above. Defendants further object that this request seeks documents subject to the privacy protections afforded under federal and California law. Defendants further object that the request for documents pertaining to defendants' "assets, liabilities and net worth at all times since March 17. 2005" is not reasonably calculated to lead to the

1   discovery of admissible evidence.  Defendants will not produce documents in response to

2   this request.

3   On June 27, 2014, Plaintiff issued its Third Set of Requests for Production of

4   Documents.  On July 31, 2014 Defendants responded.  The following discovery is at issue:

5   **Plaintiff's Request for Production No. 43:**

6   Any and all DOCUMENTS setting forth YOUR assets, liabilities and net worth at

7   all times since March 17, 2005.

8   **Plaintiff's Request for Production No. 44:**

9   Any and all DOCUMENTS that REFER, RELATE OR PERTAIN to YOUR income

10   from March 17, 2005 to the present, including but not limited to all statements of annual

11   gross income and annual net income.

12   **Plaintiff's Request for Production No. 45:**

13   All DOCUMENTS comprising YOUR federal income tax returns for all years from

14   2005 to the present.

15   **Plaintiff's Request for Production No. 46:**

16   All DOCUMENTS that comprise YOUR IRS form 1099s submitted to the IRS for all

17   years from 2005 to the present.

18
19   **Defendant's Response to Request Nos. 43, 44, 45, 46:**

20   Defendants incorporate by reference in to this specific response each of the general

21   objections listed above. Defendants further object to this request on the grounds that

22   discovery of financial information in Clean Water Act cases is not permitted until after

23   liability has been established.  *See, e.g., U.S. v. Smithfield Foods, Inc.*, 972 F. Supp. 338

24   (1997); *U.S. v. Mun. Auth. Of Union Township*, 929 F. Supp. 800 (1996).  Defendants further

25   object to this request because financial information is not relevant to a determination of

26   whether or not defendants have violated the Clean Water Act.

27   On December 13, 2013, Plaintiff deposed Mr. George Scott Sr. in his individual

28

capacity.  Plaintiff's counsel asked several questions regarding Defendant Scott's finances.  Defense counsel objected to the questions, directing Mr. Scott not to answer.  Relevant deposition excerpts are attached hereto, Plaintiff's Exhibit C.

On February 26, 2014, Plaintiff deposed Ms. Kim Scott as the person most knowledgeable for Defendant Chico Scrap Metal, Inc.  Plaintiff's counsel asked several questions regarding Defendant Chico Scrap Metal's finances.  Defense counsel objected to the questions, directing Ms. Scott not to answer.  Relevant deposition excerpts are attached hereto, Plaintiff's Exhibit D.

On the date of filing this motion, October 1, 2014, Defendant unilaterally served amended responses to the discovery at issue, raising new and different objections, see Defendants' statement below.  To the extent these amended responses raise new or different objections these are waived under the federal rules as they were not timely made.  This issue will be addressed further below.

**B.  Defendants' Statement**

Starting in July 2014, the parties met and conferred concerning the discovery of financial information.  The issue arises in the context of questions asked at depositions of corporate officers of CSM, and in the context of a written request for documents directed to the CSM, George Scott, Sr. and his deceased son, George Scott, Jr.  At the depositions, counsel for defendants instructed the witnesses not to answer questions aimed at discovery of CSM's financial information.  It is unclear in this motion whether CSPA is also seeking the personal financial information of George Scott, Sr., individually.  Insofar as plaintiff has dismissed all claims against George Scott, Jr., defendants presume that the issue is moot as to him.  The meet and confer process continued, in effect, as the parties engaged in the required exchange of briefing of this Joint Statement.  In that regard, plaintiff raised for the first time that defendants' objections based on the attorney-client privilege and financial privacy were inadequate and waived, as framed, in the responses to the *written discovery*.  Defendants therefore prepared and served amended responses to address that concern, and

1  included the same information in its opposition to the motion to compel.   *See* Defendants'

2  Exhibits in Support of Joint Statement, Ex. A.  The <u>amended</u> responses state:

3  **REQUEST FOR PRODUCTION NO. 31:**

4         Any and all DOCUMENTS setting forth YOUR assets, liabilities and net

5  worth at all times since March 17, 2005.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

7         Defendants incorporate by reference in this specific response each of the

8  general objections listed above and further provide the following specific objections.

9  Defendants further object to the request on the grounds that the definition of the terms

10  "YOU" and 'YOUR," as used in this request, are overly broad and potentially call for

11  documents that invade the attorney-client privilege and work product immunity by the

12  inclusion of agents, employees, consultants, attorneys, accountants, investigators, and

13  "anyone else acting on Defendants' behalf."  For example, because this request is for

14  all documents setting forth defendants' assets, liabilities, net worth, and income --

15  again for the past nine (9) years -- plaintiff is necessarily asking for privileged and

16  private information, and for a quantity and scope of production that is unreasonable,

17  burdensome, and not calculated to lead to the discovery of admissible evidence.

18  Related to that, if defendants were put to the burden of producing such documents, the

19  corresponding privilege log, that would take months to locate, review, and log.

20  Plaintiff appears to be requesting, spanning a period of the past nine (9 years), the

21  financial records of persons who are not parties to the litigation, seeking every loan

22  application ever presented by CSM or the individual defendants, and/or invading the

23  attorney-client privilege.  Defendants further object to the request on the grounds that

24  the definition of the terms "YOU," "YOUR" and "DOCUMENT," as used in this

25  request, are an excessive and overly broad invasion of defendants' privacy rights

26  afforded under California and federal law and imposes any undue burden on

27  defendants, without a corresponding reason of need by plaintiff for this information.

28

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

Case No. 2:10-CV-01207-GEB-AC

Defendants further object to this request on the grounds that the request for all documents "setting forth YOUR assets, liabilities and net worth" potentially refers to every document that pertains in any way to defendants' financial condition for close to a decade including, *inter alia* communications with attorneys, accountants, tax preparers, financial advisors, and lenders, as well as bank statements, cancelled checks, bank accounts, deposit slips, loans, promissory notes, estate planning documents, payables, receivables, invoices, and electronic financial records. Similarly, plaintiff is asking for all 1099 forms submitted to the IRS for the past nine (9) years, many of which have absolutely nothing to do with the claims in this case, and some of which pertain to monies paid to attorneys, financial advisors, and confidential consultants over the years.

Defendants further object to this request on the grounds that discovery of financial information in Clean Water Act cases, absent special and compelling facts and circumstances, is not and should not, be permitted until after liability has been established. *U.S. v. Smithfield Foods, Inc* (1997) 972 F. Supp. 338, 339-340, and *U.S. v. Mun. Auth. of Union Twp.* (1996) 929 F. Supp. 800, 802. These cases stand for the proposition that, in a Clean Water Act case, a defendant's financial information is relevant *after* a finding of liability. The court in each case first found, by partial summary judgment, that the defendant was liable under the Clean Water Act, and then proceeded with a court trial on the penalty issue. There is no reported decision, which defendants are aware of (and plaintiff points to none), whereby, a court has ordered production of a defendant's financial information in absence of a concurrent or past finding of liability for a violation of the Clean Water Act. The reason is that a defendant has the right to a jury trial for the liability phase of a Clean Water Act case, whereas the penalty portion of Clean Water Act trial must decided by the court. Related to this, defendants further object to this request because financial information is not relevant to a determination of whether or not defendants have violated the

Clean Water Act. Defendants further object to this request on the grounds that plaintiff has provided no explanation, to date, as to why information relating to defendants' personal and business finances bears any relevance to the issue of defendants' liability for a violation of the Clean Water Act. In that vein, plaintiff has yet to provide one example of a BMP that defendants should have implemented at any point in time but did not. This is after several years of discovery, the completion of the depositions of corporate officers and the site manager, and four site visits. Plaintiff also offers not one clue of what they contend is missing in defendants' SWPPP or expansive list of BMPs. Defendants further object to the request on the grounds that, while it may well be appropriate to inquire, in determining an appropriate penalty (*after* a finding of liability) about the amount of expenses incurred by defendants for consultants on storm water management issues as well as defendants' ability to afford more costly and effective BMPs, a massive invasion into all financial records of defendants for over a decade is an unreasonable and unnecessary violation of defendants' right of financial privacy.

