1  ANDREW L. PACKARD (State Bar No. 168690)
2  MEGAN E. TRUXILLO (State Bar No. 275746)
   JOHN J. PRAGER (State Bar No. 289610)
3  Law Offices of Andrew L. Packard
   100 Petaluma Blvd. N., Suite 301
4  Petaluma, CA 94952
   Tel: (707) 763-7227
5  Fax: (707) 763-9227
   E-mail: Andrew@packardlawoffices.com
6
   ROBERT J. TUERCK (State Bar No. 255741)
7  Jackson & Tuerck
   P.O. Box 148
8  429 W. Main Street, Suite C
   Quincy, California 95971
9  Tel: (530) 283-0406
   E-mail: bob@jacksontuerck.com
10
11 Attorneys for Plaintiff
   CALIFORNIA SPORTFISHING
12 PROTECTION ALLIANCE

13                    UNITED STATES DISTRICT COURT

14                  EASTERN DISTRICT OF CALIFORNIA

15

16 CALIFORNIA SPORTFISHING            Case No. 2:10-CV-01207-GEB-AC
   PROTECTION ALLIANCE, a non-profit
17 corporation,
                                      PLAINTIFF'S EXHIBITS TO JOINT
18              Plaintiff,            STATEMENT

19       vs.
                                      Hearing Date:  October 8, 2014
20 CHICO SCRAP METAL, INC. a          Time: 10:00 am
   California corporation, GEORGE     Courtroom:  26
21 SCOTT, SR., an individual, GEORGE
   SCOTT, SR. REVOCABLE INTER
22 VIVOS TRUST, and GEORGE SCOTT,
   JR., an individual,
23
24              Defendants.

25

26

27

28
   PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE        1
                                                       Case No. 2:10-CV-01207-GEB-AC

# EXHIBIT A

Law Offices Of

ANDREW L. PACKARD

100 Petaluma Blvd N, Ste 301, Petaluma, CA 94952
Phone (707) 763-7227   Fax (707) 763-9227
Info@PackardLawOffices.com

February 12, 2014

*Via E-mail & U.S. Mail*

Therese Y. Cannata, Esq.
Cannata, Ching & O'Toole LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

> Re:   *California Sportfishing Protection Alliance v. Chico Scrap Metal, Inc., et al*;
> United States District Court, Eastern District of California, Case No. 2:10-cv-01207-GEB-AC;

Dear Therese,

This will further respond to your letters dated February 7th and February 12th, as well as your e-mail dated February 10th. This will also respond to the letter penned by your associate, Ms. Almazan, dated February 6th and her email of today's date. In addition, further to our discussion of Plaintiff's proposal to resolve our discovery disputes through the Court's Informal Telephonic Discovery Conference process, I have outlined below the open discovery issues that Plaintiff wishes to discuss in the Court's mandatory meet and confer call/meeting. Finally, this constitutes Plaintiff's second request this week that you please provide your available dates and times for a telephonic meet and confer on these open discovery issues.

Reviewing your correspondence in the order in which it was received:

I.     Kimberly Almazan Letter Dated February 6th (Document Production, Third Party Subpoenas, Privileges Asserted)

This letter states that, in attempting to determine whether CSPA is withdrawing its claim of work product immunity as to any documents, your office compared what you have called Privilege Log I (CSPA's December 17th privilege log, which relates to Defendants' discovery on Plaintiff) and what you have called Privilege Log II (CSPA's February 5th privilege log, which relates to Defendants' subpoenas to Butte County and Mr. Thomas, and pertains only to documents over which CSPA is asserting attorney work product protections). Because the two privilege logs were produced for different purposes, and have different scopes, the comparison is in error, as are any presumptions Defendants are making about any differences between the two logs. This said, there are a handful of documents over which

Therese Cannata, Esq.
February 12, 2014
Page 2

CSPA is no longer asserting any privilege and these are being Bates-stamped and produced on the attached compact disc.

II.      Therese Cannata Letter Dated February 7th

This letter purports to follow-up on your January 31st e-mail remarking on, among other things, what you deem to be "the excellent quality of housekeeping at the yard and the BMP's in place."  Your letter continues in the same vein, asserting what you state are your clients' views about successful storm water management, as well as what you assert to be your own views as to the "purpose of our work as lawyers in the field of environmental law." CSPA would certainly agree with the supposition that all counsel, whether for Plaintiff or Defendant, and irrespective of the field of law, should always try to resolve litigation promptly.  Indeed, it is for this reason that CSPA opened the settlement dialogue in its very first communication with your client, more than four years ago, in its Notice of Violation.

Unfortunately, your stated beliefs about a lawyer's duty to seek an early resolution do not seem to be reflected in any of your actions in this case (or in any of the other cases in which your firm has represented dischargers subject to CSPA enforcement actions).  If your views should change, CSPA remains very interested in discussing a potential settlement of this case.  CSPA believes very strongly that the parties should be having that dialogue now, in advance of the settlement conference on April 24th, so that any areas of consensus are identified and disposed of, and so that the Court's efforts may be focused on the remaining issues on which the parties may continue to disagree.

III.      Therese Cannata E-mail Dated February 10th

This e-mail appears to discuss a comparison of the first and second privilege logs that CSPA provided to the Court, documents that you characterize as having been "removed from the privilege log", and other documents that you characterize as "new" and "not previously identified."  In any case, the first log was broader in scope and related to all asserted privileges; the second log responded to the Court's minute order and covers only attorney work product protections.  As such, the two logs have differing scopes and it should therefore come as no surprise that the second relates to a smaller subset of the first set.  CSPA proposes to discuss this further in the context of the meet and confer for informal resolution, and again renews its request that you *please provide your available dates and times for a telephonic meet and confer this week.*

(This e-mail also asserts that, although not really a discovery issue, CSPA has "refuse[d] to advise or disclose what it believes are deficiencies in CSM-NorCal's BMPs."  If this is a reflection of Defendants' good faith interest in engaging in a settlement discussion, I would urge you to contact me promptly, as I know my client would welcome such a long-needed discussion in this case.)

Therese Cannata, Esq.
February 12, 2014
Page 3

IV.     Therese Cannata Letter Dated February 12th

This letter again erroneously compares what you have called Privilege Log I (CSPA's December 17th privilege log, which relates to Defendants' discovery on Plaintiff) to what you have called Privilege Log II (CSPA's February 5th privilege log, which relates to Defendants' subpoenas to Butte County and Mr. Thomas, and pertains only to documents over which CSPA is asserting attorney work product protections).  See Section I, above.  We trust that the accompanying further document production will resolve these issues for you.  If not, CSPA proposes to include this issue in the meet and confer and again requests that you *please provide your available dates and times for a telephonic meet and confer this week.*

V.      Additional Open Discovery Issues For Discussion In Our Anticipated Meet and Confer This Week

We see the following open discovery issues as appropriate for informal resolution:

(1) Financial Data.  Defendants have refused to testify/provide any written discovery responses regarding Defendants' financial information (See e.g., George Scott, Sr. Deposition, December 13, 2013).  Although Defendants are free to move for phasing or bifurcation of discovery and trial in this matter, the case is not currently phased or bifurcated in any way to support Defendants' objection.

(2) Inspections -- Testing.  Defendants have refused to allow the testing of any media other than what Defendants deem to be storm water discharging from the Facility (and then only on a Wet Inspection, and not on the Dry Inspection).  Plaintiff asserts that Rule 34 (a)(2) is broadly written "….so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it."

(3) Inspections – Scheduling Wet Inspection.  Defendants have asserted their unilateral right to cancel/object to a Wet Inspection if *they alone do not believe it will rain at the noticed date and time*.  My January 31st e-mail requested that you please show me where in the Wet Inspection Stipulation, which we negotiated for three months, there is a term allowing this.

(4) Inspections -- Number.  The Dry Inspection Stipulation allowed only one inspection, and we have taken it.  CSPA proposes that a second Dry Inspection be permitted, subject to the existing stipulation for the first inspection, and further subject to any amendment (as per, e.g. No. 2 above).  The Wet Inspection Stipulation allows only two inspections and CSPA is seeking a total of three for the case.

(5) Housekeeping Re Photographs & Video from January 30, 2014 Site Inspection.  Both sides have now exchanged any photographs or video taken at the formal site

Therese Cannata, Esq.
February 12, 2014
Page 4

inspection in January.  CSPA will be assigning Bates Numbers to its production and re-sending the data accordingly.


We look forward to resolving as many of these issues as possible in our meet and confer this week, and, if necessary, to resolving the remaining issues with the Court's informal assistance.


Very Truly Yours,

Andrew L. Packard
Attorneys for Plaintiff
California Sportfishing Protection Alliance

LAW OFFICES OF

# ANDREW L. PACKARD

100 PETALUMA BLVD N, STE 301, PETALUMA, CA 94952
PHONE (707) 763-7227   FAX (707) 763-9227
INFO@PACKARDLAWOFFICES.COM

March 6, 2014

*Via E-mail & U.S. Mail*
Therese Y. Cannata, Esq.
Cannata, Ching & O'Toole LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

   Re: *California Sportfishing Protection Alliance v. Chico Scrap Metal, Inc., et al*;
     United States District Court, Eastern District of California, Case No. 2:10-cv-
     01207-GEB-AC;

Dear Therese,

  This will respond to your letter of March 4, 2014.  The items set forth below are a
reiteration of the discovery issues as initially numbered in my letter of February 12th, with
responses to the points set forth in your letter, together with the new items you have raised in
your letter and our responses to same, plus several additional items that CSPA wishes to
address at the teleconference now scheduled for Monday, March 10th at 10:00 a.m.

