1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10

11   CALIFORNIA SPORTFISHING
     PROTECTION ALLIANCE,                          No.  2:10-cv-1207-GEB-AC

12                Plaintiff,

13         v.

14   CHICO SCRAP METAL, INC., ET AL.,              ORDER

15                Defendants.

16

17         On October 8, 2014, the court heard oral argument on plaintiff's motion to compel.

18   Megan E. Truxillo appeared for plaintiff and Kimberly A. Almazan and Therese Y. Cannata

19   appeared for defendants.  After carefully considering the parties' papers and arguments,

20   plaintiff's motion to compel is GRANTED.

21   **I.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

22         Defendants own and operate three scrap metal recycling facilities in Butte County,

23   California.  The facilities receive scrap metal, salvage vehicles, and process other waste for

24   recycling and disposal.

25         Defendants' facilities are subject to the requirements and conditions contained in

26   California's Industrial Activities Storm Water General Permit ("the Permit"), a National Pollutant

27   Discharge Elimination System ("NPDES") general permit issued by the California State Water

28   Resources Control Board ("the Board") pursuant to its authority under the Porter–Cologne Water

                                                    1

1   Quality Control Act, Cal. Water Code §§ 13370–13389.2.  A violation of the Permit is a violation

2   of the Clean Water Act, 33 U.S.C. § 1365(a)(1), because the Act prohibits the discharge of any

3   pollutant into the waters of the United States, except in compliance with an applicable NPDES

4   permit.  33 U.S.C. §§ 1311(a), 1342(a)(1), (b) & (p).

5          In January 2010, the Federal Environmental Protection Agency ("EPA") inspected

6   defendants' three facilities and found that the sites' storm water management systems failed to

7   comply with the Permit.  In March, plaintiff sent defendants, as well as state and federal agencies,

8   notice of its intent to sue defendants under the Act for violations of the Permit.  The notices

9   alleged ongoing violations of the storm water permit at defendants' three facilities.  Neither state

10  nor federal officials commenced any enforcement proceedings under the Act after receiving the

11  notices.

12         In May 2010, plaintiff filed this action.  In June 2010, the California Water Quality

13  Control Board issued notices to defendants that they were in violation of the Permit, citing the

14  January 2010 inspections.  The notices requested that defendants submit a report describing how

15  the violations were being addressed.

16         Defendants then moved to dismiss this federal action, arguing that plaintiff's claims were

17  barred by one of the Act's "diligent prosecution" bars, 33 U.S.C. § 1319(g)(6)(A)(ii).  The district

18  court ordered supplemental briefing on whether a different "diligent prosecution" bar, §

19  1365(b)(1)(B), also applied.  The court ultimately ruled that § 1365(b)(1)(B) barred plaintiff's

20  citizen suit without reaching the potential application of § 1319(g)(6)(A)(ii), and accordingly

21  dismissed the action.  Plaintiff timely appealed.  The Ninth Circuit held that neither provision of

22  the CWA barred plaintiff's suit.  The decision of the district judge was therefore reversed and this

23  action remanded for further proceedings.

24         Following remand, plaintiff filed the operative third amended complaint, alleging

25  violations of the Clean Water Act, 33 U.S.C. §§ 1311 & 1342.  Specifically, the complaint alleges

26  violations of provisions of the Permit that (1) prohibit discharging polluted storm water, (2)

27  require preparation of a "Storm Water Pollution Prevention Plan," (3) require the use of certain

28  pollution control technologies for storm water discharges, (4) require implementation of a storm

2

1   water monitoring and reporting program, and (5) require reporting any noncompliance with the

2   Permit.  ECF No. 97.  Plaintiff also claims that defendants have violated the California Health &

3   Safety Code § 25249.5, *et seq.* by discharging Proposition 65-listed chemicals from its facility.

4   Id.  Plaintiff is now moving solely against one of defendants' three facilities, Chico Scrap Metal's

5   Oroville location ("CSM-NorCal").  Plaintiff seeks declaratory and injunctive relief.[1]

6                                             DISCOVERY DISPUTE

7          On October 11, 2010, plaintiff issued its first set of requests for production to all

8   defendants, to which they responded in part on November 15, 2010.  ECF No. 155 at 5.  The

