ANDREW L. PACKARD (State Bar No. 168690)
MEGAN E. TRUXILLO (State Bar No. 275746)
Law Offices of Andrew L. Packard
100 Petaluma Blvd. N., Suite 301
Petaluma, CA 94952
Tel:  (707) 763-7227
Fax: (707) 763-9227
E-mail:  Andrew@PackardLawOffices.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation, <br><br> Plaintiff, <br><br> v. <br><br> CHICO SCRAP METAL, INC., a California corporation, GEORGE SCOTT, SR. REVOCABLE INTER VIVOS TRUST and GEORGE SCOTT, SR., an individual, <br><br> Defendants. | Case No. 2:10-CV-01207-GEB-AC <br><br> **DECLARATION OF ANDREW L. PACKARD IN SUPPORT OF PLAINTIFF'S MOTION FOR INTERIM ATTORNEYS' FEES AND COSTS** <br><br> **[33 U.S.C. §1365(d)]** <br><br> Hearing Date:  October 19, 2015 <br> Time: 9:00 a.m. <br> Courtroom:  10, 13th Floor <br> Judge:  Honorable Garland E. Burrell, Jr. |

I, Andrew L. Packard, hereby declare as follows:

1.     My firm has served as Plaintiff California Sportfishing Protection Alliance's ("CSPA") lead counsel in this case from its inception.  I make this declaration in support of CSPA's Motion for Interim Attorneys' Fees and Costs based on my personal knowledge, and I am competent to testify to the matters set forth herein.  The matters stated in this declaration are true based on my own personal knowledge,

Declaration of Andrew L. Packard
In Support Of Plaintiff's Motion
For Interim Fees And Costs

1

Case No: 2:10-CV-01207-GEB-AC

except as to matters stated to be based on information and belief, which matters I am informed and believe to be true.

2.      I am the sole owner of the Law Offices of Andrew L. Packard.  My firm employs associates and contracts with attorneys working in the San Francisco Bay Area.  Since 1997, my law firm has almost exclusively represented non-profit environmental organizations and individuals that seek to enforce environmental, consumer protection and "right-to-know" laws in the furtherance of the public interest.

3.      To date, the firm has represented over twenty local, regional and statewide non-profit organizations in over 125 public interest lawsuits to improve water quality, save aquatic habitat or protect the public from exposure to known carcinogens and reproductive toxins.  Most of the firm's current work involves citizen suit enforcement under the federal Clean Water Act and California's Safe Drinking Water & Toxic Enforcement Act of 1986 (referred to herein as "Proposition 65").

4.      CSPA was also represented in this matter by my co-counsel, Lozeau Drury LLP in Oakland, and Jackson & Tuerck in Quincy, California.  As CSPA's lead counsel in this case, my firm was responsible for the management of all aspects of the case, including delegating assignments to my associates and paralegals, and coordinating this work with that of co-counsel.  Michael Lozeau served in an advisory capacity and Robert Tuerck supported the litigation as local counsel.[1]

5.      This motion seeks recovery for reasonable time spent on this case, from its inception to the present, with substantial deductions applied to the lodestar on the merits, in the interests of sound billing judgment as described more fully below.

6.      Set forth immediately below is a review of the qualifications and rates applied to each of the billing attorneys in the firm, followed by a chronological review of the proceedings herein, and the hours for which reimbursement is sought in each phase of the case.  Also included is an explanation of how the market billing rates have been determined for each billing attorney, the calculation of the lodestar on the merits and each of the deductions applied.  Lastly, this declaration covers expert costs, litigation expenses, and additional facts supporting an award of interim fees at this juncture in the case.

---

[1] This declaration covers my firm's fees and costs; the accompanying declarations of Michael Lozeau and Robert Tuerck cover the fees of Lozeau Drury LLP and Jackson & Tuerck, respectively.

Declaration of Andrew L. Packard
In Support Of Plaintiff's Motion
For Interim Fees And Costs

2

Case No: 2:10-CV-01207-GEB-AC

**Qualifications and Rates Applied to All Billing Attorneys in this Case**

**Attorney Andrew Packard**

7.      I have practiced law in California for 21 years, managing my own law practice for the last 18 years.  I received a Bachelor of Arts degree in History from Duke University in 1986, and worked in two San Francisco law firms before earning my law degree at the Boston University School of Law in 1993.

8.      During law school, I clerked at environmental law firms in Juneau, Alaska and Boston, Massachusetts.  In my first three years of practice, I was an associate at a small San Francisco public interest environmental law firm.  In my second and third years at the firm, I was charged with the management of junior associates, as the firm expanded from three attorneys to ten.

