UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CHICO SCRAP METAL, INC., a California corporation; GEORGE W. SCOTT, SR., individually and as trustee of GEORGE W. SCOTT, SR. REVOCABLE INTER VIVOS TRUST DATED SEPTEMBER 25, 1995,<br><br>　　　　Defendants. | No. 2:10-cv-01207-GEB-AC<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION** |

　　　　Defendants Chico Scrap Metal, Inc., George W. Scott, Sr., individually and as trustee of the George W. Scott, Sr. Revocable Inter Vivos Trust, dated September 25, 1995, seek partial reconsideration under Federal Rule of Civil Procedure ("Rule") 54(b), and Local Rule 230(j), of this Court's Order Granting in Part and Denying in Part Each Party's Summary Judgment Motion, (Defs.' Mot. for Recons. ("Mot.") 1:23-27, ECF No. 226), filed August 17, 2015. (Order Granting in Part and Den. in Part Each Party's Summ. J. Mot. ("Order"), ECF No. 221.) Defendants argue the motion should be granted based on their assertion that the Court committed clear error in calculating the

number of times Defendants violated Section C of California's General Industrial Storm Water Permit (the "General Permit").

## I. LEGAL STANDARD

"A district court's power to rescind, reconsider, or modify an interlocutory order is derived from the common law, not from the Federal Rules of Civil Procedure." City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 886 (9th Cir. 2001). Further, Rule 54(b) authorizes the district court to revise "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." Kona Enterprises, Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (quoting 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999)).

## II. DISCUSSION

The Order of which reconsideration is sought holds in pertinent part: "The uncontroverted facts establish Defendants never submitted a report to the [California Regional] Water Board in response to receiving a storm water discharge sampling result that [exceeded] a water quality standard." (Order 17:21-24 (citation omitted).)

The Order further holds the California Toxics Rule ("CTR") is the applicable water quality standard, (Order 17:24-26), and explains: "The CTR 'promulgates criteria for priority toxic pollutants for the State of California.' 40 C.F.R. 131.38. For storm water discharges, the following pollutant concentrations apply:

>    Copper:   0.013 mg/L
>    Lead:     0.065 mg/L
>    Zinc:     0.12 mg/L

Id." (Order 15:1-8.) These pollutant concentrations represent the CTR's Criteria Maximum Concentration ("CMC"), which "equals the highest concentration of a pollutant to which aquatic life can be exposed for a short period of time without deleterious effects." 40 C.F.R. § 131.38(b)(1) n.d.[1]

The Order further explains: "Therefore, each time Defendants received sampling results in excess of the CTR standards, they violated Section C of the General Permit[ by not submitting a report to the California Regional Water Board]." (Order 17:24-26.)

Concerning the number of times Defendants received sampling results in excess of the CTR standards that they were required to report under Section C of the General Permit, the Order states in pertinent part:

> Plaintiff argues Defendants' own samples reveal sixty-five instances where the level of copper, lead, and/or zinc exceeded the CTR standards . . . .  Since the evidence

---

[1] In contrast, the CTR's "Criteria Continuous Concentration (CCC) equals the highest concentration of a pollutant to which aquatic life can be exposed for an extended period of time (4 days) without deleterious effects." 40 C.F.R. § 131.38(b)(1) n.d.

>concerning the sixty-five samples Defendants collected and analyzed is uncontroverted, Plaintiff's motion concerning these samples is granted and Defendants' motion is denied. Defendants also do not dispute the sample results taken on December 11, 2014 from SWSL2, at 9:10 AM and 2:50 PM, which evince four additional violations. (Pl.'s SUF ¶¶ 160-161.) Therefore, Plaintiff's motion as to these samples is granted and Defendants' motion is denied.

(Order 17:28, 18:1-11.)

Defendants argue the Court erred because "[t]he evidence . . . demonstrates only [forty] . . . uncontroverted exceedances of the limitations set forth in the CTR." (Mot. 3:5-8.) Defendants' arguments concerning specific samples are addressed below.