**REQUEST FOR PRODUCTION NO. 43:**

Any and all DOCUMENTS setting forth YOUR assets, liabilities and net worth at all times since March 17, 2005 to the present, including but not limited to all statements of annual gross income and annual net income.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Defendants incorporate by reference in to this specific response each of the general objections listed above. Defendants' further object to the request on the grounds that the definition of the terms "YOU" and 'YOUR," as used in this request, are overly broad and potentially call for documents that invade the attorney-client privilege and work product immunity by the inclusion of agents, employees, consultant, attorneys, accountants, investigators, and anyone else acting on Defendants' behalf." For example, the reference to assets, liabilities, net worth, and

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

Case No. 2:10-CV-01207-GEB-AC

income -- again for the past nine (9) years -- plaintiff is asking for a quantity and scope of production, and the corresponding privilege log, that would take months to locate, review and log. Plaintiff appears to be requesting, spanning a period of the past nine (9) years), the financial records of persons who are not parties to the litigation, seeking every loan application ever presented by CSM or the individual defendants, and/or invading the attorney-client privilege. Defendants further object to the request on the grounds that the definition of the terms "YOU," "YOUR" and "DOCUMENTS," as used in this request, are an excessive and overly broad invasion of defendants' privacy rights afforded under California and federal law and imposes any undue burden on defendants, without a corresponding reason of need by plaintiff for this information. Defendants further object to this request on the grounds that the request for all documents "setting forth YOUR assets, liabilities and net worth" potentially refers to every document that pertains in any way to defendants' financial condition for close to a decade, including, *inter alia* communications with attorneys, accountants, tax preparers, financial advisors, and lenders, as well as bank statements, cancelled checks, bank accounts, deposit slips, loans, promissory notes, estate planning documents, payables, receivables, invoices, and electronic financial records. Similarly, plaintiff is asking for all 1099 forms submitted to the IRS for the past nine (9) years, many of which have absolutely nothing to do with the claims in this case, and some of which pertain to monies paid to attorneys, financial advisors, and confidential consultants over the years.

Defendants further object to this request on the grounds that discovery of financial information in Clean Water Act cases is not permitted until after liability has been established. *U.S. v. Smithfield Foods, Inc* (1997) 972 F. Supp. 338, 339-340, and *U.S. v. Mun. Auth. of Union Twp.* (1996) 929 F. Supp. 800, 802. These cases standing for the proposition that, in a Clean Water Act case, a defendant's financial information is relevant *after* a finding of liability. The court in each case first found,

by partial summary judgment, that the defendant was liable under the Clean Water Act, and then proceeded with a court trial on the penalty issue.  There is no reported decision that defendants are aware of whereby, a court has ordered production of a defendant's financial information in absence of a concurrent or past finding of liability for a violation of the Clean Water Act.  The reason is that the a defendant has the right to a jury trial for the liability phase of a Clean Water Act case, whereas the penalty portion of Clean Water Act trial must decided by the court.  Related to this, defendants further object to this request because financial information is not relevant to a determination of whether or not defendants have violated the Clean Water Act. Defendant further objects to this request on the grounds that plaintiff has provided no explanation, to date, as to why information relating to defendants' personal and business finances bears any relevance to the issue of defendants' liability for a violation of the Clean Water Act.  In that vein, plaintiff has yet to provide one example of a BMP that defendants should have implemented at any point in time but did not.  This is after several years of discovery, the completion of the depositions of corporate officers and the site manager, and after four site visits.  Plaintiff also offers not one clue of what they contend is missing in defendants' SWPPP or expansive list of BMPs.  Defendants further object to the request on the grounds that, while it may well be appropriate to inquire, in determining an appropriate penalty (*after* a finding of liability) about the amount of expenses incurred by defendants for consultants on storm water management issues as well as defendants ability to afford more costly and effective BMPs, a massive invasion into all financial records of defendants for over a decade is an unreasonable and unnecessary violation of defendants' the right of financial privacy.

**REQUEST FOR PRODUCTION NO. 44:**

Any and all DOCUMENTS that REFER, RELATE OR PERTAIN to YOUR income from March 17, 2005 to the present, including but not limited to all statements

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

12

of annual gross income and annual net income.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

       Defendants incorporate by reference in to this specific response each of the general objections listed above. Defendants' further object to the request on the grounds that the definition of the terms "YOU" and 'YOUR," as used in this request, are overly broad and potentially call for documents that invade the attorney-client privilege and work product immunity by the inclusion of agents, employees, consultant, attorneys, accountants, investigators, and anyone else acting on Defendants' behalf." For example, the reference to "annual gross income and annual net income" -- again for the past nine (9) years -- plaintiff is asking for a quantity and scope of production, and the corresponding privilege log, that would take months to locate, review and log. Plaintiff appears to be requesting, spanning a period of the past nine (9 years), the financial records of persons who are not parties to the litigation, seeking every loan application ever presented by CSM or the individual defendants, and/or invading the attorney-client privilege. Defendants further object to the request on the grounds that the definition of the terms "YOU," "YOUR" and "DOCUMENTS," as used in this request, are an excessive and overly broad invasion of defendants' privacy rights afforded under California and federal law and imposes any undue burden on defendants, without a corresponding reason of need by plaintiff for this information. Defendants further object to this request on the grounds that the request for all documents "YOUR income from March 17, 2005 to the present, including but not limited to all statements of annual gross income and annual net income" potentially refers to every document that pertains in any way to defendants' financial condition for close to a decade, including, *inter alia* communications with attorneys, accountants, tax preparers, financial advisors, and lenders, as well as bank statements, cancelled checks, bank accounts, deposit slips, loans, promissory notes, estate planning documents, payables, receivables, invoices, and electronic financial

records.  Similarly, plaintiff is asking for all 1099 forms submitted to the IRS for the past nine (9) years, many of which have absolutely nothing to do with the claims in this case, and some of which pertain to monies paid to attorneys, financial advisors, and confidential consultants over the years.        Defendants further object to this request on the grounds that discovery of financial information in Clean Water Act cases is not permitted until after liability has been established.  *U.S. v. Smithfield Foods, Inc* (1997) 972 F. Supp. 338, 339-340, and *U.S. v. Mun. Auth. of Union Twp.* (1996) 929 F. Supp. 800, 802.  These cases standing for the proposition that, in a Clean Water Act case, a defendant's financial information is relevant *after* a finding of liability. The court in each case first found, by partial summary judgment, that the defendant was liable under the Clean Water Act, and then proceeded with a court trial on the penalty issue.  There is no reported decision that defendants are aware of whereby, a court has ordered production of a defendant's financial information in absence of a concurrent or past finding of liability for a violation of the Clean Water Act.  The reason is that the a defendant has the right to a jury trial for the liability phase of a Clean Water Act case, whereas the penalty portion of Clean Water Act trial must decided by the court.  Related to this, defendants further object to this request because financial information is not relevant to a determination of whether or not defendants have violated the Clean Water Act.  Defendant further objects to this request on the grounds that plaintiff has provided no explanation, to date, as to why information relating to defendants' personal and business finances bears any relevance to the issue of defendants' liability for a violation of the Clean Water Act. In that vein, plaintiff has yet to provide one example of a BMP that defendants should have implemented at any point in time but did not.  This is after several years of discovery, the completion of the depositions of corporate officers and the site manager, and after four site visits.  Plaintiff also offers not one clue of what they contend is missing in defendants' SWPPP or expansive list of BMPs.  Defendants

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

14

further object to the request on the grounds that, while it may well be appropriate to inquire, in determining an appropriate penalty (*after* a finding of liability) about the amount of expenses incurred by defendants for consultants on storm water management issues as well as defendants ability to afford more costly and effective BMPs, a massive invasion into all financial records of defendants for over a decade is an unreasonable and unnecessary violation of defendants' the right of financial privacy.