  **(1)** **Financial Data (Defendants' Issue No. 3).**  Defendants have refused to
   testify/provide any written discovery responses regarding Defendants' financial
   information (See, e.g., George Scott, Sr. Deposition, December 13, 2013, Kim
   Scott Deposition, February 26, 2014).  Although Defendants are free to move for
   phasing or bifurcation of discovery and trial in this matter, the case is not currently
   phased or bifurcated in any way to support Defendants' objection.

   Defendants' relevance objection is not well taken.  Section 309(d) of the Clean
   Water Act states: "In determining the amount of a civil penalty, the court shall
   consider the seriousness of the violation or violations, the economic benefit (if
   any) resulting from the violation, any history of such violations, any good-faith
   efforts to comply with the applicable requirements, **the economic impact of the**
   **penalty on the violator, and such other matters as justice may require**.  The
   Defendants' wherewithal is therefore plainly relevant to the claims raised because
   it factors into the Court's civil penalty determinations.

   As to the case law you have cited, the first case (*Sierrapine*) is not controlling for
   the simple reason that you have provided only a partial quotation, leaving out the
   following critical prefatory text: "[a]lthough the Ninth Circuit Court of Appeals
   does not appear to have directly addressed the issue…."  Therefore, the first
   authority you cite *itself acknowledges that it is not controlling in this Circuit*.  The

Therese Cannata, Esq.
March 6, 2014
Page 2

second case you have cited (*Powell Duffryn Terminals, Inc.*) does not support the relevance objection you have raised, but rather, appears to be an example of what Plaintiff is insisting that Defendants do here: seek bifurcation.  Your offer to stipulate to bifurcation now – after Plaintiff *rejected this proposal* three months ago at the deposition of George Scott, Sr. – is not made in good faith.

Defendants are requested to either respond to the discovery propounded or promptly move for bifurcation.

**(2) Inspections – Testing of Media Other Than Storm Water (Defendants' Issue No. 4).**  Defendants have refused to allow the testing of any media other than what Defendants deem to be storm water discharging from the Facility (and then only on a Wet Inspection, and not on the Dry Inspection).  Plaintiff asserts that Rule 34 (a)(2) is broadly written "….so that the requesting party may inspect, measure, survey, photograph, test, or sample *the property or any designated object* or operation on it."  It is difficult to see how soil at the Facility is neither property nor a designated object on the property within the meaning of Rule 34.

Defendants respond that Plaintiff should use evidence gathered by the Butte County District Attorney's Office in another case initiated seven years ago, raising different claims and relating to a different set of pollutants (and which evidence your clients are already on record as having unsuccessfully tried to discredit).  This is not a valid objection to a discovery request.  Defendants' suggestion that CSPA should – instead of actually collecting evidence in this case -- use "the extensive characterization of the soil at the site by Order of the Department of Substance Control ("DTSC") is risible for the reasons set forth below.  Moreover, Defendants' efforts to advance a "naturally occurring" exemption not supported in the General Permit and therefore irrelevant, has now plainly put soil sampling at the Facility – and not merely the surrounding fields – at issue in the case.[1]

First, this is evidence gathered by Defendants' various consultants and experts for the purposes of supporting Defendants' views on the conduct of the remedial investigation.  As a threshold matter, the evidence sought by Defendants to support its own self-directed remedial investigation of toxic contamination, while it may

---

[1] This letter does not respond to, or address the validity of, any of the various factual assertions set out on page 3 of your letter concerning what CSPA thinks about the Facility and the testing done there by others to date, what kind of access "CSPA and presumably its expert/consultant Mr. Lane" have had to the Facility to collect samples over the years when this matter was stayed on appeal, what kinds of information has or has not been shared by the District Attorney, whether our consultants are in accord as to what parameters should be analyzed and how, or whether we are in fact "in agreement about what to test for in the storm water discharge from or in the area of the site."  Some of these rather presumptive assertions may well be a basis for separate conversations, perhaps even settlement discussions, but are not relevant to the issues in dispute.

Therese Cannata, Esq.
March 6, 2014
Page 3

be helpful, is not an adequate proxy for the kinds of data Plaintiff seeks here in support of its Clean Water Act claims.  Here, Plaintiff wishes to take samples of soil, standing water, sediment, debris or any other media in order to support its claims that Defendants' Best Management Practices do not meet BAT and BCT standards and are inadequate to prevent or reduce the discharge of pollutants from the Facility, as well as Plaintiff's claims that Defendants' Storm Water Pollution Prevention Plan ("SWPPP") is and has been inadequate as a matter of law since being belatedly developed some sixteen years after Defendants were required to implemented a SWPPP for the Facility.  Indeed, not only are there substantive differences in the information sought, there are also temporal issues as to the utility of the State's data from several years ago.

Second, Defendants' responses to the DTSC's Imminent and Substantial Endangerment Determination and Remedial Action Consent Order, dated October 1, 2008 ("Consent Order") have apparently been so inadequate, and the process so litigious and acrimonious, that, five and half years on, DTSC issued on February 7, 2014, a notice that it "intends to make a finding of non-compliance" with the Consent Order.  (See attached DTSC Notice, stating "[b]ased upon DTSC staff's review of the Report and despite repeated requests for additional site characterization, the current level of site characterization is not adequate to define the lateral and vertical extent of contamination.")  In response, Defendants have threatened to sue DTSC over the agency's efforts to remove Defendants' unsupported science out of the remedial investigation report.  See, Cannata letter dated April 30, 2013, at CSM001733-1736.

Third, your statement that CSPA "know[s] what's in the soil at the site" is belied by the fact that DTSC has for the past five years *consistently deemed scientifically inadequate and/or irrelevant* all of the very studies to which you now wish to direct Plaintiff here.

**(3) Inspections – Scheduling of Wet Inspection (Defendants' Issue No. 5).**
Defendants have asserted their unilateral right to cancel/object to a Wet Inspection if *they alone do not believe it will rain at the noticed date and time*.  My January 31st e-mail requested that you please show me where in the Wet Inspection Stipulation, which we negotiated for three months, there is a term allowing this, and your belated response this week not only fails to cite any provision of the Wet Inspection allowing for this, it also appears to confirm Defendants' view that, when Defendants believe it will not rain they can simply cancel a noticed Wet Inspection.  This view is inconsistent with Paragraph 1(c) of the Stipulation, wherein the parties agreed "to be reasonable in allowing sampling to occur in a manner that is appropriate for the purposes of this inspection, and in a way that avoids any unreasonable disruption of CSM's business operations."

Therese Cannata, Esq.
March 6, 2014
Page 4

**(4) Inspections -- Number**.  The Dry Inspection Stipulation allowed only one inspection, and CSPA undertook the inspection on January 30, 2014.  CSPA proposes that a second Dry Inspection be permitted, subject to the existing stipulation for the first inspection, and further subject to any amendment (as per, e.g. No. 2 above).  Defendants have refused and offered no basis for arbitrarily limiting the number of Dry Inspections to one.  At the meet and confer now set for Monday, Plaintiff wishes to discuss the Facility's available dates for a second Dry Inspection.

Similarly, the Wet Inspection Stipulation allows only two inspections and CSPA is seeking a total of three for the case.  Due to the bad faith violations of the Wet Inspection Stipulation detailed below, it is CSPA's position that the February 27th Wet Inspection should not count against any total.

Your letter of March 4, 2014 fails to even mention this either of these issues.

**(5) Housekeeping Re Photographs/Video from the January 30, 2014 Dry Inspection and the February 27, 2014 Wet Inspection.**  Both sides have now produced any photographs or video taken at the Dry Inspection on January 30th.  The parties now need to exchange any photographs or video taken at the Wet Inspection on February 27th.

**(6) Plaintiff's Document Production (Defendants' Issue No. 1)**.  Magistrate Claire's February 20, 2014 Order addresses Plaintiff's attorney work product protections in the context of a subpoena served on third parties and does not address Plaintiff's other asserted privileges.  The Order also orders "the subpoenaed" party to produce the documents.  CSPA is not the subpoenaed party, although CSPA diligently provided all of the documents to the subpoenaed party.  CSM's recourse, therefore, is to address the subpoenaed party's failure to produce the documents.

As to the separate question of CSPA's production of documents in response to discovery propounded on it by CSM, CSPA acknowledges that the Court's order regarding the applicability of the work product privilege to certain documents responsive to CSM's subpoena on Butte County is relevant to documents responsive to CSM's discovery requests on CSPA.  However, the Court did *not* address the applicability of other privileges to the documents responsive to CSM's discovery requests on CSPA.  CSPA is agreeable to reviewing and reassessing the additional privileges asserted, and to supplementing its production, if necessary, on March 7th.

**(7) February 27, 2014 Wet Inspection (Defendants' Issue No. 2).**  We disagree with your accusations of any inappropriate or unprofessional conduct on the part of CSPA's consultant at the inspection.  My understanding is that none of these objections were raised at the inspection, when they could have been resolved by a

call to counsel.  If Defendants wish to now modify the inspection stipulations to restrict access to certain areas of the Facility, CSPA is agreeable to considering that we do so.  However, Defendants' unwavering mantra that Mr. Lane or anyone else involved in this lawsuit bears any animosity toward any member of the Scott family finds no basis in fact and has been wholly fabricated in support of Defendants' newest inspection demand – that Mr. Lane must be accompanied by counsel.  CSPA will agree to have counsel make best efforts to attend the inspections, but will not agree – given prior commitments of counsel and the unpredictability of the weather -- to make the presence of counsel a condition of any and all future site inspections.  Suffice to say, CSPA's counsel has ample motivation to attend, it's just that the Facility is in a remote location requiring three and half hours of travel to reach, which may not always be possible given prior commitments.

In our view the real issues concerning the Wet Inspection last week are as follows:

(a)  Why did Defendants take extraordinary emergency measures, entirely new since the dry inspection 4 weeks prior not include to prevent the discharge of storm water from the Facility at the precise hour for which the inspection was noticed?