9   following request for production and opposition are at issue here:

10                  **Plaintiff's Request for Production No. 31**:

11                  Any and all DOCUMENTS setting forth YOUR assets, liabilities
                     and net worth at all times since March 17, 2005.
12
                     **Defendants' Response to Request No. 31**:
13
                     Defendants incorporate by reference in to this specific response,
14                   each of the general objections listed above. Defendants further
                     object that this request seeks documents subject to the privacy
15                   protections afforded under federal and California law. Defendants
                     further object that the request for documents pertaining to
16                   defendants' "assets, liabilities and net worth at all times since March
                     17. 2005" is not reasonably calculated to lead to the discovery of
17                   admissible evidence. Defendants will not produce documents in
                     response to this request.
18

19   Id. at 5–6.[2]

20          On December 13, 2013, plaintiff deposed Mr. George Scott Sr.  ECF No. 155-1 at 45–48.

21   During plaintiff's deposition it asked questions regarding Mr. Scott Sr.'s finances, but counsel for

22   Mr. Scott objected and instructed him not to answer.  Id.  On February 7 & 12, 2014, defendants

23   corresponded with plaintiff regarding its discovery requests.  Id. at 3–6.[3]  On February 12, 2014,

24   plaintiff wrote defendants regarding defendants' objections to plaintiff's request for financial

25

26   [1] Unless otherwise stated the preceding facts were taken from the court's February 18, 2014, order.  ECF No. 128 at 1–5.

27   [2] Neither party has supplied plaintiff's first set of requests for production or defendants' actual responses, however they are quoted in plaintiff's joint statement.

28   [3] The parties have not submitted this correspondence to the court, it is merely referenced in other correspondence.

1    information.  Id. at 3–6.  On February 26, 2014, plaintiff deposed Ms. Kim Scott as the person

2    most knowledgeable for defendant Chico Scrap Metal, Inc. ("Chico Scrap Metal").  Id. at 50–53.

3    Plaintiff asked several questions regarding Chico Scrap Metal's finances, which counsel objected

4    to and then instructed Ms. Scott not to respond to.  Id.  On March 4, 2014, defendants wrote a

5    letter to plaintiff regarding their upcoming meet and confer appointment that set out their

6    opposition to plaintiff's discovery requests.  Id. at 26–30.  Plaintiff responded with their own

7    letter outlining their position on March 6, 2014.  Id. at 7–8.

8         On June 27, 2014, plaintiff issued its third set of requests for production to all defendants.

9    ECF No. 156, Ex. B.  The requests for production at issue include the following:

10        **REQUEST FOR PRODUCTION NO. 43**:

11        Any and all DOCUMENTS setting forth YOUR assets, liabilities
          and net worth at all times since March 17, 2005.
12

          **REQUEST FOR PRODUCTION NO. 44**:
13

14        Any and all DOCUMENTS that REFER, RELATE OR PERTAIN
          to YOUR income from March 17, 2005 to the present, including
          but not limited to all statements of gross annual income and annual
15        net income.

16        **REQUEST FOR PRODUCTION NO. 45**:

17        All DOCUMENTS compromising YOUR federal income tax
          returns for all years from 2005 to the present.
18

          **REQUEST FOR PRODUCTION NO. 46**:
19

20        All DOCUMENTS that comprise YOUR IRS form 1099s
          submitted to the IRS for all years from 2005 to the present.

21   Id.  On July 17, 2014, plaintiff wrote defendants and asked them to respond to plaintiff's requests

22   for production by August 1, 2014.  ECF No. 155-1 at 17.  Plaintiff's letter noted that in light of

23   the court's recent order denying defendants' motion to bifurcate these proceedings it anticipated

24   that defendants would supply the financial documentation requested shortly.  Id. at 17.

25        The parties discussed their discovery disputes again on July 24, 2014, at which time

26   plaintiff repeated its request that defendants supply their financial documents.  Id. at 18–19.