9.      I have managed my own public interest consumer and environmental law firm in the San Francisco Bay Area since 1997.  Although specializing in the prosecution of actions under the Clean Water Act for the last 16 years, the firm's additional practice areas include citizen suit enforcement under California's Proposition 65, the California Business & Professions Code, the California Public Records Act, the federal Freedom of Information Act, and claims under California's Strategic Lawsuits Against Public Participation ("SLAPP") statute.

10.     I have participated in Proposition 65 enforcement actions against the manufacturers of consumer spray paints, adhesives and cosmetics, consumer and industrial pressroom chemicals, industrial chemical distributors, aerospace maintenance products, consumer and occupational nail enamel products, modular classroom structures, leaded brass plumbing products, dietary supplements and other food products.

11.     The firm has represented eight of the California chapters of the Waterkeeper Alliance in connection with their enforcement of the Clean Water Act, and currently represents the California Sportfishing Protection Alliance in connection with its statewide enforcement of both the Clean Water Act and Proposition 65 Discharge to Drinking Water claims.

12.     Outside my work at the firm, I have served on the Board of Directors of the Russian Riverkeeper for six years, and am the founding President and founding Chairman of the Board of Directors of the Friends of the Petaluma River.

Declaration of Andrew L. Packard
In Support Of Plaintiff's Motion
For Interim Fees And Costs                                    Case No: 2:10-CV-01207-GEB-AC

3

13. Although I was recently awarded a market rate of $635/hour in a fee award in the Sacramento Superior Court (discussed more fully below), as well as an enhancement multiplier of 1.5, I have applied a rate of $595/hour to my time in this case. Attached hereto as **Exhibit A** is a spreadsheet entitled "CSPA v Chico Scrap Metal, Inc: Summary of CSPA Fees and Costs through September 21, 2015" detailing the application of this rate to my hours billed to the case.

**Attorney Erik Roper**

14. Mr. Roper has practiced law in California for 6 years. He graduated from the University of California, Berkeley, School of Law (Boalt Hall) in 2008, where he earned a Certificate of Specialization in Environmental Law and was the recipient of the Barry S. Sandals Fellowship and the Michael H. Remy Scholarship, as well Chair of the Environmental Justice Symposium of the Environmental Law Society. In addition, Mr. Roper served as the Fundraising Coordinator for the *Ecology Law Quarterly*, and was a member of the Steering Committee for the California Water Law Symposium.

15. During law school, Mr. Roper participated in the Honors Lawyering Program of the Golden Gate School of Law and clerked in the Environmental Law Section of the Attorney General's Offices of the California Department of Justice.

16. Following law school, Mr. Roper was the Legal Research Attorney for the Honorable Peter J. Busch in the Law & Motion Department of the San Francisco Superior Court before joining my firm.

17. Although he was recently awarded a market rate of $375/hour in a fee award in the Sacramento Superior Court (discussed more fully below), as well as an enhancement multiplier of 1.5, I have applied a rate of $350/hour to his time in this case. See **Exhibit A** detailing the application of this rate to his hours billed to the case.

**Attorney Emily Brand**

18. Ms. Brand has practiced law for 5 years. She earned a Bachelor of Science in Environmental Studies for Tufts University in 2002 and graduated from the University of California Davis, School of Law in 2009, where she was editor-in-chief of the *Environmental Law & Policy Journal* and President of the Environmental Law Society. During law school, Ms. Brand earned an Environmental Law

Declaration of Andrew L. Packard
In Support Of Plaintiff's Motion
For Interim Fees And Costs

4

Case No: 2:10-CV-01207-GEB-AC

Certificate and won the Witkin Award for academic excellence.  In addition, Ms. Brand earned merit-based scholarships from Downey Brand LLP, the Environmental Law Section of the State Bar of California, and the ALI-ABA Environmental Law Course Scholarship.

19.    Prior to joining my firm, Ms. Brand worked at the Center for Biological Diversity, the California Council of Land Trusts, and the California Coastal Commission, as well the California District Attorneys Association and Rossmann & Moore LLP, a leading environmental law firm in San Francisco. To date, she has authored or co-authored three published articles regarding environmental law.

20.    I have applied a rate of $333/hour to Ms. Brand's time in this case, in accordance with the adjusted Laffey Matrix discussed more fully below.  See **Exhibit A** detailing the application of this rate to her hours billed to the case.