**A.  Sample Collected on January 20, 2012, from SWSL2**

Defendants seek reconsideration of the sample collected by Defendants on January 20, 2012, identified in Plaintiff's Statement of Undisputed Facts number 140, arguing the evidence evinces that the storm water contained .041 mg/L of lead, rather than the .21 mg/L of lead listed in Plaintiff's Statement of Undisputed Facts. The evidence cited by Plaintiff shows that the storm water collected on January 20, 2012, from SWSL2 contained .041 mg/L of lead. (Ex. S PLF001558, ECF No. 168-5.) Therefore, Plaintiff only demonstrated an exceedance of copper.

**B.  Four Samples Collected on March 20, 2013**

Defendants seek reconsideration of four samples Defendants collected and analyzed on March 20, 2013, which are identified in Plaintiff's Statement of Undisputed Facts numbers 151, 152, 153, and 154. (Ex. A 7-10, ECF No. 226-2.) Defendants argue:

4

> This Court granted summary judgment in favor of Defendants as to all March 20, 2013 samples. See Order at 49:5-6 ("Plaintiff's motion concerning this date is denied and Defendants' motion is granted[.]"[] (emphasis added)[)].
>
> As to Plaintiff's March 20, 2013 samples, this Court held that "Plaintiff offers no evidence from which a reasonable inference could be drawn that the wet weather event on March 20, 2013 began less than one hour before the Facility opened." See Order at 49:2-4.
>
> As to Defendants' March 20, 2013 samples, Defendants stated in Response to Undisputed Fact No. 151 that these samples were not "from Facility discharges stemming from a qualifying event and not representative of the Facility." Therefore, this Court's holding that these samples are "uncontroverted" is incorrect. See Order at 18:9.

(Id.) Defendants make the same argument for the remaining samples identified in numbers 152, 153, and 154. Plaintiff does not address these arguments.

The record shows Defendants disputed the evidence concerning the four samples collected on March 20, 2013, in their Response to Plaintiff's Statement of Undisputed Facts. (Defs.' Resp. to Pl.'s SUF ISO Pl.'s Mot. for Partial Summ. J. ("Defs.' Resp. to Pl.'s SUF") Nos. 151-54, ECF No. 189.) Therefore, this portion of the Order is withdrawn, since the disputed factual issues have to be resolved at trial.

**C.  Sample Collected on December 3, 2014**

Defendants seek reconsideration of the sample Plaintiff collected on December 3, 2014. This sample is identified in Plaintiff's Statement of Undisputed Facts number 157. Defendants argue: "The[] sample[] w[as] not taken by Defendants and

5

Defendants dispute the origin of the water sample." (Ex. A 11.) Plaintiff does not address this argument.

The record shows Defendants disputed the sample's origin in their Response to Plaintiff's Statement of Undisputed Facts. (Defs.' Resp. to Pl.'s SUF No. 157.)

Further, this sample's inclusion in this section of the Order appears to have been a typographical error, since the Court also held, "Plaintiff fails to present evidence that sufficiently identifies the origin of the . . . water sample[ collected on December 3, 2014 and identified in number 157]." (Mot. 18:25-28.)

Therefore, this portion of the Order is withdrawn, since the disputed factual issues have to be resolved at trial.