**REQUEST FOR PRODUCTION NO. 45:**

All DOCUMENTS comprising YOUR federal income tax returns for all years from 2005 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Defendants incorporate by reference in to this specific response each of the general objections listed above.  Defendants object to the term "comprising" as vague and overly broad.  Defendants' further object to the request on the grounds that the definition of the terms "YOU" and 'YOUR," as used in this request, are overly broad and potentially call for documents that invade the attorney-client privilege and work product immunity by the inclusion of agents, employees, consultant, attorneys, accountants, investigators, and anyone else acting on Defendants' behalf."  For example, the reference to assets, liabilities, net worth, and income -- again for the past nine (9) years -- plaintiff is asking for a quantity and scope of production, and the corresponding privilege log, that would take months to locate, review and log. Plaintiff appears to be requesting, spanning a period of the past nine (9 years), the tax returns of persons who are not parties to the litigation, seeking every loan application ever presented by CSM or the individual defendants, and/or invading the attorney-client privilege.  Defendants further object to the request on the grounds that the definition of the terms "YOU," "YOUR" and "DOCUMENTS," as used in this request, are an excessive and overly broad invasion of defendants' privacy rights

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

Case No. 2:10-CV-01207-GEB-AC

afforded under California and federal law and imposes any undue burden on defendants, without a corresponding reason of need by plaintiff for this information. Defendants further object to this request on the grounds that the request for all documents "comprising YOUR federal income tax returns" potentially refers to every document that pertains in any way to defendants' financial condition for close to a decade, including, *inter alia* communications with attorneys, accountants, tax preparers, financial advisors, and lenders, as well as bank statements, cancelled checks, bank accounts, deposit slips, loans, promissory notes, estate planning documents, payables, receivables, invoices, and electronic financial records. Similarly, again depending on the meaning of the term "comprising" plaintiff is asking for all 1099 forms submitted to the IRS for the past nine (9) years, many of which have absolutely nothing to do with the claims in this case, and some of which pertain to monies paid to attorneys, financial advisors, and confidential consultants over the years. Defendants further object on the grounds that that defendants seek discovery of federal income tax returns, which are otherwise not discoverable for sound public policy reasons, without cause or purpose in this litigation. Such information bears no rational relationship to compliance with the Clean Water Act, and is thereby irrelevant.

Defendants further object to this request on the grounds that discovery of financial information in Clean Water Act cases is not permitted until after liability has been established. *U.S. v. Smithfield Foods, Inc* (1997) 972 F. Supp. 338, 339-340, and *U.S. v. Mun. Auth. of Union Twp.* (1996) 929 F. Supp. 800, 802. These cases standing for the proposition that, in a Clean Water Act case, a defendant's financial information is relevant *after* a finding of liability. The court in each case first found, by partial summary judgment, that the defendant was liable under the Clean Water Act, and then proceeded with a court trial on the penalty issue. There is no reported decision that defendants are aware of whereby, a court has ordered production of a

defendant's financial information in absence of a concurrent or past finding of liability for a violation of the Clean Water Act. The reason is that the a defendant has the right to a jury trial for the liability phase of a Clean Water Act case, whereas the penalty portion of Clean Water Act trial must decided by the court. Related to this, defendants further object to this request because financial information is not relevant to a determination of whether or not defendants have violated the Clean Water Act. Defendant further objects to this request on the grounds that plaintiff has provided no explanation, to date, as to why information relating to defendants' personal and business finances bears any relevance to the issue of defendants' liability for a violation of the Clean Water Act. In that vein, plaintiff has yet to provide one example of a BMP that defendants should have implemented at any point in time but did not. This is after several years of discovery, the completion of the depositions of corporate officers and the site manager, and after four site visits. Plaintiff also offers not one clue of what they contend is missing in defendants' SWPPP or expansive list of BMPs. Defendants further object to the request on the grounds that, while it may well be appropriate to inquire, in determining an appropriate penalty (*after* a finding of liability) about the amount of expenses incurred by defendants for consultants on storm water management issues as well as defendants ability to afford more costly and effective BMPs, a massive invasion into all financial records of defendants for over a decade is an unreasonable and unnecessary violation of defendants' the right of financial privacy.

**REQUEST FOR PRODUCTION NO. 46:**

All DOCUMENTS that comprise YOUR IRS form 1099s submitted to the IRS for all years from 2005 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Defendants incorporate by reference in to this specific response each of the general objections listed above. Defendants object to the term "comprise" as vague

and overly broad. Defendants' further object to the request on the grounds that the definition of the terms "YOU" and 'YOUR," as used in this request, are overly broad and potentially call for documents that invade the attorney-client privilege and work product immunity by the inclusion of agents, employees, consultant, attorneys, accountants, investigators, and anyone else acting on Defendants' behalf." For example, the reference to assets, liabilities, net worth, and income -- again for the past nine (9) years -- plaintiff is asking for a quantity and scope of production, and the corresponding privilege log, that would take months to locate, review and log. Plaintiff appears to be requesting, spanning a period of the past nine (9 years), the tax returns of persons who are not parties to the litigation, seeking every loan application ever presented by CSM or the individual defendants, and/or invading the attorney-client privilege. Defendants further object to the request on the grounds that the definition of the terms "YOU," "YOUR" and "DOCUMENTS," as used in this request, are an excessive and overly broad invasion of defendants' privacy rights afforded under California and federal law and imposes any undue burden on defendants, without a corresponding reason of need by plaintiff for this information. Defendants further object to this request on the grounds that the request for all documents "that comprise YOUR IRS form 1099s submitted to the IRS " potentially refers to a vast range of documents that pertains to defendants' financial condition for close to a decade, including, *inter alia* communications with attorneys, accountants, tax preparers, financial advisors, and lenders, as well as bank statements, cancelled checks, bank accounts, deposit slips, loans, promissory notes, estate planning documents, payables, receivables, invoices, and electronic financial records. Similarly, again depending on the meaning of the term "comprise" plaintiff is asking for all 1099 forms submitted to the IRS for the past nine (9) years, many of which have absolutely nothing to do with the claims in this case, and some of which pertain to monies paid to attorneys, financial advisors, and confidential consultants over the

years.  Defendants further object on the grounds that that defendants seek discovery of federal income tax reporting documents such as 1099 forms, which are otherwise not discoverable for sound public policy reasons, without cause or purpose in this litigation.  Such information bears no rational relationship to compliance with the Clean Water Act, and is thereby irrelevant.