(b)  Defendants' efforts to prevent discharges at the Wet Inspection, coupled with its their refusal to allow sampling of storm water violate Paragraph 1(c)'s agreement to "to be reasonable in allowing sampling to occur in a manner that is appropriate *for the purposes of this inspection*"?

(c)  Defendants' prohibition against CSPA's photographing the interior of the large storage tanks is inconsistent with the stipulation, which contains *no* such prohibition regarding any photography.

(d)  Defendant's refusal to allow any storm water discharge sampling at the inspection violates the stipulated Wet Inspection.  The stipulation is structured to allow CSPA to sample what it and it alone deems to be a storm water discharge from the Facility.  Defendants' unilateral assertion at the outset of the inspection that the site was not discharging at the time (due to Defendants' last minute de-watering of its settling basins) and that no sampling would therefore be permitted is a clear violation of the stipulation, which expressly permits discharge sampling *as determined by CSPA*.

CSPA suggests that the parties agree that Defendants will notify Plaintiff as to when they are sampling, thereby allowing contemporaneous split samples and perhaps avoiding these kinds of issues.

Plaintiff's photographs from the inspection, including everything from unstable 10,000 gallon tanks engaged in active filling without any shoring, to improperly wired vacuum suction pumps, to multiple extension cords haphazardly draped

across, running through and submerged in, large ponds of standing water, fully and rather shockingly document Defendants' blatant disregard for health and safety at the Facility.  While this case is not concerned with OSHA-type violations, my consultant I are gravely concerned about the very real risk of electrocution and we should certainly discuss on Monday a liability waiver clarifying that any injury or damage to Plaintiff's consultants or counsel arising out of Defendants' negligent conduct at the Facility is not waived.

**(8)  Privilege Log (Defendants' Issue No. 6)**.  Our agreement concerning the privilege logs requires inclusion of the communications in question whenever "there is genuine debate about the privilege."  Please clarify the privileges asserted by Defendants with respect to all of the redactions in your document production, including the four identified by way of example, in order that we may discuss them on Monday.

On a related note, the Bates Nos. on documents CSM001912-CSM002055 and CSM002102-2155 are illegible because the documents have been previously Bates stamped in another case.  Plaintiff requests that these be re-produced in a manner that makes the Bates Stamp Nos. for this case legible.

**(9)  Verifications (Defendants' Issue No. 7).**  On February 21st, prior to the PMK Deposition on February 26th, I email you and alerted you to the fact that CSM had office failed to provide any verifications for their responses to Plaintiff's Second and Third Sets of Interrogatories, or to Plaintiff's Second Set of Requests for Admission and that Plaintiff would need them prior to the deposition.  You replied the same day, also by email, stating, "[r]eceived and yes, we will get those to you in advance of Weds. deposition. Thank you."

Your letter included verification documents signed by Kim Scott, George Scott, Sr. and George Scott, Jr.  However, there seems to have been a mix-up because all three verification forms relate to Defendants' Responses to Plaintiff's Interrogatories, Set Three.  Please provide verifications for Defendants' responses to Plaintiff's Second Set of Interrogatories and Second Set of Requests for Admission.  All of these verifications were due before the deposition; to the extent that Plaintiff believes it necessary to obtain additional deposition testimony concerning the belatedly verified discovery, or any other responsive documents that should have been produced prior to the deposition, Plaintiff will re-open the deposition to obtain that information.

Finally, please also explain how it is that Mr. George Scott, Jr., who you indicated in December was terminally ill and unlikely to make it through the year, and Mr. George Scott, Sr. who you characterized at the deposition as having "an education going to the eighth grade:" and requiring assistance "in reading documents and going over them" are now offering up verifications to discovery.

Therese Cannata, Esq.
March 6, 2014
Page 7

    **(10)**    **Defendant's Failure to produce Documents Promised At the Last Two Depositions**.   Over the course of the last two depositions, various responsive documents have been discussed and in some instances Defendants' counsel has promised, on the record, to produce them.   These documents included all Facility inspection records (including CUPA inspections) over the Relevant Period, employee training records over the Relevant Period, the Facility's Hazardous Materials Business Plan over the Relevant Period, all of the transcripts and declarations from the probation revocation proceedings last year[2], documents relating to the ownership of the trust over the Relevant Period, hazardous waste hauling records (including battery removal) over the Relevant Period, various communications from Michael Huerta at the BCDA's office to "virtually every agency in California that had any regulatory authority over Chico Scrap Metal", and records pertaining to the purchase of diesel fuel at the Facility over the Relevant Period.

    Plaintiff is requesting that these documents be produced at this time.

We look forward to resolving as many of these issues as possible in our meet and confer next week, and, if necessary, to resolving the remaining issues with the Court's informal assistance.

        Very Truly Yours,

        Andrew L. Packard

---

[2] At the Kim Scott deposition you stated that you thought the District Attorney gave CSPA copies of all the trial transcripts in the probation revocation proceedings.  Even if this were the case – and it isn't – Defendants are not entitled to forego the production of any documents based on the assumption (here, erroneous) that Plaintiff already received them from other sources.

Law Offices Of

## ANDREW L. PACKARD

100 Petaluma Blvd N, Ste 301, Petaluma, CA 94952
Phone (707) 763-7227   Fax (707) 763-9227
Info@PackardLawOffices.com

July 17, 2014

*Via Email Only*
Therese Y. Cannata
Kimberly Almazon
Cannata, Ching & O'Toole LLP
100 Pine Street, Suite 1775
San Francisco, CA 94111

> Re:   *California Sportfishing Protection Alliance v. Chico Scrap Metal, Inc., et al.*;
> United States District Court, Eastern District of California, Case No. 2:10-cv-
> 01207-GEB-AC

Dear Ms. Cannata and Ms. Almazon:

The purpose of this letter is to meet and confer regarding deficiencies in Defendants' discovery responses.  In the event that we are unable to reach an informal resolution of each of the issues set forth below, Plaintiff will move to compel further responses and seek appropriate sanctions as provided under the discovery rules.

<u>Defendants' Amended Responses to Plaintiff's Requests for Admission, Set One</u>

*Amended Responses to Requests for Admission Nos. 12, 13, 16, 17, 18, 19, 20*

Buried in objections and qualifying language, each of these responses includes a sentence seemingly an admission of the question asked by Plaintiff.  However, strikingly absent from the seeming admission is the term "admit."  Responses to requests number 12 and 13 include the term "acknowledge." Responses to requests number 16, 17, 18, 19 and 20 similarly do not include the term "admit" or any comparable terminology.  Under FRCP 36(a)(4) the only proper response to a request for admission is to object, <u>admit</u>, deny, partially admit or deny or state a lack of information to respond.  Defendants' provided responses are evasive.  Please amend your responses so that it is clear whether Defendants are in fact admitting or denying the questions posed.

<u>Defendants' Responses to Plaintiff's Requests for Admission, Set Two</u>

*Responses to Requests for Admission Nos. 35 and 36*

Both requests ask Defendants to admit that storm water, sampled at the Facility on December 6, 2007, contained particular levels of pollutants.  Defendants' response to these requests states: "Defendants are not aware of this sample or its results, and therefore lack

Therese Cannata
July 17, 2014
Page 2

sufficient knowledge to admit or deny."  Under FRCP 36(a)(4), a party responding on the basis of a lack of information must state that it has "made a reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."  Defendants' responses do not include the necessary language that a good faith investigation took place.  Further, the responding party is required to undertake an investigation of sources reasonably available to him or her in formulating answers to RFAs. Adv. Comm. Notes to 1970 Amendment to FRCP 36(a).

In this case, documentation regarding the December 6, 2007 sampling was provided to Defendants on November 21, 2013.  Please refer to Plaintiff's document production at Bates Nos. 001272-001298.  Defendants are obligated under the federal rules to review this information prior to responding.  Please amend these responses accordingly.


Defendants' Responses to Interrogatories, Set One

*Defendants' Amended Response to Special Interrogatory No. 1*

Plaintiff's Interrogatory No. 1 states:  "Please DESCRIBE any action undertaken at the FACILITIES by YOU since March 17, 2005 to prevent or reduce the discharge of STORM WATER contaminated with POLLUTANTS from the FACILITIES, including but not limited to the dates and duration of all such activities, the type of activities, the portions of the FACILITIES where the activity is or was conducted, PERSONS conducting the activity, and the specific purpose of the activity."

Defendants responded: "….Without waiving these objections, and subject to them defendants answer only as to CSM-Norcal: "the actions taken by defendants to reduce or prevent the discharge of contaminated storm water are available in their SWPPPs.  *See* Bates Numbers CSM 001617-1677l; CSM 00469-525; and CSM 00292-345."  This is an inadequate response.  An answer to an interrogatory must be complete in itself and may not point to other documents to provide the answer.  *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton* (D KS 1991) 136 FRD 682, 686 ("see page 44 of Jones deposition transcript" improper).  Moreover, what is merely stated in those documents as anticipatory or planned, may not have actually happened on the timeframe then anticipated or planned.

Defendants' primary contention for compliance with the General Permit, and the Act, is that the facility took all steps necessary to engage in the iterative process under the General Permit by updating BMPs when necessary.  It is therefore relevant to the adjudication of this defense, precisely <u>what</u> actions Defendants have taken, and <u>when</u>, to reduce the discharge of contaminated storm water.  The SWPPP does not delineate the exact dates of implementation of BMPs at the site.  Please respond fully to this interrogatory.