27   Plaintiff documented this meet and confer in a letter to defendants on the same day.  Id. at 18–20.

28   On July 31, 2014, defendants responded to Requests for Production Nos. 43, 44, 45, and 46 with

                                                    4

1    the following objection:

2                    **Defendants' Response to Request Nos. 43, 44, 45, 46**:

3               Defendants incorporate by reference in to this specific response
          each of the general objections listed above. Defendants further
4         object to this request on the grounds that discovery of financial
          information in Clean Water Act cases is not permitted until after
5         liability has been established. <u>See, e.g.</u>, <u>U.S. v. Smithfield Foods,
          Inc.</u>, 972 F. Supp. 338 (1997); <u>U.S. v. Mun. Auth. Of Union
6         Township</u>, 929 F. Supp. 800 (1996). Defendants further object to
          this request because financial information is not relevant to a
7         determination of whether or not defendants have violated the Clean
          Water Act.

8

9    <u>Id.</u> at 6.[4]  On August 6, 2014, plaintiff wrote defendants in an attempt to meet and confer

10   regarding defendants' objections to plaintiff's request for financial information. <u>Id.</u> at 21–23.  On

11   August 18, 2014, defendants again wrote plaintiff regarding their objections to plaintiff's request

12   for financial information. <u>Id.</u> at 24–25.  On October 1, 2014, defendants served supplemental

13   responses upon plaintiff.  ECF No. 156, Ex. A.

14   **II.      LEGAL STANDARDS**

15         **A.      Discovery**

16         Under Federal Rule of Civil Procedure 26(b), "[U]nless otherwise limited by court order,

17   the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged

18   matter that is relevant to any party's claim or defense—including the existence, description,

19   nature, custody, condition, and location of any documents or other tangible things and the identity

20   and location of persons who know of any discoverable matter.[5]  For good cause, the court may

21   order discovery of any matter relevant to the subject matter involved in the action.  Relevant

22   information need not be admissible at the trial if the discovery appears reasonably calculated to

23   lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

24         Under Rule 34(a), "any party may serve on any other party a request to produce and

25   permit the party making the request . . . to inspect and copy any designated documents . . . which

26   _____

27   [4] Neither party has supplied defendants' actual responses to plaintiff's third set of requests for
     production, however they are quoted in plaintiff's joint statement.
     [5] "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it
28   would be without the evidence; and (2) the fact is of consequence in determining the action." Fed.
     R. Evid. 401.

1    are in the possession, custody or control of the party upon whom the request is served." Fed. R.

2    Civ. P. 34(a)(1).  "[A] party need not have actual possession of documents to be deemed in

3    control of them."  Clark v. Vega Wholesale Inc., 181 F.R.D. 470, 472 (D. Nev. 1998) (quoting

4    Estate of Young v. Holmes, 134 F.R.D. 291, 294 (D. Nev. 1991).  "A party that has a legal right

5    to obtain certain documents is deemed to have control of the documents."  Clark, 81 F.R.D. at

6    472.  Under Rule 34(b), the party to whom the request is directed must respond in writing that

7    inspection and related activities will be permitted as requested, or state an objection to the

8    request, including the reasons.  Fed. R. Civ. P. 34(b)(2).  Also, "[a] party must produce

9    documents as they are kept in the usual course of business or must organize and label them to

10    correspond to the categories in the request."  Fed. R. Civ. P. 34(b)(E)(i).

11        When an entity is served with a notice of deposition that sufficiently describes the matters

12    to be discussed the entity is under a duty to produce "one or more officers, directors, or managing

13    agents, or designate other persons who consent to testify on its behalf."  Fed. R. Civ. P. 30(b).

14    The person designated by the entity must be able to testify fully as to the matters to be discussed.

15    Bon Air Hotel, Inc. v. Time, Inc., 376 F. 2d. 118, 121 (5th Cir. 1967).  As with discovery

16    generally, the subject of depositions can range from "any nonprivileged matter that is relevant to

17    any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Accordingly, the scope of questioning at

18    depositions is very broad.  Mellon v. Cooper–Jarrett, Inc., 424 F. 2d. 499, 500–01 (6th Cir. 1970).