**Attorney Laurie Mikkelsen**

21.    Ms. Mikkelsen has practiced law in California for 6 years.  After graduating *magna cum laude* from the University of California Hastings College of the Law in 2008, where she co-chaired the California Water Law Symposium, was an Articles Editor for the West-Northwest Journal of Environmental Law & Policy and a Michael H. Remy scholarship recipient.  In addition, Ms. Mikkelsen received academic awards in Legal Writing and Analysis, Moot Court and Takings.

22.    During law school she interned at the Sunnyvale City Attorney's Office, the Stanford Environmental Law Clinic, and the San Francisco City Attorney's Land Use and Environmental Defense Division, and provided research assistance to Professor John Leshy at Hastings College of the Law. Following law school, Ms. Mikkelsen was an associate in Downey Brand's Water Law Practice Group, and at Rossmann and Moore, LLP before joining my firm.  To date, she has authored or co-authored five articles published in the *California Water Law and Policy Reporter.*

23.    Although Ms. Mikkelsen was recently awarded a market rate of $385/hour in a fee award in the Sacramento Superior Court (discussed more fully below), as well as an enhancement multiplier of 1.5, I have applied a rate of $350/hour to her time in this case.  See **Exhibit A** detailing the application of this rate to her hours billed to the case.

Declaration of Andrew L. Packard
In Support Of Plaintiff's Motion
For Interim Fees And Costs

5

Case No: 2:10-CV-01207-GEB-AC

**Attorney Megan Truxillo**

24.    Ms. Truxillo has practiced law in California for 4 years.  She graduated *magna cum laude* from Lewis & Clark Law School, where she earned a Certificate in Environmental and Natural Resources Law and was the recipient of the Association of Administrative Law Judge's Belle Cummins Memorial Scholarship and Lewis and Clark Law School's Natural Resources Scholarship.

25.    During law school, Ms. Truxillo clerked at the Center for Biological Diversity and the Chenoweth Law Group, LLC.  Following law school, Ms. Truxillo earned a Diploma in International and European Union Law, served as a research clerk at the European Moot Court and was a litigation associate at Kornblum, Cochran, Erickson & Harbison, LLP for several years before joining my firm.

26.    She was recently awarded a market rate of $295/hour in a fee award in the Sacramento Superior Court (discussed more fully below), as well as an enhancement multiplier of 1.5.  I have applied a rate of $333/hour to her time in this case, in accordance with the adjusted Laffey Matrix discussed more fully below.  See **Exhibit A** detailing the application of this rate to his hours billed to the case.

**Attorney John Prager**

27.    Mr. Prager is a graduate of the University of California Hastings College of the Law, and has practiced law in California for 2 years.  Prior to joining the firm, Mr. Prager clerked at Lawyers for Clean Water, a leading San Francisco law firm specializing in public interest litigation co-founded by Daniel Cooper.  See, Declaration of Daniel Cooper in Support of Plaintiff's Motion for Interim Attorneys' Fees and Costs, filed herewith.

28.    I have applied a rate of $283/hour to his time in this case, in accordance with the adjusted Laffey Matrix discussed more fully below.  See **Exhibit A** detailing the application of this rate to his hours billed to the case.

### Review of Proceedings herein: A Summary Five and Half Years of Litigation

29.    The first phase of the case ("Phase 1") was from January, 2010 – December, 2010.  During this time, CSPA began investigating Defendants' facility located at 1855 Kusel Road in Oroville, California (the "Facility"), as part of its ongoing enforcement program in the Sacramento-San Joaquin Delta

Declaration of Andrew L. Packard
In Support Of Plaintiff's Motion
For Interim Fees And Costs

6

Case No: 2:10-CV-01207-GEB-AC

watershed (the "Delta").  The investigation revealed numerous violations of the Clean Water Act and the General Permit, resulting in the unlawful discharge of toxic and conventional pollutants to the Wyman Ravine, the Honcut Creek, the Feather River and ultimately the Sacramento River and the Delta.  CSPA proceeded to issue 60-day notices under the Clean Water (on March 17, 2010 against three facilities owned and operated by Defendants, and on October 11, 2010, adding the George Scott, Sr. Revocable Inter Vivos Trust) and Proposition 65 (August 2, 2010).  When settlement efforts proved unavailing, CSPA filed the complaint (May 17, 2010), amending it twice to include Proposition 65 claims and to add the Trust as a Defendant.