### D. Remaining Samples

Lastly, the Court also erred in calculating the number of violations under Section C of the General Permit, and therefore revised rulings are set forth in the following chart:

| Pl.'s SUF No. | Pl.'s SUF | Court's Exceedance of CTR Findings |
|---|---|---|
| 118 | On November 1, 2008, storm water containing 0.041mg/L of copper, 0.014mg/L of lead, and 0.166mg/L of zinc was discharged from the Facility at the northern discharge location, SWSL1. | Copper and zinc exceeded. |
| 119 | On November 1, 2008, storm water containing 0.135mg/L of copper, 0.0193mg/L of lead, and 0.165mg/L of zinc was discharged from the Facility at the southern discharge location, SWSL2. | Copper and zinc exceeded. |
| 120 | On February 17, 2009, storm water containing 0.021mg/L of copper, 0.0284mg/L of lead, | Copper and zinc exceeded. |

6

| | | |
|---|---|---|
| | and 0.178mg/L of zinc was discharged from the Facility at the northern discharge location, SWSL1. | |
| 121 | On February 17, 2009, storm water containing 0.0216mg/L of copper, 0.0278mg/L of lead, and 0.185mg/L of zinc was discharged from the Facility at the southern discharge location, SWSL2. | Copper and zinc exceeded. |
| 125 | On April 12, 2010, storm water containing 0.036mg/L of copper, 0.026mg/L of lead and 0.092mg/L of zinc was discharged from the Facility's Southwest Corner. | Copper exceeded. |
| 126 | On December 29, 2010, storm water containing 0.024mg/L of dissolved copper, 0.016mg/L of dissolved lead and 0.15mg/L of dissolved zinc was discharged from the Facility's Southwest Corner. | Copper and zinc exceeded. |
| 127 | On December 29, 2010, storm water containing 0.028mg/L of copper, 0.016mg/L of lead and 0.15mg/L of zinc was discharged from the Facility at "SP #1." | Copper and zinc exceeded. |
| 133 | On March 18, 2011 storm water containing 0.0051mg/L of lead was discharged from the Facility's southern discharge location, SWSL2. | No exceedance. |
| 136 | On October 10, 2011, storm water containing 0.15mg/L of copper, 0.02mg/L of lead, and 0.16mg/L of zinc was discharged from the Facility's southern discharge location, SWSL2 (per the chain of custody, although location is in conflict with AR assertion that only SWSL1 discharged on that date). | Copper and zinc exceeded. |
| 139 | On January 20, 2012, storm water containing 0.037mg/L of | Copper and zinc exceeded. |

7

| | | |
|---|---|---|
| | copper, 0.044mg/L of lead and 0.27mg/L of zinc was discharged from the Facility's northern discharge location, SWSL1. | |
| 155 | On December 3, 2014, storm water containing 0.032mg/L of copper and 0.032mg/L of lead was discharged from the Facility at the southern discharge location, SWSL 2 Inside. | Copper exceeded. |
| 156 | On December 3, 2014, storm water containing 0.03mg/L of copper and 0.03mg/L of lead was discharged from the Facility's southern discharge location, SWSL2 Outside. | Copper exceeded. |
| 158 | On December 11, 2014, storm water containing 0.035mg/L of copper, 0.050mg/L of lead and 0.16mg/L of zinc was discharge from the Facility's southern discharge location, SWSL2 Inside. | Copper and zinc exceeded. |
| 159 | On December 11, 2014, storm water containing 0.038mg/L of copper, 0.057mg/L of lead and 0.18mg/L of zinc was discharged from the Facility's southern discharge location, SWSL2 Outside. | Copper and zinc exceeded. |
| 160 | On December 11, 2014, storm water containing 0.036mg/L of copper, 0.049mg/L of lead and 0.14mg/L of zinc was discharged from the Facility's southern discharge location, SWSL2. | Copper and zinc exceeded. |
| 161 | On December 11, 2014, storm water containing 0.029mg/L of copper, 0.038mg/L of lead and 0.12mg/L of zinc was discharged from the Facility's southern discharge location, SWSL2. | Copper exceeded. |
| 163 | On February 6, 2015 storm water containing 0.041mg/L of | Copper exceeded. |

| | copper, 0.044mg/L of lead, and 0.12mg/L of zinc was discharged from the Facility's southern discharge location, SWSL #2. | |

### III.  CONCLUSION

For the stated reasons, Defendants' motion for reconsideration has been granted.

Dated: January 4, 2016

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge

9