Defendants further object to this request on the grounds that discovery of financial information in Clean Water Act cases is not permitted until after liability has been established.  *U.S. v. Smithfield Foods, Inc* (1997) 972 F. Supp. 338, 339-340, and *U.S. v. Mun. Auth. of Union Twp.* (1996) 929 F. Supp. 800, 802.  These cases standing for the proposition that, in a Clean Water Act case, a defendant's financial information is relevant *after* a finding of liability. The court in each case first found, by partial summary judgment, that the defendant was liable under the Clean Water Act, and then proceeded with a court trial on the penalty issue.  There is no reported decision that defendants are aware of whereby, a court has ordered production of a defendant's financial information in absence of a concurrent or past finding of liability for a violation of the Clean Water Act.  The reason is that the a defendant has the right to a jury trial for the liability phase of a Clean Water Act case, whereas the penalty portion of Clean Water Act trial must decided by the court.  Related to this, defendants further object to this request because financial information is not relevant to a determination of whether or not defendants have violated the Clean Water Act. Defendant further objects to this request on the grounds that plaintiff has provided no explanation, to date, as to why information relating to defendants' personal and business finances bears any relevance to the issue of defendants' liability for a violation of the Clean Water Act.  In that vein, plaintiff has yet to provide one example of a BMP that defendants should have implemented at any point in time but did not.  This is after several years of discovery, the completion of the depositions of corporate officers and the site manager, and after four site visits.  Plaintiff also offers

1   not one clue of what they contend is missing in defendants' SWPPP or expansive list

2   of BMPs. Defendants further object to the request on the grounds that, while it may

3   well be appropriate to inquire, in determining an appropriate penalty (*after* a finding

4   of liability) about the amount of expenses incurred by defendants for consultants on

5   storm water management issues as well as defendants ability to afford more costly

6   and effective BMPs, a massive invasion into all financial records of defendants for

7   over a decade is an unreasonable and unnecessary violation of defendants' the right of

8   financial privacy.

## III. ARGUMENT

### A. Plaintiff's Statement

10

11      Defendants' basis for refusing to produce financial documents or testimony has

12   morphed over the course of this litigation. Defendants' initial objection cited privacy

13   grounds (See Defendants' Response to Request No. 31, *supra*, Section II, A); subsequent

14   objections cited privacy and relevancy and Defendant's intention to move to bifurcate the

15   proceeding (See George Scott, Sr. Deposition Excerpt, Plaintiff's Exhibit C); following

16   denial of Defendants' motion to bifurcate, Defendants' latest iteration states financial

17   discovery is impermissible in a Clean Water Act case until liability is established (See

18   Defendants' Response to Request Nos. 43-46, *supra*, Section II, A). Now, literally on the

19   day of filing this joint statement, Defendants have unilaterally filed amended responses to

20   the discovery requests, impermissibly changing and adding objections.

21      Throughout the meet and confer effort Defendants have persistently argued that it is

22   Plaintiff's duty to come forward with legal authority supporting production of the

23   documents. Although not its duty, in a good faith effort to meet and confer, Plaintiff has

24   provided Defendants with ample, persuasive and unambiguous statutory and legal authority

25   supporting its position. Defendants forget, however, that they bear the burden in supporting

26   their own objections to discovery. "The party who resists discovery has the burden to show

27   discovery should not be allowed, and has the burden of clarifying, explaining, and

28

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

Case No. 2:10-CV-01207-GEB-AC

supporting its objections." *Keith H. v. Long Beach Unified Sch. Dist.* (C.D. Cal. 2005) 228 F.R.D. 652, 655–56 (C.D. Cal. 2005) (citation omitted); *see also Blankenship v. Hearst Corp.* (9th Cir. 1975) 519 F.2d 418, 429 ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied."). The statutory and case law is contrary to Defendants' position, and they therefore cannot meet their burden to support their objections.

### 1.   Defendants' Boilerplate Objections are Improper and are therefore Waived

Defendants begin their responses to Plaintiff's Request Nos. 31, 43, 44, 45 and 46, cross-referencing the almost three pages of "General Objections" provided at the introduction to Defendants' responses. Such "blanket objections" lack the specificity required by F.R.C.P. 34, are invalid, and constitute grounds for sanctions. *See Henry v. Champlain Enterprises, Inc.* (ND NY 2003) 212 FRD 73, 78 ("General objections without any reference to a specific request to admit are meritless."); *Nagele v. Electronic Data Systems Corp.* (WD NY 2000) 193 FRD 94, 109 (ruling that objections must be particularized); *accord Allianz Ins. Co. v. Surface Specialities, Inc.* (D. Kan. 2005) 2005 WL 44534, at *2 ("The familiar litany of general objections, including overlybroad, burdensome, or oppressive, will not alone constitute a successful objection to an interrogatory, nor will a general objection fulfill the objecting party's burden to explain its objections.").

As such, Defendants have waived these objections and Plaintiff asks the court to award appropriate sanctions. To the extent Defendants are now attempting, on the day of submission of this joint statement, to amend their responses and assert new objections, this is impermissible under the Federal Rules and Plaintiff asks the court to strike the amended responses served concurrently with this motion. Objections must be made within the time period allowed for responding to the discovery or the objections are waived. FRCP 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

21

failure."); FRCP 34(b)(2)(C); *Richmark Corp v. Timber Falling Consultants* (9th Cir. 1992) 959 F2d 1468, 1473 ("Failure to object to discovery requests within the time required constitutes a waiver of any objection."); *Burlington Northern & Santa Fe Ry. Corp. v. Unites States Dist. Court for Dist. Of Montana (9th Cir. 2005)* 408 F3d 1142, 1148 (boilerplate objections or blanket refusals are insufficient to assert a privilege). This motion is based on responses to discovery served on Plaintiff prior to filing the notice of motion and motion to compel. To the extent the objections raised in Defendants' amended responses served today are new or different than the prior objections, Plaintiff will not address these here. This is merely confusing the issues in this motion. Plaintiff was under no obligation to meet and confer with counsel on general objections that had no merit and were not stated as Defendants' basis for refusing to produce the document in the meet and confer process.

      **2.**      **Plaintiff's Discovery Requests are Reasonably Calculated to Lead to the Discovery of Admissible Evidence**

A party may discover any material that is relevant to the claims or defenses of any party. FRCP 26(b)(1). Relevant information does not have to be admissible so long as it appears calculated to lead to the discovery of admissible evidence. *Id.* "Relevanc[e] is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." *McCormick v. City of Lawrence* (D. Kan. 2005) 2005 WL 1606595, at *5 (citations omitted); *see also Survivor Media, Inc. v. Survivor Prods.* (9th Cir. 2005) 406 F.3d 625, 635 ("Litigants may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.")

Discovery seeking information related to the financial condition of a defendant in a Clean Water Act enforcement action is relevant and necessary because the Act provides that in assessing the amount of civil penalties:

      [T]he court *shall* consider the seriousness of the violation or violations, *the*

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

Case No. 2:10-CV-01207-GEB-AC

*economic benefit* (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, *the economic impact* of the penalty on the violator, and such other matters as justice may require.

33 U.S.C. 1319(d) (emphasis added); *see also Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc.* (11th Cir. 1990) 897 F.2d 1128, 1141 ("the court is to take each listed factor into account as well as any additional factors the court feels have bearing on the question of penalties"); *see also U.S. v. Smithfield Foods, Inc* (1997) 972 F. Supp. 338, 353, *overruled on other grounds* (financial wherewithal of defendant relevant to determination of penalties); *accord U.S. v. Mun. Auth. Of Union Township* (1996) 929 F. Supp. 800, 805-06.

To assess the economic impact of the penalty and any economic benefit resulting from Defendants' non-compliance with the General Permit and the Act, pursuant to the statute's mandate, the court must review the appropriate documents and witness testimony regarding Defendants' finances. Plaintiff's Request Nos. 31, 43-46, and Plaintiff's Notices of Deposition seek this information and are therefore within the permissible scope of discovery.

In addition to relevancy for purposes of assessing a civil penalty, Defendants' financial wherewithal is also relevant to potential injunctive relief, i.e. whether Defendants can afford specific measures at its facility. *See, e.g., Texas Oil & Gas Ass'n v. EPA* (5th Cir. 998) 161 F.3d 923, 936 (court may consider whether controls are "economically achievable"). Clearly, information regarding Defendants' financial condition may be relevant to the assessment of the "economic achievability" of pollution control measures (i.e. best available technology economically achievable) that should have been implemented at the facility but were not or that the court may order Defendants to implement as part of Plaintiff's request for injunctive relief.