Therese Cannata
July 17, 2014
Page 3

*Defendants' Amended Response to Interrogatory No. 3*

This interrogatory asks Defendants to identify "all PERSONS who have provided YOU with services relating to compliance with the Clean Water Act," including dates of retention, scope of services and cost of service.  Defendants only partially respond to this interrogatory, identifying Nest Environmental Services, but otherwise objecting on the basis that all other consultants are "confidential."  We agree that consulting experts retained for the purpose of advising counsel in anticipation of this litigation are protected.  However, we are not asking for this information.  To the contrary, we are asking for disclosure of the identity of individuals retained by Defendants to advise on complying with the General Permit, a requirement of Defendants' business. As one court explained, "the relevant distinction is not between fact and opinion testimony but between those witnesses whose information was obtained in the normal course of business and those who were hired to make an evaluation in connection with expected litigation." *Chiquita v. M/V Bolero* (S.D.N.Y.'94) 1994 U.S.Dist.Lexis 5820, *3.  Please amend your response accordingly.

We would also like to take this opportunity to open up a discussion regarding deposition of the dual role experts (those identified as retained experts, as well as prior percipient witnesses).  It may be necessary to conduct two separate depositions to allow for adequate time.

*Defendants' Amended Response to Interrogatory No. 4*

Defendants only partially responded to this interrogatory.  No dates of sampling were provided as asked for in the interrogatory.  Please provide a full response to this interrogatory.

*Defendants' Amended Response to Interrogatory No. 7*

Defendants only partially responded to this interrogatory.  Identification of the pollutant intended to be addressed by pollution management practices was not provided as called for in the interrogatory.  Please provide a full response to this interrogatory.

*Defendants' Response to Interrogatory No. 8*

Defendants do not answer this interrogatory but merely direct Plaintiffs to review Defendants' SWPPPs.  This is an inadequate response.  An answer to an interrogatory must be complete in itself and may not point to other documents to provide the answer.  *Continental III. Nat'l Bank & Trust Co. of Chicago v. Caton* (D KS 1991) 136 FRD 682, 686 ("see page 44 of Jones deposition transcript" improper).  Please amend the response accordingly.

*Defendants' Amended Response to Interrogatory No. 13*

The interrogatory asks Defendants to identify all non-storm water (i.e. water not entirely composed of storm water) used at the facility and its discharge points.  Defendants object on the basis that the term non-storm water is "impossibly vague and ambiguous."  This

Therese Cannata
July 17, 2014
Page 4

objection is disingenuous. Defendants owe a duty to exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in discovery. *Pulsecard, Inc. v. Discover Card Services, Inc.* (D KS 1996) 168 FRD 295, 310. The interrogatory clearly asks for identification of water used at the facility <u>other than storm water (non-storm water).</u> With this clarification please amend your response to this interrogatory.

<u>Defendants' Response to Request for Production of Documents</u>

*Records related to the Orders of the DTSC and Butte County Superior Court*

In response to several requests for production, Defendants indicated that documents related to the Orders of the DTSC and Butte County Superior Court would be made available to Plaintiff to copy (presumably in your San Francisco office). We propose Monday, August 11, 2014 or Friday, August 15, 2014. Please advise if either of those dates is agreeable.

*Financial Records*

In light of the court's denial of Defendants' motion to bifurcate, we anticipate receipt of financial records responsive to past discovery issued, as well as responsive to our most recent request for production. We look forward to your compliance with these requests.

Please provide amended responses by Friday August 1, 2014 or we will seek a court order compelling further responses.

Very Truly Yours,

/Megan Truxillo/
Megan E. Truxillo
Attorneys for Plaintiff
California Sportfishing Protection Alliance

Law Offices Of

### ANDREW L. PACKARD

100 Petaluma Blvd N, Ste 301, Petaluma, CA 94952
Phone (707) 763-7227   Fax (707) 763-9227
Info@PackardLawOffices.com

July 24, 2014

*Via E-mail*
Kimberly A. Almazan, Esq.
Cannata, Ching & O'Toole LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

       Re:    *California Sportfishing Protection Alliance v. Chico Scrap Metal, Inc., et al*;
              United States District Court, Eastern District of California, Case No. 2:10-cv-
              01207-GEB-AC;

Dear Kim,

      Thank you for taking the time to meet and confer on discovery and case management issues this morning.  Set forth below is CSPA's confirmation of the understandings we reached; please let me know if I have omitted or misstated anything we discussed.

   (1) Moving dates for dispositive motions, pre-trial conference and trial back by 60-90 days;

      Subject to your client's approval, which you have agreed to seek tonight, the parties are in general agreement that all deadlines in the case, beginning with the expert report due on September 23rd should be pushed back sixty (60) days.  We have agreed to provide you with a draft stipulation (transmitted herewith), and the parties agree on the collective objective of getting the stipulation and proposed order on file tomorrow.

   (2) Parties' positions on mediation;

      Plaintiff remains amenable to agreeing to a mediation session with any Magistrate of the Eastern District.  Defendants have no interest in mediation at this time.

   (3) Electronic production of Butte County DA/DTSC enforcement documents in lieu of in-office copying;

      Defendant has agreed to provide a print-out of the docket of the proceedings and Plaintiff has agreed to transmit a letter identifying the specific docket items that Plaintiff wishes to obtain.  Defendants have agreed to produce the requested items on a hard drive to be provided by Plaintiff.

Kimberly A. Almazan, Esq.
July 24, 2014
Page 2

(4)  Understanding re percipient witness/expert depositions, possible need for extra time;

It appears that Defendants will not have any witnesses that will be dual-role (both percipient and expert), and that Plaintiff might have one (John Lane).  Plaintiff proposes that the parties agree to a date certain (August 15th) by which time both sides will clarify the status of their respective witnesses.  Plaintiff will proceed with noticing the depositions of Taverner and Wisniewski, and requests that you provide their available deposition dates for the months of August and September.  The parties have further agreed to table the discussion of depositions of dual-role witnesses until the scheduling of expert witness depositions consistent with the agreement reached in the fall of 2013.

(5)  Unresolved compel issues (redactions, privilege log);

We agreed to table these issues for now.

(6)  Scheduling: Jihan Gray's MQP Deposition; Dry Inspection with Steve Bond; Deposition of Defendants' MQP Re Financial Information;

Jihan Gray's MQP Deposition; Defendants have requested that this be set after the conclusion of  Therese Cannata's trial ending September 18th.  Plaintiff proposes either September 23, 24 or 25 for this deposition.

Dry Inspection with Steve Bond; Plaintiff has requested access to the site as soon as practicable, and Defendants have agreed to provide now the dates upon which the Facility will be made available after September 1st.

Deposition of Defendants' MQP Re Financial Information; Defendants are strongly contesting Plaintiff's right to obtain this information and have proposed to send a meet and confer letter in the first week of September regarding discovery on this topic.  Plaintiff rejects this proposal and respectfully submits that Defendants will need to file a motion for a protective order on or before August 15th after which point CSPA will be filing a motion to compel the production of this information and testimony (including any responses to the written discovery on this topic for which answers are due next Wednesday).

(7)  Amended Discovery responses Re Financial Information;

CSPA has requested that Defendants amend any prior discovery responses that are incomplete, or for which information was withheld, based on the objection that financial information would be deferred to a remedy phase of this litigation.

(8)  Revisions to Dry & Wet Inspection Stipulations After Compel Order;

Kimberly A. Almazan, Esq.
July 24, 2014
Page 3

These stipulations need to be modified in light of the Court's order granting Plaintiff's motion to compel.  Defendants have agreed to provide the prior documents in Word and Plaintiff has agreed to red-line them and return them to you for approval.

(9) Supplementation of responses to discovery previously propounded but objected to on expert grounds;

Plaintiff has agreed to identify all such responses, and has proposed that the due date for the amended responses be the due date for expert reports.  Defendants have agreed to consider this proposal and respond promptly.

(10)    Stipulation to authentication of documents produced in discovery.

Defendants have rejected Plaintiff's proposal that each side's own production will be deemed authenticated, and instead favor addressing authentication issues after the close of discovery and in the pre-trial preparation phase.  Plaintiff cannot agree to this approach and will therefore propound Requests for Admission as to each such document for which it seeks authentication.

Thank you again for agreeing to try to resolve these issues without necessitating either side's invocation of the Magistrate's assistance at this juncture.

Very Truly Yours,

Andrew L. Packard

Law Offices Of

# ANDREW L. PACKARD

100 Petaluma Blvd N, Ste 301, Petaluma, CA 94952
Phone (707) 763-7227   Fax (707) 763-9227
Info@PackardLawOffices.com

August 6, 2014

*Via Email Only*
Therese Y. Cannata
Kimberly Almazan
Cannata, Ching & O'Toole LLP
100 Pine Street, Suite 1775
San Francisco, CA 94111

> Re:   *California Sportfishing Protection Alliance v. Chico Scrap Metal, Inc., et al.*;
> United States District Court, Eastern District of California, Case No. 2:10-cv-
> 01207-GEB-AC

Dear Ms. Cannata and Ms. Almazan:

The purpose of this letter is to meet and confer regarding discovery of Defendants' financial information.  In the event that we are unable to reach an informal resolution, Plaintiff will move to compel further responses and seek appropriate sanctions as provided under the discovery rules.

Defendants have persistently refused to testify or provide written discovery responses regarding Defendants' finances (See, e.g., George Scott, Sr. deposition, Kim Scott deposition, Defendants' Responses to Plaintiff's Third Request for Production of Documents).  The parties entered into a meet and confer effort on this matter in March of 2014.  In response to that effort, Defendants notified Plaintiff they intended to move to bifurcate the liability and penalty phases of the trial.  Defendants moved to bifurcate, and lost: Judge Burrell denied the motion on June 4, 2014.  In light of denial of the motion, Plaintiff requested Defendants respond to the previously propounded discovery seeking Defendants' financial information. In addition, Plaintiff propounded a third set of requests for production of documents seeking financial records.  Despite denial of the motion to bifurcate, Defendants continue to object to this discovery.