19        **B.    Motion to Compel**

20        Pursuant to Rule 37(a), a party propounding discovery or taking a deposition may seek an

21    order compelling responses when an opposing party has failed to respond or has provided evasive

22    or incomplete responses.  Fed. R. Civ. P. 37(a)(3)(B).  "[A]n evasive or incomplete disclosure,

23    answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P.

24    37(a)(4).  "It is well established that a failure to object to discovery requests within the time

25    required constitutes a waiver of any objection."  Richmark Corp. v. Timber Falling Consultants,

26    959 F.2d 1468, 1473 (9th Cir. 1992) (citing Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir.

27    1981)).  "The party who resists discovery has the burden to show discovery should not be

28    allowed, and has the burden of clarifying, explaining, and supporting its objections."

1   <u>Blankenship v. Hearst Corp.</u>, 519 F.2d 418, 429 (9th Cir.1975).

2   **III.    DISCUSSION**

3           **A.    Waiver**

4           Plaintiff contends that the court should not consider defendants' amended objections to

5   plaintiff's third set of requests for production because they are untimely.  Generally, the party that

6   has been served with requests for production has 30 days to respond.  Fed. R. Civ. P. 34(b)(2)(A).

7   It is well established that when a party fails to respond completely to a request for production, any

8   potential objections to that request are waived.  <u>See</u> <u>Richmark Corp. v. Timber Falling</u>

9   <u>Consultants</u>, 959 F.2d 1468, 1473 (9th Cir. 1992).  It is also true that potential objections not

10  contained within a timely response are waived, meaning that new objections raised in an untimely

11  supplemental response will not be considered.  <u>See, e.g.</u>, <u>Safeco Ins. Co. of Am. v. Rawstrom</u>,

12  183 F.R.D. 668, 671 (C.D. Cal. 1998).  Plaintiff served its third set of requests for production

13  upon defendants on June 27, 2014.  ECF No. 156, Ex. B.  Defendants served their first response

14  on July 31, 2014, ECF No. 155-1 at 5–6, and their supplemental response on October 1, 2014, <u>id.</u>

15  at 6.[6]  Defendants' supplemental response was, therefore, untimely and will not be considered by

16  this court to the extent that it raises objections not raised in its original response.

17          Plaintiff argues further that defendants' attempt to incorporate its general objections by

18  reference fails because it does not specifically respond to each request for production

19  individually.  General, or boilerplate, objections that do not respond specifically to requests for

20  production are not proper.  <u>See, e.g.</u>, <u>U.S. ex rel. O'Connell v. Chapman Univ.</u>, 245 F.R.D. 646,

21  649 (C.D. Cal. 2007).  Accordingly, the court will not consider defendants' general objections to

22  plaintiff's requests for production.[7]

23          Plaintiff also requests that the court award appropriate sanctions based on defendants'

24  general objections.  An unjustifiable objection may be subject to sanctions.  Fed. R. Civ. P. 37(c).

25  However, the issuance of sanctions under Rule 37 is left to the discretion of the court.  <u>Yeti By</u>

26  ─────────────────────
    [6] Although defendants served their initial response more than 30 days after plaintiff served them
27  with its requests for production, plaintiff does not argue that it was untimely.
    [7] Perhaps just as importantly, neither party filed defendants' original responses to plaintiff's first
28  or third set of requests for production. Accordingly, the court has no way of knowing what
    defendants' general objections actually were.

                                                    7

1    Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).  Plaintiff claims that

2    defendants' "blanket objections" are meritless and worthy of sanctions, without actually attaching

3    or reproducing them for the court to consider.  ECF No. 155 at 21.  Accordingly, the court finds

4    that plaintiff has not established sanctions are appropriate.

5              **B.        Production of Financial Documents**

6                     **1.        Privacy Protections**

7              Defendants argue that discovery into their financial information violates their privacy

8    rights under federal and California law.  The right to privacy under California law "extends to

9    financial privacy in litigation, but . . . is subject to balancing the needs of the litigation with the

10   sensitivity of the information/ records sought."  Davis v. Leal, 43 F. Supp. 2d 1102, 1110 (E.D.