30.     Defense counsel's conduct with respect to the first amended complaint typifies the kind of intransigence CSPA has faced throughout this litigation.  First, Ms. Cannata flatly refused to stipulate to leave to amend, stating that "given the Court's requirement of leave to amend, CSM's position on the matter was not required" and that Defendants were still "evaluating the claims" set forth in CSPA's notice of violation.  Declaration of Therese Y. Cannata In Support of Defendants' Non-Opposition to Plaintiff's Motion for Leave to File First Amended Complaint, ¶5 [Docket #13-1].  CSPA then moved for leave to amend and Ms. Cannata proceeded to file a statement of non-opposition acknowledging "that Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires'", quoting *Bowles v Reade,* 198 F.3d 752, 759 (9th Cir.1999), and yet still arguing against the *merits* of CSPA's claims.  Docket #13.  In my professional view, this conduct reflects a limited understanding of notice and pleading requirements, as well as the purposes of Rule 15 of the Federal Rules of Civil Procedure.

31.     CSPA also propounded its initial written discovery in Phase 1, including a noticed facility inspection to document the inadequacy of Defendants' storm water management practices.  Defendants refused to allow any inspection, and filed a motion for a protective order (grounded solely on arguments going to the *merits* of the claims, not to CSPA's discovery rights) and a request for a stay of the case to allow Defendants to file a motion to dismiss that could and should have been filed six months earlier, in response to the complaint.  Defense counsel's inappropriate insistence on raising *jurisdictional and merits-based* arguments in the discovery context is exemplified by the parties' astounding 55-page Joint

Declaration of Andrew L. Packard
In Support Of Plaintiff's Motion
For Interim Fees And Costs

7

Case No: 2:10-CV-01207-GEB-AC

Statement concerning CSPA's motion to compel site inspections, filed on December 9, 2010.  See Docket #28.

32.    In Phase 1, I billed 64.7 hours to this case and my associate, Erik Roper, billed 64.6 hours. These hours have been reduced as follows: (a) 67% of these hours have been deducted to account for the fact that the case involved three separate facilities owned and operated by Defendants during this phase (the case was later streamlined to focus on the Kusel Road facility currently the subject of this action); and, (b) an additional 10% of this time was deducted in the interests of sound billing judgment.  These hours, together with these reductions applied, are set forth on **Exhibit A**, hereto.

33.    The second phase of the case ("Phase 2") was from December, 2010 – August, 2013.  During this time, CSPA's counsel briefed and argued its Motion to Compel Site Inspections (ultimately successful), and its oppositions to Defendants' Motion for Temporary Stay, Motion for Protective Order and Motion to Dismiss.  In this phase, the Court dismissed the action for lack of subject matter jurisdiction following decision on an issue raised *sua sponte* after a hearing on other issues raised in Defendants' then pending dismissal motion; specifically, whether CSPA's Clean Water Act claims were barred by the "diligent prosecution" standard set forth in 33 U.S.C. § 1365(b)(1)(B).  The Court provided the parties an opportunity to brief the applicability of 33 U.S.C. § 1365(b)(1)(B) to CSPA's claims, and after consideration of the supplemental briefs and an eleventh-hour letter brief filed by defense counsel after the matter was submitted representing to the Court that "the State and regulators are diligently prosecuting claims in the state action (by seeking to revoke defendants' probation) which are the subject matter of the complaint in this case", the Court determined the statute barred CSPA's claims.  Docket No. 59.

34.    On appeal, the Ninth Circuit panel closely reviewed "the records from those proceedings: the pleadings, the parties' briefing, the plea agreement, and the probation order and judgment" concluding "[t]hose documents, all of which predated the filing of this action, show that California has never sought judicial enforcement of the Permit—or, for that matter, of any standard under the Clean Water Act…. None of those criminal offenses or civil causes of action relates to the Clean Water Act, and none of the government's allegations asserted that Defendants discharged or managed storm water in violation of

Declaration of Andrew L. Packard
In Support Of Plaintiff's Motion
For Interim Fees And Costs                                        Case No: 2:10-CV-01207-GEB-AC

8

the Permit." *Cal. Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc.*, 728 F.3d 868, 879-880 (9th Cir. Cal. 2013).

35.     The bulk of the work in Phase 2 was spent on research, briefing and arguing CSPA's successful appeal to the Ninth Circuit reversing the Court's dismissal of the action.

36.     After the dismissal, Defendants moved for an order awarding attorney fees under 28 U.S.C. § 1927 and/or the Court's inherent authority, based on the contention that "Plaintiff and Plaintiff's counsel pursued this Clean Water Act citizen enforcement action in bad faith and with the intent to harass Defendants." Docket No. 85 (Order Denying Defendants' Motion for Attorneys' Fees, ruling that Defendants had "not shown that the nature of Plaintiff's claims and/or arguments justify the sanction they seek").