In this joint statement, Defendants also argue the discovery requests are overbroad and burdensome, taking issue specifically with Defendants definition of DOCUMENTS and YOU and YOUR. Defendants' Argument, *Infra*, Section III, B(1). First, as discussed above

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

23

this objection was not specifically raised and is therefore waived.  More importantly, the objection is disingenuous.  Defendants argue Plaintiff's definitions are "indefensibly over broad."  However, reviewing Defendants' own discovery requests propounded on CSPA, Defendants use an even broader definition of the term DOCUMENTS and YOU and YOUR, rendering its objection to these terms insincere:

> "As used in this document request, "CSPA" shall mean California Sportfishing Protection Alliance, including but not limited to all officers, directors, agents, representatives, accountants, employees or anyone acting on its behalf."

> "As used in this document request, "Documents" shall mean any written, printed, typed, recorded, magnetic, electronic (including emails, scanned documents, and all computerized data of any kind), punched, copied, graphic, or other thing in, upon, or from which information may be embodied, translated, conveyed, or stored, including without limitation correspondence, memoranda, notes, records, books, papers, telegrams, telexes, dictation or other audio tapes, videotapes, computer tapes, computer discs, computer printouts, microfilm, microfiche, work sheets, diaries, calendars, ledgers, photographs, tables, charts, drawings, sketches, corporate bylaws, corporate minutes, promissory notes, receipts, financial records, accounting records, contracts, agreements, and all other writings or drafts thereof."

> Defendants' Request for Production of Documents, Set One.

As the court noted in the *Kramer* decision, if the court gave credence to this type of objection, every single federal discovery request propounded would necessitate invalidation by the court.  *See* Plaintiff's RJN, Exhibit A, at 9-10.  Requests similar to those propounded by Plaintiff have been approved by other courts.  *See Laufman v. Oakley Bldg. & Loan Co.* (S.D. Ohio 1976) 72 F.R.D. 116, 122-24 ("any and all documents" relating to five categories of information that broadly defined documents and requested "all" rejected loan applications, active loan files, appraisal books, etc.); *Smith v. Dow Chemical Co.* (W.D.N.Y. 1997) 173 F.R.D. 54, 58 (noting that a request for "all documents" relating to three scientific studies in a toxic tort suit did not "seek every scrap of paper" related to the studies but only those documents in the possession, custody and control of defendants and was thus within the

scope of reasonable particularity); *Horenstein v. Gulf Oil Corp*. (D. Mass 1975) 1975 U.S. Dist. LEXIS 16783, at *6 (all documents including agreements, reports, memoranda, etc. "referring to or reflecting on" company's 1974 stock option plan, options granted to certain officers and directors, etc.).

Defendants impermissibly misconstrue the requests to support their overbreadth argument. *See, e.g., Tig Ins. Co. of Mich. v. Vision Service Plan* (E.D. Cal. 2006) 2006 WL 192537, at *3 (denying defendant's discovery motion after finding that defendant "appears to be trying to confuse the expense and burden of having to sift through 30,000 to 50,000 pages of documents responsive to a document request with the separate issue of checking only 70 pages of documents clearly identified in its privilege log."). Defendants have refused to produce any documents responsive to the discovery requests, without embarking on any effort to comply with the request and meet and confer with Plaintiff's counsel regarding any undue burden or potential disclosure of attorney-client privileged information, etc. as they now argue is a basis for refusing to produce documents.

### 3. Defendant's Contention that Financial Discovery is Premature is Not Supported by Statutory or Case Law

Defendants contend that discovery of financial information is premature, and should not be permitted until the "penalty phase" of the trial, after liability has been established. In an attempt to shore up this argument and prevent disclosure of Defendants' financial information, Defendants moved to bifurcate the trial into two phases: liability and penalty. Judge Burrell was not persuaded by Defendants' contentions. On June 4, 2014, Judge Burrell denied Defendants' request to split this trial into two distinct phases, stating "Defendants have not sufficiently explained the separability of the liability and remedy issues in this water pollution case." Judge Burrell's June 4, 2014 Order on Defendant's Motion to Bifurcate, Plaintiff's Exhibit B.

In light of Judge Burrell's ruling on the motion to bifurcate, Plaintiff again requested production of Defendants' financial information. Defendants continued to refuse to produce

relevant financial information, despite the ruling from the court.  Defendants' objection to production then morphed into a bolder statement that "discovery of financial information in Clean Water Act cases is not permitted until after liability has been established.  *See, e.g., U.S. v. Smithfield Foods, Inc.*, 972 F. Supp. 338 (1997); *U.S. v. Mun. Auth. Of Union Township*, 929 F. Supp. 800 (1996)."  Defendants' Responses to Plaintiff's Third Set of Requests for Production, *supra*, Section II, A.

The case law cited by Defendants does not stand for the proposition, as Defendants state, that "discovery of financial information in Clean Water Act cases is not permitted until after liability has been established."  This statement of the case is misleading at best.  Neither case even touches on discovery of financial information in a Clean Water Act case, likely why neither citation provided by Defendants contains a pincite.  *U.S. v. Smithfield Foods, Inc*, *supra,* 972 F. Supp. 338, is a decision regarding an award of civil penalties in a Clean Water Act case. *U.S. v. Mun. Auth. Of Union Township, supra,* 929 F. Supp. 800, again is a decision regarding an award of civil penalties in a Clean Water Act case.  Both decisions highlight the fact that a defendant's financial information is relevant to a court's imposition of a civil penalty.  *See*, *U.S. v. Smithfield Foods, Inc.*, *supra*, 972 F. Supp. at 353; *U.S. v. Mun. Auth. Of Union Township, supra,* 920 F. Supp. at 805-06.  Contrary to Defendants' assertion, the *Kramer* Order was not a post-liability decision, in fact much of the court's discussion centers around the decision to allow discovery of financial documentation prior to any finding of liability.  Plaintiff's RJN, Exhibit A, at 7-8.

Defendants have provided no persuasive authority for refusing to produce relevant financial information.  Instead, Defendants attempt to turn this into a summary judgment motion on liability when the matter at issue relates to the permissible scope of discovery.  This trial is not phased in any way that would allow discovery to take place after liability is established.  In fact, discovery in this matter <u>closes</u> on January 26, 2015, rendering any attempt to obtain financial information after January 26, 2015 beyond the bounds of permissible discovery.  The federal rules provide that Plaintiff may pursue a broad discovery

1   plan so long as its requests are reasonably calculated to lead to the discovery of admissible

2   evidence.  F.R.C.P. 26(b)(1).

3

4   **4.      The Need for the Requested Information Outweighs Defendants' Right to Privacy**

5          In a federal question case, claims of privilege under state law are unavailable to a

6   litigant.  Instead, the court evaluates privilege under federal common law.  *Religious*

7   *Technology Center v. Wollersheim* (9th Cir. 1992) 971 F.2d 364, 367.  Under federal law,

8   financial records have little privacy protection. *See Heathman v. United States Dist. Ct.* (9th

9   Cir. 1974) 503 F.2d 1032, 1035(finding "no merit" that discovery of tax returns violates a

10  right to privacy); *Sneirson v. Chemical Bank* (D.Del. 1985) 108 F.R.D. 159, 162 (ruling that

11  state law right to privacy in financial records does not preclude discovery in a federal

12  lawsuit).