Defendants' objection to production of financial information has morphed over the course of this litigation.  The most recent iteration states:

> Defendants incorporate by reference in to this specific response each of the
> general objections listed above. Defendants further object to this request on the
> grounds that discovery of financial information in Clean Water Act cases is not
> permitted until after liability has been established. *See, e.g., U.S. v. Smithfield
> Foods, Inc.,* 972 F. Supp. 338 (1997); *U.S. v. Mun. Auth. Of Union Township,*
> 929 F. Supp. 800 (1996). Defendants further object to this request because
> financial information is not relevant to a determination of whether or not

Therese Cannata
August 6, 2014
Page 2

defendants have violated the Clean Water Act. Defendants will be providing a meet and confer letter to plaintiff on this issue shortly. Defendants' Response to Plaintiff's Third Request for Production of Documents, Nos. 43, 44, 45, 46.

Defendants' relevance objection is not well taken.  Section 309(d) of the Clean Water Act states: "In determining the amount of a civil penalty, the court shall consider the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, **the economic impact of the penalty on the violator, and such other matters as justice may require**." 33 U.S.C. §1319 (emphasis added).  The Defendants' wherewithal is therefore plainly relevant to the claims raised because it factors into the Court's civil penalty determinations.  Defendants' objection states that the financial information is not relevant to a determination whether Defendants' are liable for Clean Water Act violations. This clearly ignores the decision of the court denying Defendants motion to bifurcate this case.  This is not a phased trial, thus the financial wherewithal of the company is subject to discovery throughout this litigation.  Further, because this case is not phased or bifurcated, this is Plaintiff's only opportunity to obtain financial information through the discovery process.  It is unclear, when Defendants believe Plaintiff will be able to obtain relevant financial information once discovery in this case is closed.

The case law cited by Defendants does not stand for the proposition, as Defendants state, that "discovery of financial information in Clean Water Act cases is not permitted until after liability has been established."  Defendants' Response to Plaintiff's Third Request for Production of Documents.  This statement of the case is misleading at best.  Neither of the two cases cited even touches on discovery of financial information in a Clean Water Act case, which explains why neither citation provided by Defendants contains a pincite.  *U.S. v. Smithfield Foods, Inc* (1997) 972 F. Supp. 338, *overruled on other grounds*, is a decision regarding an award of civil penalties in a Clean Water Act case. *U.S. v. Mun. Auth. Of Union Township* (1996) 929 F. Supp. 800, again is a decision regarding an award of civil penalties in a Clean Water Act case.  Both decisions highlight plaintiff's point: that a defendant's financial information is relevant to a court's imposition of a civil penalty. *See*, *U.S. v. Smithfield Foods, Inc.*, *supra*, 972 F. Supp. at 353; *U.S. v. Mun. Auth. Of Union Township, supra,* 920 F. Supp. at 805-06.

There is no basis in the law for Defendants' refusal to produce financial information at this time.  In the event that we have not received your amended responses by Friday, August 15, 2014, Plaintiff will seek a court order compelling further responses and the imposition of sanctions.

Therese Cannata
August 6, 2014
Page 3

Very Truly Yours,

_____
Megan E. Truxillo
Attorneys for Plaintiff
California Sportfishing Protection Alliance

# CANNATA,
# CHING &
# O'TOOLE LLP
Attorneys at Law

Therese Y. Cannata
tcannata@ccolaw.com

August 18, 2014

**By Email and U.S. Mail**
Andrew L. Packard
Law Offices of Andrew L. Packard
100 Petaluma Blvd N., Suite 301
Petaluma, California  94952

   Re: *California Sportsfishing Protection Alliance v. Chico Scrap Metal, Inc. et.al*
      *USDC, Eastern District of California Case 2:10-cv-01207-GEB-GGH*

Dear Mr. Packard and Ms. Tuxillo:

   This pertains to CSPA's renewed effort to obtain discovery of financial information of Chico Scrap Metal, Inc., along with the personal financial information of George Scott, Sr. and, as I understand recent correspondence, the status of the estate of George Scott, Jr.  In this regard, CSPA is seeking documents and has asked to reconvene the deposition of George Scott, Sr. to gather information concerning the future imposition of a penalty, assuming that liability would be found in this case.

   Our research on the topic discloses the statute pertaining to the imposition of penalties, and several cases discussing the factors that must be considered in determining a penalty.  However, this assumes that liability has been determined, or at least the presence of compelling evidence of liability for a violation of the Clean Water Act.  CSPA has yet to offer a published (or unpublished) decision on the subject of the right to seek discovery in Clean Water Act cases, where, as here, there is no evidence of liability.  And this goes to the broader concern that we have in this case, which is that despite repeated requests to CSPA for facts in support of CSM's liability in this case, CSPA continues to essentially quote its complaint and then proceeds into a discussion on the exposure to penalties, always assuming that liability has been determined.

   CSPA concedes, as it must, that the only issue presented here is whether CSM has violated the General Permit.  CSPA does not dispute that there are no numeric effluent limitations under the General Permit and that CSM has engaged in the iterative process as

Mr. Packard and Ms. Truxillo
August 18, 2014
Page 2

required under the General Permit by implementing Best Management Practices that will improve storm water management.  CSPA acknowledges, begrudgingly, that CSM's recent efforts to reduce or eliminate storm water discharges is exactly what CSPA has demanded of CSM.

CSPA had three site inspections in 2014.  CSPA has received, in party and third party discovery, thousands of pages of information about the Site concerning storm water testing, soil testing and site investigation.  CSPA's consultant, John Lane, working with CSPA and the local District Attorney, has been continuously investigating this site since January 2011.  CSPA has not, to date, provided any facts or recommendations to suggest that it has a better idea for managing storm water at this site.  While CSPA contends it needs still more access to the Site to put its case together, the question arises: what is CSPA expecting to find that would give rise to a violation of the General Permit.

Turning to the applicable law, it is well settled that the defendants in a Clean Water Act case have the right to a jury trial on the issue of liability and that if (and only if) the jury determines that the defendants have violated the Clean Water Act, the trial court determines the penalty to be imposed, as well as the attorneys' fee award.  The deferment of the discovery of financial information, which necessarily invokes federal and state constitutional rights of privacy, is easily achieved where the proceedings have such a natural procedural division.

Accordingly, we ask that CSPA stipulate to limit its discovery to liability at this time.  It conserves legal expenses in this case, which CSPA should give careful thought to in light of the facts of this case, and it effects a proper balance between the rights of the parties, where the evidence of liability is extremely weak and the proposed discovery invades a constitutional right of privacy.

If you have any questions or concerns with regard to the above, please do not hesitate to contact me.

Very truly yours,

CANNATA, CHING & O'TOOLE LLP

/s/Therese Y. Cannata

THERESE Y. CANNATA

TYC:hs

# CANNATA, CHING & O'TOOLE LLP
Attorneys at Law

Therese Y. Cannata
tcannata@ccolaw.com

March 4, 2014

**By E-mail and U.S. Mail**
Andrew L. Packard
Law Offices of Andrew L. Packard
100 Petaluma Blvd N Ste 301
Petaluma, CA 94952

Re:    *California Sportsfishing Protection Alliance v. Chico Scrap Metal, Inc. et.al*
       *USDC, Eastern District of California Case 2:10-cv-01207-GEB-GGH*

Dear Mr. Packard,

This letter represents defendants' attempt to set forth its position on various issues in advance of our meet and confer telephone conversation.

## 1.    CSPA's Failure to Produce Documents Pursuant to Magistrate Judge Claire's February 20, 2014 Order

In Magistrate Judge Claire's February 20, 2014 Order, she specifically identified the documents to be produced by reference to the Bates label that CSPA attached to its documents. You claim, in your February 28, 2014 email, that CSPA "believes its other objections and privileges remain in effect in the context of [CSM's] discovery on CSPA". The sequence of events relevant to this issue are as follows:

- CSM sent a document request to CSPA;

- CSPA produced some documents and asserted privileges as to others. CSPA produced a privilege log detailing those documents over which it claimed a privilege;

- CSPA and CSM filed a joint statement regarding whether or not those documents were privileged;

- The Court ordered CSPA to revisit its privilege log;

- CSPA revisited its log and withdrew some claims of privilege;

- CSPA presented a revised privilege log to the Court;

Mr. Packard
March 4, 2014
Page 2

- The Court issued an order directing the production of certain documents listed on CSPA's privilege log.

It appears, based on your recent statements and emails, that CSPA wants to re-litigate the issue of whether these documents (*i.e.* the ones ordered produced by the Court) are subject to work product immunity. Alternatively, CSPA is claiming that CSPA has some other basis – beyond that disclosed in the extensive correspondence and briefing to the Court, which led to the Court's most recent discovery order – for withholding these documents from production. The phrase you use in your email is "other objections and privileges," and we ask you to clarify and explain your position. That is, identify these "other objections and privileges" and clarify whether CSPA will be requiring the parties to re-litigate the issues covered in the recent motion to quash.

We also note that as of the date of this letter, neither you nor Mr. Kreutz, counsel for the District Attorney, has produced the documents that the Court ordered produced on February 18, 2014. Neither you nor Mr. Kreutz have identified a date on which the documents will be produced. We will continue to document day by day your disregard of the Court's order and your refusal to produce documents that the Court has determined are not subject to privilege or work product immunity. The gamesmanship continues. This is going to be a long and dreary road for both sides as the consequences of your lack of professionalism take root.