11   Cal. 1999) (quoting Valley Bank of Nevada v. Superior Court, 15 Cal. 3d 652, 657 (1975)).

12   Consequently, the right to privacy is not an "absolute bar to discovery," and "may be subject to

13   invasion" depending upon the circumstances.  E.E.O.C. v. California Psychiatric Transitions, 258

14   F.R.D. 391, 395 (E.D. Cal. 2009).  It is also important to note that a party's interest in the

15   confidentiality of financial information may be adequately addressed via a protected order.  See,

16   e.g., Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 284 (C.D. Cal. 1998).  Applying these

17   principles, the court will not insulate defendants from plaintiff's discovery requests on the basis

18   of California privacy protections because (1) the court finds that the litigation's needs outweigh

19   the sensitivity of the information, and (2) defendants' privacy rights can be adequately protected

20   with a protective order.

21                     **2.        Relevance**

22             Defendants also argue that information related to their financial records is not

23   discoverable because it is neither relevant nor reasonably calculated to lead to the discovery of

24   admissible evidence.  According to plaintiff, defendants' financial information is relevant because

25   under the Clean Water Act the penalty imposed for a violation depends upon both "the economic

26   benefit (if any) resulting from the violation" and "the economic impact of the penalty upon the

27   violator.  33 U.S.C. § 1319(d).  Defendants argue that their financial information is irrelevant

28   until the court finds that defendants have violated the Clean Water Act.

                                                    8

1    Defendant's financial condition is indisputably relevant to the issue of civil penalties

2  under the Clean Water Act.  See 33 U.S.C. § 1319(d); see also United States v. Smithfield Foods,

3  Inc., 972 F. Supp. 338 (E.D. Va. 1997); United States v. Municipal. Auth. Of Union Township,

4  929 F. Supp. 800 (M.D. M.D. Pa. 1996).  Defendant's relevancy objection is appropriate only as

5  to liability.  However, defendant's motion to bifurcate the case has been denied.  See ECF No.

6  146.  In the absence of bifurcated proceedings, the relevance of defendant's financial status to

7  penalties rather than liability does not provide a basis for resisting discovery.

8    Defendants also argue that plaintiff is seeking discovery of their financial information for

9  improper reasons, primarily by pointing to the alleged insufficiency of plaintiff's factual

10  allegations.  An argument that the opposing party has failed to allege facts sufficient to state a

11  claim is properly made in a motion to dismiss, not in opposition to discovery.  Furthermore,

12  plaintiff has alleged facts that, if true, would establish defendants' liability.  These facts include,

13  but are not limited to, the allegation that defendants have failed to institute a system of effective

14  pollution controls at their scrap-metal recycling and vehicle-crushing facility at 1833 Kusel Road

15  in Oroville, California.  ECF No. 97 ¶¶ 10, 48.  Accordingly, the court finds that defendants'

16  financial information is relevant to plaintiff's Clean Water Act claim because it relates to a factor

17  considered in determining what penalty to impose.

18    **3.    Clean Water Act**

19    In an argument closely related to their relevance objection, defendants argue that financial

20  information is not discoverable in Clean Water Act cases until there has been a finding of

21  liability.  In support of this assertion, defendants cite Smithfield Foods and Union Township,

22  supra, neither of which state such a rule.  Both cases involved bench trials on damages that were

23  held after liability was determined on summary judgment.  Neither opinion denies a motion to

24  compel disclosure of financial information, or addresses the availability of such discovery prior to

25  a liability determination.  See  Smithfield Foods, Inc., 972 F. Supp. 338; Union Township, 929 F.

26  Supp. 800.  Rather, both cases appear to have involved bifurcated proceedings.  Again,

27  defendants have sought to bifurcate the proceedings in this case and their motion has been denied.