37.     Phase 2 timekeepers include myself (195.9 hours), and my associates Erik Roper (245.9 hours), Emily Brand (137.2 hours) and Laurie Mikkelsen (22.3 hours).  These hours have been reduced as follows: (a) 10% of these hours have been deducted to account for the fact that the firm does not specialize in appellate work; and, (b) an additional 10% of this time was deducted in the interests of sound billing judgment.  These hours, together with these reductions applied, are set forth on **Exhibit A**, hereto.

38.     The third phase of the case ("Phase 3") was from August, 2013 – February, 2014.  During this time, the parties engaged in early fact discovery, including Public Records Act requests to the California Department of Toxic Substance Control ("DTSC") and Butte County District Attorney's Offices ("BCDA") to obtain storm water samples taken by their offices during the two-year period during which the case was stayed on appeal; Defendant's deposition of DTSC personnel in charge of overseeing Defendants' implementation of a 2008 Consent Order requiring Defendants to conduct a Remedial Investigation/Feasibility Study at the Facility (still not completed now, seven years later); Defendants' subpoenas of documents from DTSC and the BCDA, and CSPA's partly successful motion to quash these subpoenas; extended negotiations concerning the conduct of dry and wet inspections; a dry weather facility inspection in Oroville on January 30, 2014; the filing of the third amended complaint;

Declaration of Andrew L. Packard
In Support Of Plaintiff's Motion
For Interim Fees And Costs

9

Case No: 2:10-CV-01207-GEB-AC

extensive discovery letters and meet and confer calls regarding written discovery responses; the deposition of Defendant George Scott, Sr.; and the December 18, 2013 Status Conference.

39.    Phase 3 timekeepers include myself (218.5 hours) and my associate Laurie Mikkelsen (131.3 hours).  All of these hours have been reduced by 10% in the interests of sound billing judgment.  These hours, together with these reductions applied, are set forth on **Exhibit A**, hereto.

40.    The fourth phase of the case ("Phase 4") was from February, 2014 – October 2014.  During this time, the parties generally concluded fact discovery.  This included the depositions of Defendants' Persons Most Knowledgeable, Kim Scott (two days) and Facility Manager Jihan Gray; two wet weather inspections on; a second dry weather facility inspections on September 18, 2014; CSPA's successful motion to compel additional site inspections (Docket No. 144); CSPA's successful motion to compel the production of financial information (Docket No. 158); Defendant's two failed motions to bifurcate the action (Docket Nos. 146 and 163); negotiation for a stipulated stay of the action to allow for settlement discussions in the summer of 2014; and settlement discussions.

41.    Phase 4 timekeepers include myself (182.5 hours), and my associates Laurie Mikkelsen (48.1 hours) and Megan Truxillo (347.7 hours).  All of these hours have been reduced by 10% in the interests of sound billing judgment.  These hours, together with these reductions applied, are set forth on **Exhibit A**, hereto.

42.    The fifth phase of the case ("Phase 5") was from October 2014 – March 2015.  Phase 5 primarily involved expert discovery and Defendants' depositions of CSPA's three standing witnesses.  The work in this phase included the parties' designations of four experts; their expert reports, rebuttal expert reports, supplemental expert reports and depositions; and Defendants' additional depositions of three Regional Board staff members.

43.    Phase 5 timekeepers include myself (206.1 hours), and my associates Megan Truxillo (401.2 hours) and John Prager (36.8 hours).  All of these hours have been reduced by 10% in the interests of sound billing judgment.  These hours, together with these reductions applied, are set forth on **Exhibit A**, hereto.

Declaration of Andrew L. Packard
In Support Of Plaintiff's Motion
For Interim Fees And Costs

10

Case No: 2:10-CV-01207-GEB-AC

44.    The sixth and final phase on the merits ("Phase 6") was from March 2015 through the date of this filing.  During this time, the parties prepared extensive briefing on cross-motions for summary judgment, and efforts to complete discovery of Defendants' financial information which had been put over until after the ruling on the motions for summary judgment by agreement of the parties.

45.    Phase 6 timekeepers include myself (204.5 hours), and my associates Megan Truxillo (264.1) and John Prager (115.9).  All of these hours have been reduced by 10% in the interests of sound billing judgment.  These hours, together with these reductions applied, are set forth on **Exhibit A**, hereto.