13         To the extent that Defendants have any privacy right in their financial records, courts

14  frequently find that a party's right to discovery outweighs the opposing party's claim to

15  privacy.  *See Oakes v. Halvorsen Marine Ltd.* (C.D. Cal. 1998) 179 F.R.D. 281, 284; *Ragge*

16  *v. MCA/Universal Studios* (C.D. Cal. 1995) 165 F.R.D. 601, 604 (an asserted right of privacy

17  may be invaded for purposes of litigation).  The Federal Rules of Civil Procedure anticipate

18  that a party's right to privacy and other privilege concerns will be adequately addressed by

19  seeking a protective order from the court.  In this case, any legitimate privacy concerns

20  Defendants may have in the requested documents should be addressed through a protective

21  order which adequately shields the requested documents from disclosure except to those with

22  a legitimate interest.  As it has informed Defendants, Plaintiff is willing to sign a

23  confidentiality agreement regarding any financial information produced, restricting its use to

24  this litigation.

25  **5.      Plaintiff Requests Its Fees and Costs in Bringing this Motion.**

26         FRCP 37(a)(5) states that the Court will award the moving party its fees and costs if

27

28

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

27

the motion is granted or if the information sought is disclosed after the filing of the motion. Plaintiff was forced to bring this motion, despite educating Defendants on the unambiguous law supporting production of Defendants' financial records.  Accordingly, Defendants had no good faith basis for refusing to comply with the discovery requests, forcing Plaintiff and the Court to expend scarce resources on this motion.  Plaintiff requests that the Court order Defendants to pay Plaintiff's reasonable expenses, including its attorneys' fees, generated in bringing this motion.

## B. Defendants' Statement

### 1.  Defendants' Objections Are Not Waived

Plaintiff raises *for the first time* in this motion to compel the contention that the general objections listed by defendants and then specifically incorporated by reference in each response are improper.  Plaintiff contends that these objections as presented are deemed waived for lack of specificity required under Rule 34 of the Federal Rules of Civil Procedure and further that this entitles plaintiff to sanctions.

*First*, plaintiff's claim of waiver and request for sanctions are improper in the sense that the meet and confer process is supposed to happen *before* the filing of a motion to compel.  As to the defendants' response to Request No. 31 (from Plaintiff's Request for Production of Documents, Set One), provided in 2010, plaintiff raised the issue for the first time in this joint statement.  In other words, in its meet and confer letter dated August 6, 2014, plaintiff made no mention of this concern.  As to the specific requests in Plaintiff's Request for Production of Documents, Set Three (*i.e.,* Request Nos. 43, 44, 45, and 46), again, plaintiff made no mention of any alleged deficiency in the objections.  The focus of the discussion to date has been on the larger question of whether plaintiff is entitled to any financial discovery in a civil penalties case in advance of a finding of liability.

*Second*, having now considered the cases cited by counsel, and the provisions of Rule

1   34, defendants will amend their responses to include specific objections tied to the request as

2   phrased. These amended responses were served prior to the filing of this Joint Statement, and

3   provided to the Court for consideration. *See* Declaration of Therese Y. Cannata re

4   Defendants' Exhibits in Support of Joint Statement, Ex. A.

5       *Third*, objections to these document requests are both warranted and reasonable. On

6   the main issue, pertinent to this motion to compel, defendants clearly objected to the

7   discovery of financial records within each document request. However, other privileges are

8   at issue in these requests, given the broad definitions of terms utilized by plaintiff and the

9   implicit invasion into matters subject to the attorney-client privilege and the privacy

10  protections afforded under California and federal law. These objections can be more specific

11  and defendants will spell that out in each amended response -- treating plaintiff's

12  presentation of this issue as its first meet and confer effort on the issue of the specificity of

13  defendants' objections.

14      For example, plaintiff's definitions of terms such as "YOU or YOUR" are

15  indefensibly overly broad by including "*agents, employees, consultant, attorneys,*

16  *accountants, investigators, and anyone else acting on Defendants' behalf.*" *See* Declaration

17  of Therese Y. Cannata re Defendants' Exhibits in Support of Joint Statement, Ex. B (CSPA's

18  Request for Production of Documents, Set Three, at 2:23-25.) Plaintiff would appear to be

19  requesting, spanning a period of the past nine (9) years, the financial records of persons who

20  are not parties to the litigation, seeking every loan application ever presented by CSM or the

21  individual defendants, and/or invading the attorney-client privilege. By the broad definition

22  of the term "DOCUMENT," as used in this request, and referencing or pertaining to assets,

23  liabilities, net worth, and income -- again for the past nine (9) years -- plaintiff is asking for a

24  quantity and scope of production, and the corresponding privilege log, that would take

25  months to locate, review and log. Similarly, plaintiff is also asking for all 1099 forms

26  submitted to the IRS for the past nine (9) years, which potentially pertain to monies paid to

27  attorneys, financial advisors, and confidential consultants over the years. While it may well

28  

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

Case No. 2:10-CV-01207-GEB-AC

1    be appropriate to inquire, in determining an appropriate penalty (after a finding of liability),

2    about the amount of expenses incurred by defendants for consultants on storm water

3    management issues, an inquiry before that finding that is unduly invasive of the right of

4    financial privacy.

5         Similarly, even assuming that the definition of "YOUR" was confined to defendants,

6    the request for all documents "setting forth YOUR assets, liabilities and net worth"

7    potentially refers to every document that pertains in any way to defendants' financial records

8    for close to a decade, including, *inter alia*, bank statements, cancelled checks, bank accounts,

9    deposit slips, loans, promissory notes, estate planning documents, and electronic financial

10   records.  Again, objections are warranted and can be stated with greater specificity, which is

11   what defendants have now done.

12        As to waiver, plaintiff misreads the legal authority that it cites.  While it is correct that

13   the courts have shown little tolerance for responding parties who make no effort to correct

14   defectively interposed objections, plaintiff cites no legal authority to support its

15   pronouncement that all objections have been waived (in the past tense).  In *Allianz Ins. Co. v.*

16   *Surface Specialities, Inc.,* No. Civ. A 03-2470-CM-DJW, 2005 WL 44534, at *2 (D. Kan.

17   Jan. 7, 2005), cited by plaintiff, the court ruled that the failure by a responding party to

18   address the issue at all *in a motion to compel* is deemed an abandonment of the general

19   objections.  In other words, given the chance to remedy the improperly stated objection, the

20   responding party declined and that omission was treated as a waiver.  *Id.* at *2, note 1. Here,

21   as noted, defendants have stepped forward and presented a properly stated objection to each

22   of the document requests at issue -- both in the amended responses *and* in their opposition to

23   the motion to compel.  Plaintiff should not be permitted to avoid properly raised objections,

24   raising the issue for the first time in a motion to compel, without any meeting and confer

25   process, and then refuse to reply to the objections in the motion to compel.  This is

26   particularly important when the scope of the particular inquiry invades privileged and private

27   information, that is generally not discoverable in a Clean Water Act case.

28

### 2.  Plaintiff's Demand for Pre-Liability Discovery Financial Records Serves No Legitimate Purpose

It is beyond debate that defendants have a right to object to the disclosure of confidential financial information, particularly as to the broad requests at issue here.  *See generally*, Rutters Guide, Federal Civil Procedure Before Trial, Ch. 11, section 11:990; *Gattegno v. PriceWaterhouseCoopers, LLP*, 205 F.R.D. 70, 73 (D. Conn. 2001).  Here, the Court must consider not only the purported relevancy of the request but also whether the request is made for improper reasons.  The purported reason to make this invasion into defendants' constitutionally protected privacy rights is to "assess the economic impact of the penalty and any economic benefit resulting from Defendants' non-compliance with the General Permit and the [Clean Water] Act."  Yet, that question only arises after a finding that the defendants have violated the Clean Water Act.  Indeed, plaintiffs offer no explanation for why that information would ever be needed in advance of a finding of liability.  For example, as discussed below, in a Clean Water Act case, the defendant is entitled to a jury trial on the issue of liability, and if there is a finding of liability, the jury is dismissed and the matter of penalties is tried to the court.