**2.     John Lane's Misconduct at the February 27, 2014**
**Wet Inspection at CSM-NorCal**

During the February 27, 2014 "Wet Inspection," your consultant, Mr. John Lane, acted inappropriately and unprofessionally. For example, Mr. Lane intentionally trampled over BMPs (berms and rocked areas) that CSM had installed to address and better manage storm water in anticipation of the rainy weather conditions in recent weeks. When CSM representatives asked Mr. Lane to stop walking directly on the BMPs, he responded by making sarcastic remarks and continuing to trample these areas. Mr. Lane's animosity toward the Scott family and CSM is no secret, and we were tempted at the start of this case to set ground rules specifically directed to Mr. Lane when on the site. Thinking that he would always be accompanied by counsel, we did not go down that road. We must now revisit that question, and advise that Mr. Lane may only attend site visits at CSM-NorCal with CSPA's counsel also present  – and he will be entirely your responsibility

Mr. Packard
March 4, 2014
Page 3

### 3.   Financial Information

As you noted, defendants interposed an objection to the disclosure of defendants' financial information.  Generally speaking, "district courts . . . do not allow pre-judgment discovery regarding a defendant's financial condition or ability to satisfy a judgment – aside from those insurance related disclosures made pursuant to Rule 26(a)(1)(A)(iv), or where punitive damages are available – on the grounds that such discovery is not relevant to the parties' claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence."  *Sierrapine v. Refiner Prod. Mfg., Inc.*, 275 F.R.D. 604, 609 (E.D. Cal. 2011).  We found no case indicating that Clean Water Act cases present an exception to this rule.  If you have authority demonstrating such an exception, please provide it to us immediately.

What CSM did find, however, is that district courts routinely bifurcate Clean Water Act cases so as to adjudicate liability before turning to issues of penalties.  *See, e.g., Pub. Interest Res. Grp. of New Jersey v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 69 (3d Cir. 1990) ("The district court bifurcated the case, with liability to be determined first and civil penalties and injunctive relief, if any, to be considered afterward.").  We would stipulate to bifurcating the proceedings in this case so as to preserve judicial resources.  Please let us know if you agree to this course of action.

### 4.   Soil Sampling

The issue in this case is whether storm water discharged from the site have violated the Clean Water Act.  CSPA has acknowledged that among the reasons that it is pursuing the CSM-NorCal site is that it has the advantage of multiple samples of storm water flowing out of or near the site.  CSPA and presumably its expert/consultant, Mr. Lane have been free to test the water samples collected in 2011, 2012, and 2014 for any substances of concern. Here, we add to the body of information available to CSPA the extensive characterization of the soil at the site by order of DTSC.  We have made all of that information available to you, and you have acknowledged that you and the District Attorney, sharing a common interest, have shared information.  Notably, DTSC has copied the District Attorney on the RIFS reports for the CSM-Norcal site.   The point is this: you know what's in the soil at the site. You are free to conduct your own background metals study (if you dispute CSM's reported results).  And, you have not reported or requested, to date, that CSM is not testing for any substance that concerns CSPA.  I would add that Mr. Lane's test parameters match those of CSM, suggesting that we are all in agreement about what to test for in the storm water discharge from or in the area of the site.

We've not found any case law that supports a position different than what we asserted here (*i.e.* that soil sampling has no relevance under the facts presented here).  Our research

Mr. Packard
March 4, 2014
Page 4

indicates that soil sampling is in certain limited situations, such as when the complaint alleges groundwater contamination, discharges of fill material, or when the court is asked to make a determination as to whether or not a plot of land is a wetland. *See, e.g., In the Matter of Alameda Cnty. Assessor's Parcel Nos. 537-801-2-4 and 537-850-9*, 672 F. Supp. 1278, 1283 (N.D. Cal. 1987) (permitting sampling of soil and vegetation "[i]n order to determine if wetlands exist on a specific parcel of property").

The cases that you previously cited to us do not apply here. *Coldani v. Hamm*, 2007 WL 2345016 (E.D. Cal. Aug. 16, 2007) is a Clean Water Act case alleging groundwater contamination due to nitrate discharges. There are no allegations in CSPA's complaint that CSM contaminated groundwater. *United States v. Acquest Wehrle, LLC*, 2010 WL 1708528 (W.D.N.Y. Apr. 27, 2010) is similarly inapplicable. In that case, the government brought a Clean Water Act suit based on the fact that defendant discharged fill material into waters of the United States. Again, there is nothing in CSPA's complaint alleging that CSM has discharged fill material into waters of the United States. Further, the *CSPA v. Calloway* case you cited to us is not relevant. In that case, CSPA requested a number of inspections and the defendant, who was proceeding pro se, filed his opposition on the date of the hearing which the court declined to consider. It was, in effect, a decision by default. As such, the *Calloway* case has no relevance to our dispute.

### 5.    Inspections

CSPA expressed concern about the scheduling of inspections. We clarify as follows. First, CSM has never stated that it has the right to unilaterally cancel or object to a Wet Inspection "if they alone do not believe it will rain at the noticed date and time." Rather, on the date in question, you noticed a Wet Inspection and we, accordingly, checked the weather forecast. When the weather forecast for the Chico area indicated a 0% chance of precipitation we interposed an objection to your Wet Inspection, and explained our reason for doing so. As you may recall, you ultimately agreed with us and withdrew your notice.

### 6.    Privilege Log

In your email dated February 24, 2014, you requested a privilege log for CSM's documents bearing Bates numbers CSM001535, CSM001537, CSM001543 and CSM001612. Pursuant to the agreement we reached with you in November 2013, we will not be producing a privilege log. As you will recall, referring to your email dated November 22, 2013, you confirmed our agreement "that the privilege log need not include communications between (a) counsel and clients or (b) counsel and litigation consultants, unless there is a genuine debate about the privilege." We hereby represent to you that the Bates numbers about which you ask are e-mails between CSM and its counsel or confidential consultants.

Mr. Packard
March 4, 2014
Page 5

### 7.    Verifications

The verifications for defendants' discovery responses dated February 18, 2014 are enclosed.

### 8.    Meet and Confer Date

Finally, you asked for a date on which for the parties to meet and confer by telephone, we are available to meet and confer on March 10 (any time).  If my schedule interferes with that date and time, my law partner, Ms. Almazan, will handle the call.

I trust that this responds to your various questions, and we look forward to a prompt and amicable resolution of all of the foregoing issues.

Very truly yours,

CANNATA, CHING & O'TOOLE LLP

THERESE Y. CANNATA

TYC:ka

1

## VERIFICATION

2    *California Sportfishing Protection Alliance v. Chico Scrap Metal, Inc., et. al.*
     **Eastern District of California, Case No. 2:10-CV-01207-GEB-AC**

3

4    I, Kim Scott, declare that:

5    1.    I am the Chief Financial Officer and Environmental and Safety Coordinator of

6    CHICO SCRAP METAL, INC., a corporation organized and existing under the laws of

7    California, which is a defendant in the above reference matter.

8    2.    I have read the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFF'S**

9    **INTERROGATORIES, SET THREE** and know the contents thereof.  The same is true of my

10   own knowledge, except as to those matters which are therein stated on information and belief,

11   and, as to those matters, I believe them to be true.

12       I declare under penalty of perjury under the laws of the State of California and the United

13   States of America that the foregoing is true and correct.

14       Executed in Chico, California on the *18* day of February, 2014.

15

16

17       KIM SCOTT

18

19

20

21

22

23

24

25

26

27

28

CANNATA, CHING & O'TOOLE LLP
ATTORNEYS AT LAW
100 Pine Street, Suite 1775
San Francisco, CA 94111
TEL: (415) 409-8900 ■ FAX: (415) 409-8904

- 1 -
VERIFICATION

720669. Verification Rogs Set Three Kim S.wpd

CANNATA, CHING & O'TOOLE LLP
ATTORNEYS AT LAW
100 Pine Street, Suite 1775
San Francisco, CA 94111
TEL: (415) 409-8900 ■ FAX: (415) 409-8904

1  |  **VERIFICATION**

2  |  *California Sportfishing Protection Alliance v. Chico Scrap Metal, Inc., et. al.*
3  |  **Eastern District of California, Case No. 2:10-CV-01207-GEB-AC**

4  |  I, George W. Scott, Jr., declare that:

5  |  1.    I am a defendant in the above reference matter.

6  |  2.    I have read **DEFENDANTS' RESPONSE TO PLAINTIFF'S**

7  **INTERROGATORIES, SET THREE**.  I have conferred with Kim Scott, who is the

8  Environmental and Safety Coordinator for Chico Scrap Metal, Inc., and am informed and believe

9  that the foregoing Amended Response to Plaintiff's Interrogatories is true and accurate.

10  I declare under penalty of perjury under the laws of the State of California and the United

11  States of America that the foregoing is true and correct, except as to those matters stated on

12  information and belief, and as to those matters, I believe them to be true.

13  Executed at Chico, California on the _18_ day of February, 2014.

14

15

16  GEORGE W. SCOTT, JR.

## VERIFICATION

*California Sportfishing Protection Alliance v. Chico Scrap Metal, Inc., et. al.*
Eastern District of California, Case No. 2:10-CV-01207-GEB-AC

I, George W. Scott, Sr., declare that:

1.     I am a defendant in the above reference matter.

2.     I have read **DEFENDANTS' RESPONSE TO PLAINTIFF'S INTERROGATORIES, SET THREE**.  I have conferred with Kim Scott, who is the Environmental and Safety Coordinator for Chico Scrap Metal, Inc., and am informed and believe that the foregoing Amended Response to Plaintiff's Interrogatories is true and accurate.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

Executed in Chico, California on the _18_ day of February, 2014.

GEORGE W. SCOTT, SR.