28    Defendants point to a district court case involving punitive damages, in which compelled

9

1    production of financial documents was denied.  See Chenoweth v. Schaaf, 98 F.R.D. 587, 589

2    (W.D. Pa. 1983).[8]  The court in Chenoweth denied the plaintiff's motion to compel because the

3    plaintiff had yet to plead a prima facie case that would entitle him to an award of punitive

4    damages.  Id. at 590.  Arguing that claims involving punitive damages and violations of the Clean

5    Water Act are comparable, defendants contend that plaintiff is not entitled to the discovery of

6    financial information because it has yet to plead a prima facie case for violation of the Clean

7    Water Act.

8           The assessment of punitive damages and penalties under the Clean Water Act have

9    important similarities, like the consideration of the financial condition of the defendant.  Compare

10   City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 270 (1981) (noting that "evidence of a

11   tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages

12   that should be awarded"), with 33 U.S.C. 1319(d).  However, the court does not find defendants'

13   argument persuasive for two reasons.  First, the City of Newport position is a minority position,

14   as that court acknowledged.  The majority of courts allow the discovery of financial information

15   relevant to punitive damages even when the plaintiff has not plead a prima facie case.  E.E.O.C.

16   v. California Psychiatric Transitions, 258 F.R.D. 391, 394–95 (E.D. Cal. 2009).  Second, as noted

17   above, plaintiff has plead facts that, if true, would establish that defendants have violated the

18   Clean Water Act.

19          For these reasons, the court finds that the Clean Water Act does not require plaintiff to

20   establish liability before it is entitled to discover facts relevant to penalties, including financial

21   information.

22                    **4.        Defendant's Anticipated Renewal of Bifurcation Request**

23          As the undersigned noted at hearing on the motion to compel, what defendants really seek

24   is the equivalent of a stay of discovery related to their financial condition until liability has been

25   adjudicated.  This would be entirely appropriate if, but only if, the case is bifurcated.  Defense

26   _____

27   [8] Defendants also cite to two other cases to support their argument that plaintiff's motion to
     compel should be denied, but in these cases the plaintiff's motion to compel was actually granted.
     Roberts v. Shawnee Mission Ford, Inc., 01-2113-CM, 2002 WL 1162438 (D. Kan. Feb. 7, 2002);

28   Vivino v. Everlast Sporting Goods Mfg. Co., CIV.A. 87-1161, 1987 WL 17571 (E.D. Pa. Sept.
     28, 1987).

1  counsel indicated an intention to file a renewed motion to bifurcate before the district judge.  For

2  the reasons stated above, the motion to compel will be granted.  However, in light of defendants'

3  anticipated motion, the court will stay its order to permit the district court to reconsider

4  bifurcation and address overall case management before defendants must comply.

5        **C.**     **Costs**

6        Plaintiff requests that the court order defendants to pay its reasonable expenses in

7  obtaining this order, including attorney's fees.  In accordance with Federal Rule of Civil

8  Procedure 37(a)(5)(A), the court must direct the party necessitating the motion to compel to pay

9  the moving party's expenses unless failure to respond was "substantially justified" or other

10  circumstances would make an award "unjust."  Further, "[t]he test for substantial justification is

11  one of reasonableness."  United States v. First Nat. Bank of Circle, 732 F.2d 1444, 1447 (9th Cir.

12  1984).  Even though the court finds that plaintiff is entitled to the discovery of defendants'

13  financial information, it also finds that defendants' position was substantially justified.  Plaintiff's

14  deposition questions and requests for production seek a considerable amount of financial

15  information that is subject to privacy protections under California law.  Accordingly, the court

16  finds that defendants reasonably believed that they were justified in opposing discovery and

17  denies plaintiff's request for costs.

18  **IV.**    **CONCLUSION**

19       In accordance with the above, IT IS HEREBY ORDERED that:

20       1.     Plaintiff's motion to compel (ECF No. 153) is GRANTED;

21       2.     Defendants shall produce responsive documents within 30 days;

22       3.     Defendants shall produce the person most knowledgeable and Mr. George Scott

23  Sr. for deposition at a time and location that is convenient to the parties within 30 days; and

24       2.     This order is stayed to permit defendants to file an amended motion to bifurcate

25  and/or a motion for reconsideration of the instant order.  If no such motion is filed within 7 days

26  of the date of this order, the stay will expire without further order of the court.  If such a motion is

27  ////

28  ////

1   filed, the stay will expire 7 days after the district judge rules on the motion(s), unless this order is

2   vacated in the district judge's ruling.

3          IT IS SO ORDERED

4   DATED: October 9, 2014

5                                                  _____
                                                   ALLISON CLAIRE
6                                                  UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28