46.    Time keepers on this fee motion include myself (37.7 hours) and my associate Megan Truxillo (43.9 hours).  These hours are set forth on **Exhibit A**, hereto.  See also **Exhibits B and F.**

47.    Consistent with my firm's normal business practices, all of the firm's billing attorneys recorded their hours contemporaneously on the day worked, in increments of one tenth of an hour.  I have attached these records as exhibits to this declaration as follows:

**Exhibit B**:    Time Records of Andrew L. Packard (merits, and fee motion)
**Exhibit C**:    Time Records of Erik Roper
**Exhibit D**:    Time Records of Emily Brand
**Exhibit E**:    Time Records of Laurie Mikkelsen
**Exhibit F**:    Time Records of Megan Truxillo (merits, and fee motion)
**Exhibit G**:    Time Records of John Prager
**Exhibit H**:    Expert Costs
**Exhibit I**:    Litigation Costs

48.    Without waiving any privileges, I have edited these records to delete any content that reflects privileged attorney-client communications or material protected by the attorney work product doctrine.

49.    Based upon my review of the time records and my knowledge of the prosecution of this case, all of the time sought herein was reasonably spent, and useful and necessary to the prosecution of this matter; all hours claimed would be billed to a fee-paying client.  For efficiency's sake, I delegated tasks to associates and paralegals whenever possible.

50.    I have carefully reviewed this office's time records and exercised billing judgment by eliminating hours that I considered inefficiently spent, duplicative, inconsistent with other attorneys' records, or otherwise in furtherance of billing judgment.  I have also deducted entire categories of work undertaken on this case, including the following:

Declaration of Andrew L. Packard
In Support Of Plaintiff's Motion
For Interim Fees And Costs

11

Case No: 2:10-CV-01207-GEB-AC

(a)      All paralegal work performed in this case (approximately 100 – 150 hours);

(b)      Law clerk work performed by a second year law student on an appellate issues memorandum in the summer of 2011 (62.6 hours); and,

(c)      Attorney work performed by third year lawyer Hallie Albert (7.5 hours).

## Calculation of Billing Rates and Costs

51.      I am familiar with the billing rates of attorneys in the San Francisco Bay Area with levels of experience comparable to my own and the other attorneys billing to this case.

52.      Over the past eighteen years, more than three quarters of my firm's work has been on cases in the San Francisco Bay Area legal market, representing San Francisco clients in litigation in San Francisco Superior Court or in the United States District Court's Northern District of California.  Those cases have consistently included fee awards or court-approved settlements at prevailing San Francisco Bay Area market rates.

53.      In my experience and opinion, my firm's rates are fully consistent with (and frequently less than) those of our peers with similar skill and experience with complex litigation at firms of varying sizes in the San Francisco Bay Area.  I base this belief on discussions with other San Francisco Bay Area attorneys, my review of attorneys' fee applications in other cases, the declarations filed in support of this fee motion, and my review of the rates charged by all four of the San Francisco Bay Area firms included in the *National Law Journal's 2014 Billing Survey*.  (An excerpted copy of the 2014 survey showing the four San Francisco Bay Area law firms included in the survey, compared with the lower rates sought herein, is attached here as **Exhibit J**).

54.      My firm's rates are also fully consistent with the adjusted Laffey Matrix normally used by the federal courts in assessing attorney fee rates in this type of motion.  Attached hereto as **Exhibit K** is a true and correct copy of the 2014-2015 Laffey Matrix obtained from the United States Department of Justice's website.  I reviewed the Laffey Matrix, which is designed to provide objective guidance in assessing appropriate hourly rates for attorneys of differing levels of experience in the Washington D.C. area.  The Laffey Matrix is based on the hourly rates approved by the District Court in *Laffey v.*

Declaration of Andrew L. Packard
In Support Of Plaintiff's Motion
For Interim Fees And Costs

12

Case No: 2:10-CV-01207-GEB-AC

*Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4 (D.C. Cir. 1984).  The Laffey Matrix is regularly prepared and updated by the Civil Division of the United States Attorney's Office for the District of Columbia and has been used by the courts in fee shifting cases, among others.  *See e.g., Martin v. FedEx Ground Package Sys.*, 2008 U.S. Dist. LEXIS 106524, *16-*18 (N.D. Cal. Dec. 31, 2008).