Plaintiff's reliance on a single, unpublished trial court order ("the Kramer Order"), which notably states that it is not intended for publication or to be included or submitted to any online service such as Westlaw or Lexis, is misplaced.  While the court in that case engaged in an lengthy discussion about the question of permitting financial discovery in a Clean Water Act case, the critical and undisputed fact is this: the order requiring plaintiff to disclose financial information was issued on the same day (February 27, 2009) that the trial court issued an order granting partial summary judgment, at which point, the defendants had been found liable for violating the Clean Water Act.  *See Santa Monica Baykeeper v. Kramer Metals, Inc.* 619 F. Supp. 2d 914 (C.D. Cal. 2009).  Thus, while the case was not fully adjudicated, there was certainty that, as to at least some of the violations, there would be an injunction and assessment of penalties.  Just three months later, the parties reached terms of

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

31

1   settlement that included entry of a consent decree.  *See* Declaration of Therese Y. Cannata re

2   Defendants' Exhibits in Support of Joint Statement, Ex. C (the court docket in the *Kramer*

3   case).  Similarly, in both *U.S. v. Smithfield Foods, Inc.*, 972 F. Supp. 338, 339-40 (E.D. Va.

4   1997), and *U.S. v. Mun. Auth. of Union Twp.*, 929 F. Supp. 800, 802 (M.D. Penn. 1996), the

5   court first found, by partial summary judgment, that the defendant was liable under the Clean

6   Water Act, and then proceeded with a bench trial on the penalty issue.  Thus, as in the

7   *Kramer* case, the relevancy and discussion of financial wherewithal was *post-liabilty*.

8          The absence of any other instance of a court permitting the discovery of financial

9   information in a Clean Water Act case makes sense given the particular way in which these

10  cases are typically brought.  They start with plaintiff's cursory review of files and records

11  retrieved from a local state agency. The allegations in the complaint are typically "cookie

12  cutter" -- usually referring to exceedences above the EPA benchmarks, a corresponding

13  potential violation of the California Toxic Rule, an inadequate SWPPP and a failure to test

14  often enough (this arises from CSPA's challenge to the term "qualifying event" for sampling

15  storm water discharges as defined in the General Permit).  None of these allegations, absent

16  further proof, would support a finding of liability much less an assessment of penalties.[3]

17         Here, plaintiff has offered absolutely no evidence, beyond the vague allegations in its

18  complaint, of the factual basis of its claim that defendants violated the Clean Water Act.

19  Indeed, in its interrogatory responses, plaintiff merely repeats the conclusory allegations of

20  the operative complaint when asked to "state all facts" on which it bases its claim that

21  defendants violated the Clean Water Act.  *See* Declaration of Therese Y. Cannata re

22  Defendants' Exhibits in Support of Joint Statement, Ex. D.  For example, plaintiff has not

23  stated with any reasonable specificity what was or is deficient about defendants' BMPs or the

24  SWPPP.  Plaintiff has not presented evidence of the necessary hydrological connection

25  ─────────────

26  [3]  Interestingly, plaintiff cannot point to a single case in the state of California where they or
    any other citizen enforcer has actually tried a case based upon allegations that the defendant
    violated the General Permit.  This may account of the lack of precedent and plaintiff's
27  singular reliance on an unpublished decision in a case that it prosecuted in Southern
    California.

28  JOINT STATEMENT RE DISCOVERY DISAGREEMENT

between the Facility's infrequent discharge of storm water to navigable waters. Plaintiff has not disclosed how the historical exceedences of EPA Benchmarks in this case amount to a violation of the General Permit. Plaintiff insists that its moment to unveil such facts will arrive with the disclosure of its expert report. Thus, perhaps at that moment, plaintiff can make the argument that there is a probability that it will prevail on issues of liability. In the meantime, however, plaintiff has neither facts nor law on which to argue a finding of liability.

Accordingly, at this stage in the litigation, the threshold issue before this Court is whether defendants are liable for any violations under the Clean Water Act. Plaintiff makes no persuasive argument as to why information relating to defendants' personal and business finances bears any relevance to this issue of liability. Instead, plaintiff repeatedly cites to the importance of such information as it relates to assessing the amount of civil penalties. However, by choosing to focus on the calculation of penalties prior to establishing a violation, plaintiff places the cart before the horse in hopes to obtain information which at this time serves no purpose, either to plaintiff or to this Court.

Plaintiff next asserts that information regarding defendants' financial condition "may be relevant to the assessment of the 'economic achievability' of pollution control measures (*i.e.* best available technology economically achievable) that should have been implemented at the facility but were not." Again, plaintiff has yet to provide one example of a BMP that defendants should have implemented at any point in time but did not. This is after several years of discovery, the completion of the depositions of corporate officers and the site manager, and after now four site visits (the most recent of which occurred on schedule in September 2014, and lasted from 9:00 a.m. to 4:00 p.m.). Plaintiff offers not one clue of what it contends is missing in defendants' SWPPP or expansive list of BMPs. *See, e.g.,* Declaration of Therese Y. Cannata re Defendants' Exhibits in Support of Joint Statement, Ex. E (Excerpt of Defendants' Further Amended Responses to Plaintiff's Interrogatories, Set One, listing the BMP's implemented at the site since 2007). If plaintiff wants to discuss the

1   economic feasibility of other pollution control measures which it claims have not been

2   implemented, it must first show that the existing pollution control measures fail to achieve

3   BAT/BCT.  Until plaintiff can establish such a failure existed or exists, a conversation

4   related to defendants' financial ability to implement other pollution control measures is

5   irrelevant, insofar as plaintiff cannot establish, as an initial matter, a factual basis (beyond a

6   conclusory statement) for the claim and the invasion, through these discovery requests into

7   otherwise private financial information is unreasonable.

8          **3.     Plaintiff's Contention that Defendant Must Turnover its Financial**
               **Information is Undermined by Ninth Circuit Precedent**
9

10         In what appears to be an unnecessary academic discussion, the trial court in the

11  Kramer Order likens civil penalties to punitive damages.  However, the Ninth Circuit, in

12  addressing discovery in punitive damage cases, affords protection to defendants against a

13  demand for discovery of their private financial documentation until there has been at least a

14  finding of liability.  Plaintiff has been unable to provide defendants with a single case,

15  published or unpublished (nor have defendants managed to locate any), in which a court has

16  ruled that the discovery of financial information is required in advance of a finding of

17  liability under the Clean Water Act.  Again, before (or concurrent with) deciding to order the

18  production of financial records, the court in *Kramer* issued an order finding that the

19  defendant had violated the Clean Water Act.

20         The courts are split on whether the turnover of financial information should be

21  required prior to a *prima facie* showing of liability in the context of punitive damages.  *See*

22  *E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391, 395 (E.D. Cal. 2009) ("[t]he

23  Ninth Circuit has not defined the parameters of the dissemination of financial information

24  during discovery when punitive damages are alleged. Two approaches have emerged

25  regarding this issue.")  In *E.E.O.C.*, the Court recognized the judicial approach of requiring a

26  plaintiff to first allege specific facts sufficient to support a claim for punitive damages before

27  a defendant is required to disclose financial information.  *Id.* at 395; *see also Chenoweth v.*

28

1    *Schaaf*, 98 F.R.D. 587, 589 (W.D. Pa. 1983) (in medical malpractice action doctors were not

2    required to disclose information concerning their financial conditions when complaint did

3    not contain allegations indicating that there was a real possibility that punitive damages

4    would be an issue); *Roberts v. Shawnee Mission Ford., Inc.*, No. 01-2113-CM, 2002 WL

5    1162438 at *2–3 (D. Kan. Feb. 7, 2002) (information of the defendants' net worth or

6    financial condition is relevant where allegations are sufficient facts to claim punitive

7    damages; *Vivino v. Everlast Sporting Goods Mfg. Co., Inc.*, Civ. A No. 87-1161, 1987 WL

8    17571 (E.D. Pa. Sept. 28, 1987) (allegations must support contention that defendant's

9    conduct was sufficiently outrageous to warrant punitive damages award and not merely a

10   pretext for unwarranted discovery of financial material).