CANNATA, CHING & O'TOOLE LLP
ATTORNEYS AT LAW
100 Pine Street, Suite 1775
San Francisco, CA 94111
TEL: (415) 409-8900 ▪ FAX: (415) 409-8904

720669.Verification Rogs Set Three George Sr..wpd

Megan Truxillo <megan@packardlawoffices.com>

## CSPA v. CSM, Service of Deposition Notice, PMK Financial

**Megan Truxillo** <megan@packardlawoffices.com>       Mon, Aug 11, 2014 at 8:38 AM
To: Kimberly Almazan <kalmazan@ccolaw.com>
Cc: Therese Cannata <tcannata@ccolaw.com>, Andrew Packard <andrew@packardlawoffices.com>, John Prager
<jjprager@packardlawoffices.com>, Ronald Ching <rching@ccolaw.com>

Dear Kim:
In response to your email, I will hold filing the notice of motion until Monday, August 18th, to allow us to continue
meeting and conferring.  Thank you for taking the time to look more closely at this issue, Megan


On Mon, Aug 11, 2014 at 8:02 AM, Kimberly Almazan <kalmazan@ccolaw.com> wrote:
Dear Megan,

Thank you for your email.  You are incorrect.  We fully intend to and are interested in meeting and
conferring on this issue.  We are currently doing research and asked you for case law so that we can be
fully prepared to talk about this issue.  We will provide you with a meet and confer letter by Friday, August
15th.  As I mentioned to Mr. Packard, I am going on vacation shortly and initially intended to provide a
meet and confer letter to plaintiff by September 5, 2014; Mr. Packard, however, rejected this deadline.
Given that defendants reluctantly agreed to move the trial and all deadlines in this matter out 3 months to
accommodate Mr. Packard's vacation schedule (and given that trial is now over a year away), we would
appreciate your reciprocal professional courtesy in this regard.


Thanks,


Kim

---

**From:** Megan Truxillo <megan@packardlawoffices.com>
**Date:** Thursday, August 7, 2014 at 11:30 AM
**To:** Kim Pallen <kalmazan@ccolaw.com>
**Cc:** Therese Cannata <tcannata@ccolaw.com>, Andrew Packard <andrew@packardlawoffices.com>, John
Prager <jjprager@packardlawoffices.com>, Ronald Ching <rching@ccolaw.com>

**Subject:** Re: CSPA v. CSM, Service of Deposition Notice, PMK Financial

Dear Kimberly:

As you are aware, as the party objecting to production of discovery Defendant bears the burden of supporting
its objection.  We have provided the relevant statutory language supporting production of Defendants' financial
information, as well as the federal rules relating to the permissible scope of discovery.  In addition, please
review the attached order, wherein the court granted our motion to compel financial information under the same
circumstances.  Please advise if you will amend your responses, or we will assume you are no longer
interested in meeting and conferring on this issue and file our motion to compel on Monday, August 11th.
Please also advise whether you intend to object to the deposition of the PMK re: financials so that we can
address that issue in the motion.

Thanks,

Megan

On Wed, Aug 6, 2014 at 3:41 PM, Kimberly Almazan <kalmazan@ccolaw.com> wrote:

Dear Megan and Andrew,


We have reviewed your meet and confer letter and note that you fail to cite to any case law in support of your position.  Part of engaging in a good-faith meet and confer process is the full exchange of all information the parties have to support their respective arguments.  Therefore, please provide us with any and all case law you have which you believe supports your position.  If we do not receive any case law, or a letter citing to case law, from you in response to this email, we will assume you have none.


Thanks,


Kim

_____


Kimberly A. Almazan
Attorney at Law


CANNATA,

CHING &

O'TOOLE LLP

100 Pine Street, Suite 350

San Francisco, California 94111
Telephone:       415.409.8900
Fax:             415.409.8904

 **Please consider the environment before printing this e-mail**

-----------------------------------------------------------------------------------------------------
For further information about our firm or directions to our San Francisco or Walnut Creek offices, please visit our Firm Website at www.ccolaw.com
-----------------------------------------------------------------------------------------------------

This electronic mail transmission is intended only for the addressee(s) shown above. It may contain information that is confidential, or otherwise protected from disclosure as an attorney-client or attorney work-product privileged communication. Any review, dissemination or use of this transmission or its contents by persons other than the addressee(s) is strictly prohibited.

If you have received this transmission in error please notify us immediately by telephone and, and destroy this document.

*If this communication relates to a debt, THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED AS A RESULT OF OR IN CONNECTION WITH THIS COMMUNICATION WILL BE USED FOR THAT PURPOSE.*

**From:** Megan Truxillo [mailto:megan@packardlawoffices.com]
**Sent:** Wednesday, August 06, 2014 2:03 PM
**To:** Therese Cannata
**Cc:** Kimberly Almazan; Andrew Packard; John Prager; Ronald Ching
**Subject:** Re: CSPA v. CSM, Service of Deposition Notice, PMK Financial

Dear Therese:

We are certainly willing to work with your trial schedule and appreciate the flexibility on your side. I'm attaching a meet and confer letter regarding the financial discovery. With the understanding that Defendants intended to object to disclosure of financial information, by way of deposition or document production, we sent the depo notice for the financial PMK so that these issues could be decided at the same time. If Defendants have changed their position and intend to respond to the financial discovery, then we can work out a deposition date following production. Let me know if you have any further questions, Megan

On Tue, Aug 5, 2014 at 6:06 PM, Therese Cannata <tcannata@ccolaw.com> wrote:

Dear Megan,

We believe advised you and Andrew a while ago that I am scheduled to start a trial in Alameda County Superior Court on Sept. 8. We are expecting that it will go for 6-8 days, assuming it starts on time but in my experience the court hears motions in limine for a day or so. We can meet and confer about deposition dates in the latter part of September 2014. Given that we cooperated with continuing the trial date, which is now more than one year away, I trust we'll see cooperation on your side with scheduling.

We hope to have time to respond to the balance of your discovery emails later this week.

Thank you,

tyc

Therese Cannata

Attorney at Law

# CANNATA,

# CHING &

# O'TOOLE LLP

100 Pine Street, Suite 350

San Francisco, California 94111

Tel: 415.409.8900 Fax: 415.409.8904

 **Please consider the environment before printing this e-mail**

_____

For further information about our firm and directions to our San Francisco and Walnut Creek offices, please visit our Firm Website at www.ccolaw.com

_____

This electronic mail transmission is intended only for the addressee(s) shown above. It may contain information that is confidential, or otherwise protected from disclosure as an attorney-client or attorney work-product privileged communication. Any review, dissemination or use of this transmission or its contents by persons other than the addressee(s) is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone at (415) 409-8900, and destroy this document.

**From:** Megan Truxillo [mailto:megan@packardlawoffices.com]
**Sent:** Tuesday, August 05, 2014 3:35 PM
**To:** Therese Cannata; Kimberly Almazan; Andrew Packard; John Prager; Ronald Ching
**Subject:** CSPA v. CSM, Service of Deposition Notice, PMK Financial

Dear Counsel:

Attached please find our deposition notice for the PMK of Chico Scrap regarding financials.  We also wish to continue the deposition of George Scott, Sr., in his individual capacity and as trustee of the trust, regarding finances for the same day.

Very truly yours,

Megan E. Truxillo
Attorney at Law


The Law Offices of Andrew L. Packard
100 Petaluma Boulevard North, Suite 301
Petaluma, CA  94952


Tel. (707) 763-7227
Fax: (707) 763-9227
Email:  megan@packardlawoffices.com


The communication contained in this message is considered privileged and confidential.  It is protected by attorney client privilege and the attorney work product doctrine. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in  error, please provide notification to the sender immediately by replying to the message and deleting it from your computer. This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521 and is legally privileged.




--

Megan E. Truxillo
Attorney at Law


The Law Offices of Andrew L. Packard
100 Petaluma Boulevard North, Suite 301
Petaluma, CA  94952


Tel. (707) 763-7227
Fax: (707) 763-9227
Email:  megan@packardlawoffices.com


The communication contained in this message is considered privileged and confidential.  It is protected by attorney client privilege and the attorney work product doctrine. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in  error, please provide notification to the sender immediately by replying to the message and deleting it from your computer. This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521 and is legally privileged.

--
Megan E. Truxillo
Attorney at Law

The Law Offices of Andrew L. Packard
100 Petaluma Boulevard North, Suite 301
Petaluma, CA  94952

Tel. (707) 763-7227
Fax: (707) 763-9227
Email:  megan@packardlawoffices.com

The communication contained in this message is considered privileged and confidential.  It is protected by attorney client privilege and the attorney work product doctrine. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in  error, please provide notification to the sender immediately by replying to the message and deleting it from your computer. This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521 and is legally privileged.

--
Megan E. Truxillo
Attorney at Law

The Law Offices of Andrew L. Packard
100 Petaluma Boulevard North, Suite 301
Petaluma, CA  94952

Tel. (707) 763-7227
Fax: (707) 763-9227
Email:  megan@packardlawoffices.com

The communication contained in this message is considered privileged and confidential.  It is protected by attorney client privilege and the attorney work product doctrine. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in  error, please provide notification to the sender immediately by replying to the message and deleting it from your computer. This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521 and is legally privileged.

# EXHIBIT B

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                          EASTERN DISTRICT OF CALIFORNIA

7

8    CALIFORNIA SPORTFISHING              No. 2:10-cv-1207-GEB-AC
     PROTECTION ALLIANCE, a non-
9    profit corporation,

10                    Plaintiff,          **ORDER DENYING DEFENDANTS' MOTION
                                          TO BIFURCATE**
11        v.

12   CHICO SCRAP METAL, INC., a
     California corporation,
13   GEORGE W. SCOTT, SR.
     REVOCABLE INTER VIVOS TRUST,
14   GEORGE SCOTT, SR., an
     individual, and GEORGE SCOTT,
15   JR., an individual,

16                    Defendants.

17

18        Defendants move under Federal Rule of Civil Procedure

19   ("Rule") 42(b) for an order "bifurcate[ing] this matter into a

20   liability phase and a remedy phase," arguing in a conclusory

21   manner that "[t]he liability and remedy issues in this case are

22   distinct and will have little, if any, overlapping evidence."