55.    The billing rates set forth in the Laffey Matrix are tailored for the District of Columbia, which has a different cost of living than San Francisco, California.  To account for this difference, the courts typically adjust the Laffey Matrix's rates using the federal locality pay differentials based on federally compiled cost of living data.  *See Martin*, 2008 U.S. Dist. LEXIS 106524, *16-*18; *see also In re HPL Techs., Inc.*, 366 F.Supp. 2d 912, 921 (N.D. Cal 2005) (adjusting locality pay differentials based on the geographical region in which lead counsel's firm operated).  To make this adjustment, I downloaded a copy of the United States Office of Personnel Management's locality pay index recommendations and attachments ("Locality Pay Adjustments") from the Chief Human Capital Officers Council's website.  A true and correct copy of the relevant excerpts of the Locality Pay Adjustments and attachments is attached hereto as **Exhibit K**.  The federal government sets federal salaries 24.22% higher in Washington, D.C. than federal base salary levels and sets such salaries 35.15% higher in San Francisco than the federal base salary levels.  *See* http://www.opm.gov/oca/11tables/indexGS.asp.  Accordingly, an upward adjustment of 10.93% to the Laffey rates reflects an appropriate adjustment for San Francisco's higher compensation rates.  Thus, adjusting the billing rates in the Laffey Matrix by a 10.93% increase yields approximate billing rates for the San Francisco area.

56.    My firm's practice has consistently focused on providing public interest environmental litigation services to organizations and individuals who would not otherwise be able to secure legal representation if required to pay full market rates.  To avoid conflicts of interest, and to ensure the firm's continued availability to work in the public interest, the firm does not accept any clients for whom the advancement of the public interest is not the exclusive purpose of the representation.  The firm's viability therefore depends upon the courts awarding fees in cases where the firm vindicates important

Declaration of Andrew L. Packard
In Support Of Plaintiff's Motion
For Interim Fees And Costs

13

public rights, and on those awards being based upon the rates charge for similar litigation skills and services in the same marketplace.

57.    As a long–time public interest litigator, I am very familiar with the unique challenges presented in public interest environmental litigation.  CSPA, like most citizen enforcement groups, is not capable of paying rates that reflect the reasonable hourly rates that would be paid for similar litigation services in the marketplace.  In addition, because public interest environmental cases like this one typically do not seek damages, but rather, equitable relief and civil penalties, these cases are generally not attractive to qualified counsel on a percentage-of-recovery, or other typical contingency fee arrangement. Absent the ability to recover fully compensatory, reasonable market rates in cases like this, my firm would not be able to accept this or any other public interest litigation.

58.    To determine a fee that reflects the actual legal marketplace, factors in addition to hours and rates, most importantly contingent risk, should be considered.  My firm represented CSPA in this matter on a wholly contingent basis, with full payment conditioned on CSPA prevailing and obtaining a fee award calculated at market rates as well as expenses.

59.    I am informed and believe that this litigation could not have been prosecuted without my firm's agreement to represent CSPA on a contingent basis.

*Expert Costs and Litigation Expenses*

60.    CSPA is also seeking recovery for expert costs in the amount of $116, 952.13, and litigation expenses normally billed to a client (such as filing fees, court reporters, deposition transcript, copies, postage, courier, travel) in the amount of $27,523.33.  CSPA's expert costs and litigation expenses are itemized in **Exhibits H** and **I**, respectively, and incorporated in the spreadsheet attached as **Exhibit A**.

61.    Mr. Lane is the owner of Chico Environmental and a certified geologist.  He was retained to provide expert testimony regarding the connectivity of facility discharges to "waters of the United States," within the meaning of the Clean Water Act.  Mr. Lane's expert costs of $25,853.13 were reasonable and necessary to CSPA's diligent prosecution of this action.

62.     Mr. Bond is a certified geologist and was retained to provide expert testimony regarding the adequacy of storm water management practices at Defendants' Facility, applicable regulatory standards and water quality issues.  Mr. Bond served as CSPA's primary storm water expert, attending site inspections, draft expert reports, reviewing Defendants' sampling results and expert reports, taking storm water samples and advising CSPA throughout the expert phase of the litigation.  In complex Clean Water Act cases, retaining an expert with Mr. Bond's credentials and experience in storm water management practices is essential to adequately presenting any claim for relief under the Act.  Mr. Bond's expert costs of $91,099 were reasonable and necessary to CSPA's diligent prosecution of this action.

63.     Defendants have recently submitted in discovery a declaration from Kim Scott attesting to the payment of $148,560.49 to Defendants' consultants and experts.  Notably, CSPA's $116,952.13 in expert costs in this action is more than twenty percent *lower* than what Defendants have paid their own consultants and experts in defense of the action.