11          Here, CSPA alleges, without specific fact allegations, that defendants' SWPPPS,

12   stormwater monitoring, BMPs, and sampling parameters are all inadequate.  The absence of

13   particular facts, corresponding to plaintiff's inability in discovery to date to provide any,

14   renders these allegations insufficient for purposes of supporting the claim for penalties

15   arising from a violation of the Clean Water Act.  As such, plaintiff cannot justify a broad and

16   invasive demand for financial records for a claim (i.e. penalties) that is remote, at best.

17          Plaintiff cites the Clean Water Act correctly, showing that, in assessing civil penalties

18   against a *violator*, the court shall consider the economic benefits gained by non-compliance

19   with the Act and the economic impact of penalties on the violator. 33 U.S.C. § 1319(d)

20   (emphasis added).  However, plaintiff invites this Court to skip a crucial step by assuming

21   that defendants have either violated or failed to comply with the Clean Water Act in any

22   way, shape or form.  Despite plaintiff's claims that it was "educating Defendants on the

23   unambiguous law supporting production of Defendants' financial records," plaintiff points to

24   no precedent capable of educating anyone.  Assuming, *arguendo,* that courts were

25   unanimous in their determination that a defendant must turn over evidence of its financial

26   wherewithal prior to a prima facie finding of liability in a punitive damages context, there is

27   absolutely no legal precedent which requires the same in the context of civil penalties under

28

1    the Clean Water Act.

2          There is a critical difference between cases involving punitive damages and those

3    involving civil penalties which calls into question the parallel drawn by the *Kramer* court.

4    Unlike punitive damages claims, for which there is a right to trial by jury, the Seventh

5    Amendment does not guarantee a jury trial to assess civil penalties under the Clean Water

6    Act. *Tull v. U.S.*, 481 U.S. 412, 413 (1987). *Tull* is instructive in showing that the absence

7    of a jury in the context of a civil penalty determination of the trial renders the pre-liability

8    discovery of financial documents less critical. In punitive damages cases, courts are more

9    likely to require discovery of all information at the outset because one jury acts as trier of

10   fact for both liability and damages, and to delay discovery of certain financial information

11   would entail having to empanel a second jury. *See Hazeldine v. Beverage Media Ltd.*, No.

12   94 CIV. 3466(CSH), 1997 WL 362229, at *3 (June 27, 1997) (allowing pre-trial discovery

13   avoids the inefficiency of a discovery delay between the liability and damages phases of

14   trial, as well as the need to assemble a second jury). The job of determining the amount of

15   civil damages based on Clean Water Act violations, however, is a job reserved for the court

16   and not a jury. *See U.S. v. Ohio Edison*, 725 F. Supp. 928, 934 (N.D. Ohio 1989) (once it

17   has been determined that the terms of the permit have been violated, Section 309(d) provides

18   substantial discretion to the court in determining the amount of penalties).

19         This necessarily defeats any claim by plaintiff that it needs this information in

20   advance of empaneling a jury for the liability phase of the trial in this case. Also, while

21   plaintiff makes much of the fact that the Court rejected defendants request for an order

22   bifurcating the case, the odds of this case *not* being bifurcated are remote, at best. The issue

23   of civil penalties and defendants' financial resources (*i.e.*, ability to pay penalties or ability to

24   have paid more for BMPs, which goes to the issue of penalties) will not be presented to the

25   jury. Therefore, the Court in this case would need to dismiss the jury before taking evidence

26   on the civil penalty issues.

27         Until such time as this Court determines that, based on the evidence before it,

28

defendants have violated or otherwise failed to comply with the Clean Water Act, inquiry into the defendants' financial condition is improper. Absent judicial authority holding that turnover of sensitive documentation is required prior to a finding of liability in the context of civil penalties under the Clean Water Act, defendants continue to exercise good faith in objecting to the unnecessary dissemination of this information until it is germane to the issues before this Court.

### 4.    Plaintiff's Need for Sensitive Financial Information Yields to Defendants' Privacy Rights

The United States Supreme Court has recognized a constitutional right to privacy, more specifically, a constitutional right to nondisclosure of one's personal information. *Stallworth v. Brolini*, 288 F.R.D. 439, 444 (N.D. Cal. 2012).

Plaintiff, perhaps mindful of the invasive nature of its discovery requests, cites to *Sneirson v. Chemical Bank,* 108 F.R.D. 159, 162 (D. Del. 1985), *Heathman v. United States Dist. Ct.,* 503 F.2d 1032 (9th Cir. 1974), *Oakes v. Halvorsen Marine Ltd.,* 179 F.R.D. 281 (C.D. Cal. 1998), and *Ragge v. MCA/Universal Studios,* 165 F.R.D. 601 (C.D. Cal. 1995), all of which are inapposite to the case at bar. *Sneirson* and *Oakes* are cases that dealt with punitive damages claims, which as discussed at length above, is an unsettled area of law on the question of whether the discovery of financial information should be permitted prior to a finding of liability. *Heathman* is also inapposite because it dealt with the sale of securities and real estate by improper, fraudulent and unlawful means, liability for which, unlike the present allegations, can be traced through the turnover of financial information. 503 F.2d at 1035. And finally, the *Ragge* court, dealing with an employment discrimination claim, rejected privacy-based objections as they related to the information contained in an employee's personnel file. 165 F.R.D. at 605. The *Ragge* court went on to distinguish this sort of information from sensitive financial information, while explaining the relevance of the information in the personnel file, stating that "[b]y its nature, the requested information does not pertain to sexual, health or financial matters, areas generally considered to be

1    private or confidential." *Id.*

2         Throughout the proceedings in this matter, the central issue before the Court has been,

3    and continues to be, whether defendants have complied with the provisions of the Clean

4    Water Act.  Despite this well-defined issue, plaintiff seeks sensitive information related to

5    defendants' finances while ignoring the overwhelming deficiency in legal support behind

6    this position.

7         **5.      Plaintiff Is Not Entitled to its Fees and Costs in Bringing this Motion**

8         As long as plaintiff insists on obtaining sensitive private financial information, which

9    is immaterial to the question of liability of a violation of the Clean Water Act, defendants

10   will assert, in good faith, protection over the same information until its discovery is

11   ultimately germane to the issue before this Court.  Even if this Court requires the defendants

12   to turn this information over, Rule 37(a)(5) of the Federal Rules of Civil Procedure states

13   that the court must not require the payment of plaintiff's reasonable expenses incurred in

14   making the motion if the defendants' nondisclosure, response, or objection was substantially

15   justified or other circumstances make an award of expenses unjust.

16        Here, defendants are simply attempting, with good cause, to protect against a massive

17   invasion by an adverse party into their personal financial information. They have stated their

18   concerns about the right of such discovery at this phase of the proceeds (*i.e.*, prior to a

19   finding of liability) and as to the scope of discovery.

20

21

22

23

24

25

26

27

28

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

Case No. 2:10-CV-01207-GEB-AC

Dated:  October 1, 2014          LAW OFFICES OF ANDREW L. PACKARD


                                 /s/Megan E. Truxillo
                                 Megan E. Truxillo
                                 Attorneys for Plaintiff
                                 California Sportfishing Protection Alliance

Dated:  October 1, 2014          CANNATA, CHING & O'TOOLE LLP


                                 /s/Therese Y. Cannata
                                 By:  Therese Y. Cannata
                                 (As authorized on Oct. 1, 2014– L.R. 131)
                                 Attorneys for Defendants
                                 CHICO SCRAP METAL, INC., *et al.*