23   (Defs.' Mot. 1:21, 5:15-16, ECF No. 131.) Plaintiff did not file

24   an opposition, but Defendants state in their motion: "Plaintiff's

25   counsel declined to consent to bifurcation." (Id. 2:9.)

26        Defendants have not sufficiently explained the

27   separability of the liability and remedy issues in this water

28   pollution case. Therefore, Defendants have not shown that

                                     1

1   bifurcation under Rule 42(b) is warranted, and accordingly the

2   motion is DENIED.

3   Dated:  June 4, 2014

4

5   _____

6   GARLAND E. BURRELL, JR.
    Senior United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                  2

# EXHIBIT C

 1                UNITED STATES DISTRICT COURT

 2              EASTERN DISTRICT OF CALIFORNIA

 3

 4    CALIFORNIA SPORTFISHING         )   Case No.
      PROTECTION ALLIANCE,            )   2:10-CV-01207-GEB-AC
 5    a non-profit corporation,       )
                                      )
 6                 Plaintiff,         )
                                      )
 7    vs.                             )
                                      )
 8    CHICO SCRAP METAL, INC., a      )
      California corporation,         )
 9    GEORGE SCOTT, SR. REVOCABLE     )
      INTER VIVOS TRUST, GEORGE       )
10    SCOTT, SR., an individual,      )
      and GEORGE SCOTT, JR., an       )
11    individual,                     )
                                      )
12                 CSMs.              )
      _____)

13

14

15                         Deposition of

16                      GEORGE SCOTT, SR.

17               Friday, December 13, 2013

18

19

20

21   Reported by:  ERIN WORLEY, CSR #13139

22

23

24

25

1    A.  No.

2    Q.  Do you take a paycheck?

3    A.  No.

4    Q.  Do you know what you were paid for your work with

5    Chico Scrap Metal this year?

6              MS. CANNATA:  Do not answer that question.

7    Objection.  Privacy.  It invades his private,

8    confidential financial information.  I instruct the

9    witness not to answer.

10             MR. PACKARD:  Is that going to be your

11   objection with respect to all questions relating to the

12   finances of the corporation?

13             MS. CANNATA:  Yes.

14             MR. PACKARD:  Are you aware, Counsel, that

15   that is properly within the scope of discovery for

16   purposes of penalty calculations?

17             MS. CANNATA:  It is, but it has to arise at

18   a point when penalty calculations are relevant, and so

19   I'm going to be asking for a bifurcated proceeding.  If

20   you establish liability, then you may invade that

21   information, but we will be -- that's an issue I was

22   aware of that you were going to be asking about, and we

23   will certainly take a look at it.

24        I'll also note for the record, and I know that

25   CSPA made a Public Records Act request of the District

1    Attorney's office, and at the time of the criminal

2    proceeding, financial records of the company were

3    seized, and we're going to be moving in court to have

4    those sealed and placed under confidential protection

5    for the duration of this litigation until we can reach a

6    point where it's fair and reasonable to have it

7    accessed.

8              MR. PACKARD:  So the grounds for your

9    objection are privacy and relevance?

10             MS. CANNATA:  Privacy.  I didn't say

11   relevance.  It will be relevant if and when there's

12   liability found for the company, which I believe will

13   not occur.  So we're going to be asking as a remedy of

14   this -- as an interim order of this court that the

15   proceedings be bifurcated so that we're not --

16   essentially along the same lines as one would with

17   punitive damages.  You will not be allowed to inquire

18   into the financial circumstances of the company or his

19   assets until such time as you have a legal right and

20   have established liability, and I have seen case law

21   which permits that even in Clean Water Act

22   circumstances.

23             MR. PACKARD:  So you're going to provide

24   authority for the proposition that this kind of

25   discovery is premature until a finding of liability?

```
 1                    MS. CANNATA:  It is -- yes.  You know, the
 2      timing of when you're allowed to discover it, we'll have
 3      to explore with the trial court, but at this time -- at
 4      this time, and I think it's something we have to address
 5      at this time, it is not relevant.  We are very, very
 6      early in the proceedings, and your inquiry into the
 7      finances is simply not relevant at this time because you
 8      have not established liability.
 9                    MR. PACKARD:  But this trial is not phased,
10      and defendants have had an opportunity to request that
11      it be phased.
12                    MS. CANNATA:  You raise a very fair point,
13      and I did not -- was not aware you were going to be
14      expediting this inquiry because we had been told that
15      you wanted to bifurcate this and go into settlement
16      discussions earlier in the proceedings before the close
17      of discovery, which we are prepared to do, and so this
18      is interim discovery that we agreed to.  If you -- I
19      think maybe the better approach I would take here,
20      Counsel, is we'll have to meet and confer, and I will
21      seek a motion to bifurcate and exclude you from
22      inquiring.  I think that's going to be the better
23      approach, rather than us taking up valuable time on the
24      record, but he will not answer those today.
25                    MR. PACKARD:  Okay.  We are going to move to
```

1   compel that testimony and come back.

2                  MS. CANNATA:  I understand.  And we will be

3   seeking a corresponding protective order.

4                  MR. PACKARD:  Okay.

5   BY MR. PACKARD:

6      Q.  Does Chico Scrap Metal issue profit and loss

7   statements?

8                  MS. CANNATA:  I'm going to again ask that --

9   I will instruct him not to answer on any financial

10  matters.  It might save you time that we will not be

11  going into -- we will be instructing him not to disclose

12  financial information of the company today on any

13  circumstance at any level.

14                 MR. PACKARD:  Okay.

15  BY MR. PACKARD:

16     Q.  How many employees does Chico Scrap Metal have

17  right now?

18     A.  Somewhere around 25.

19     Q.  Do you know how many of those are full-time?

20     A.  No.

21     Q.  Do you know how many are part-time?  Do you have

22  any part-time employees?

23     A.  I think we do, yes.

24     Q.  But you wouldn't know which --

25     A.  No, I don't keep -- I don't do that.

# EXHIBIT D

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA


CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE, a
non-profit corporation,

        Plaintiff,       Case No. 2:CV-01207-GEB-AC

    vs.

CHICO SCRAP METAL, INC.,
a California corporation,
GEORGE SCOTT, SR. REVOCABLE
INTER VIVOS TRUST, GEORGE
SCOTT, SR., an individual,
and GEORGE SCOTT, JR., an
individual,

        Defendants.

_____


DEPOSITION OF KIM SCOTT

Sacramento, California

Wednesday, February 26, 2014


Reported by:
ELIZABETH A. WILLIS-LEWIS, CSR, RPR
CSR No. 12155

Job No. 14317


Carol Nygard and Associates        (916) 928-8999

[1]

Case 2:10-cv-01207-TLN-DB   Document 155-1   Filed 10/01/14   Page 51 of 53

1    about three quarter.

2        Q.    Okay.  Are you a full-time employee?

3        A.    Yes.

4        Q.    Is Jihan Gray?

5        A.    Yes.

6        Q.    Do you know what the monthly payroll for CSM

7    is?

8        A.    I do not.

9        Q.    Who would know that?

10       A.    The secretary.

11           MS. CANNATA:  And Mr. Packard, I think I have

12   made clear -- and this is going to be the subject of

13   probably our litigating -- that while I have no

14   objection to you asking about sort of the corporate

15   structure, we are going to seek to exclude and prevent

16   you from inquiring into the financial aspect.  This is

17   not a debtor's exam where we have a judge here.  The

18   issue here is whether they violated the Clean Water

19   Act.  And should you find that, that would be a separate

20   issue.  You can enforce your judgment.

21           MR. PACKARD:  And is it your position that any

22   Discovery relating to remedies is premature in this

23   phase?

24           MS. CANNATA:  Remedies are not the issue.  You

25   are asking about the financial wherewithal of the

d78103d0-5dfe-40e9-96fe-d720c3f78aaf

1    company.  You haven't proposed a remedy that they have

2    declined to perform on, nor has a remedy been imposed.

3    I think that we should not have a legal debate on the

4    record.  I am going to tell you what is going on today

5    and we can meet and confer if you wish.  I think that

6    should be in writing because I think it is a complicated

7    issue and you can make a proffer as to why you think it

8    is relevant.

9          MR. PACKARD:  I will just state for the record

10   that it is our position that this matter has not been

11   bifurcated and that Discovery relating to remedies

12   including civil penalties is relevant at this phase.

13         MS. CANNATA:  I understand your position.  You

14   have stated it before and you know mine so let's move

15   on.

16         MR. PACKARD:  Okay.

17      BY MR. PACKARD:

18      Q.  Do you know what the company pays for the

19   specific metals that it purchases from people coming in

20   to drop it off?

21         MS. CANNATA:  I am going to ask if counsel

22   would tell me the relevancy of that because that is

23   potentially proprietary information and I don't think it

24   has any relevancy to this case.  Again, if you are

25   inquiring into the financial wherewithal I have

1    indicated that you should move on or we are wasting

2    time.

3            MR. PACKARD:  Okay.  I have no intention to

4    waste any time today, but I appreciate you summarizing

5    your objection again.

6        BY MR. PACKARD:

7        Q.   I have a few questions about the Trust.  The

8    Trust does -- it owns the land that the facility sits

9    on; is that correct?

10       A.   I don't know.

11       Q.   Okay.  Do you know who owns it?

12       A.   Who owns the land?

13       Q.   Who owns the land on which the facility sits?

14       A.   I believe George Scott, my father.

15       Q.   Okay.  Do you know who the trustees of the

16   corporation are?

17       A.   I am not sure.

18           MS. CANNATA:  Trustees of the corporation?  I

19   think you mean --

20       BY MR. PACKARD:

21       Q.   Trustees of the Trust.  Sorry.

22       A.   I do not.

23       Q.   Do you know who would?

24       A.   I suppose my dad, George Scott, would know,

25   Senior.

d78103d0-5dfe-40e9-96fe-d720c3f78aaf