### Calculation of Attorneys' Fees Rates and Reductions Applied

64.     CSPA requests an award of attorneys' fees and costs for both the merits work and this fee motion.  This amount is calculated using the "lodestar" method, and exercising billing judgment as described more fully below.  Under the lodestar method, the first step is to calculate the "lodestar" figure – the hours reasonably expended multiplied by the reasonable hourly rates.  *Serrano v. Priest* (*Serrano III*) (1977) 20 Cal.3d 25, 48.  Multiplying each attorney's hours spent on the merits by their respective market billing rate results in a pre-adjustment merits lodestar of $1,264,939.70.  See **Exhibit A.**

65.     After editing all of the time sheets retained by each of the firm's billing attorneys in this matter to eliminate any duplicative time, I then deducted 67% of the lodestar time spent in Phase 1 to account for the fact that the case at the time involved three separate facilities owned and operated by Defendants during (the action was later streamlined to focus on the Kusel Road facility that is currently the subject of this action).  I then deducted an additional 10% of the time billed in Phase 1 in the interests of sound billing judgment.  See Paragraph 32, above.

Declaration of Andrew L. Packard
In Support Of Plaintiff's Motion
For Interim Fees And Costs                                    Case No: 2:10-CV-01207-GEB-AC

15

66. As to Phase 2, in which CSPA appealed the action to the Ninth Circuit to reverse the Court's dismissal of the claims herein, I have deducted a full 20% of the lodestar hours billed to this phase, in the interests of sound billing judgment and to account for the firm's lower level of experience in appellate matters. See Paragraph 37, above.

67. I have also applied an across-the-board deduction of 10% to the merits lodestar time in Phases 3, 4, 5 and 6 as described above. See Paragraphs 39, 41, 43 and 45, above.

68. Finally, I excluded all paralegal work performed in this case (approximately 100–150 hours), the time billed by a summer law clerk on an appellate issues memorandum (62.6 hours) and the hours of any associates billing less than ten hours to the case (one attorney, 7.5 hours). See Paragraph 50, above.

### Additional Factors Supporting An Award of Interim Fees and Costs Under Section 505

69. CSPA is a non-profit organization, represented on a contingency basis with counsel generally carrying all litigation expenses incurred. CSPA's counsel have expended substantial financial resources prosecuting this action. A portion of the time spent litigating this case was necessitated by Defendants' failure to comply with the federal rules, needless discovery delays and unrelenting advancement of unmeritorious defenses.

70. Notably, in this case, Defendants also retained San Francisco Bay Area attorneys, with offices in San Francisco and Walnut Creek. Because CSPA's counsel are also in the San Francisco Bay Area market, and not Sacramento, where CSPA has been unable to find counsel, San Francisco Bay Area rates are appropriate.

71. A number of the attorneys working on this case were recently awarded fees and costs, with a fee enhancement multiplier of 1.5, in another CSPA action filed in the Sacramento Superior Court. See **Exhibit L**, attached hereto (*California Sportfishing Protection Alliance v. State Water Resources Control Board, et al*, Superior Court of California, County of Sacramento, Case No. 34-2013-8000-1358-CU-WM-GDS, August 21, 2015 Order Granting In Part, And Denying In Part, Petitioner's Motion For Attorneys' Fees And Costs). For the purposes of this fee motion, CSPA is seeking rates that are at

Declaration of Andrew L. Packard
In Support Of Plaintiff's Motion
For Interim Fees And Costs

16

Case No: 2:10-CV-01207-GEB-AC

generally *lower* than the rates awarded in that case (with the exception of Ms. Truxillo, who's rate is in accord with the adjusted Laffey Matrix, and Mr. Lozeau, who has charged the same rates herein):

| Attorney | Rates Awarded in *CSPA v. State Water Resources Control Board* | Rates Sought In This Motion |
|---|---|---|
| Andrew Packard | 635 | 595 |
| Megan Truxillo | 295 | 333 |
| Erik Roper | 375 | 333 |
| Laurie Mikkelson | 385 | 333 |
| Michael Lozeau | 700 | 700 |

72.    Time spent by counsel litigating this action, including document review, site inspections, motion practice, depositions and expert reports necessarily related to all alleged claims for relief, as all claims arose from a "common core of facts" and cannot be segregated.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.  Executed on September 21, 2015 in Petaluma, California.

_____

Andrew L. Packard

Declaration of Andrew L. Packard
In Support Of Plaintiff's Motion
For Interim Fees And Costs

17

Case No: 2:10-CV-01207-GEB-AC